# Exhibit 1

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**
----------------------------------------------------------------x

**PLAZA ATHENEE HOTEL**

<span style="color:red;">Claim E3873174<br>Response due 4/14</span>

Plaintiff/Petitioner,

- against -                                    Index No. 651503/21

**CONTINENTAL CASUALTY COMPANY**

Defendant/Respondent.
----------------------------------------------------------------x

Received Law Dept   11:25 am

MAR 15 2021

Accepted service at
CNA
151 N. Franklin

Kristine B...

**NOTICE OF ELECTRONIC FILING**
**(Consensual Case)**
(Uniform Rule § 202.5-b)

**You have received this Notice because:**

1) The Plaintiff/Petitioner, whose name is listed above, has filed this case using the New York State Courts E-filing system ("NYSCEF"), and

2) You are a Defendant/Respondent (a party) in this case.

❗ **If you are represented by an attorney:**
Give this Notice to your attorney. (<u>Attorneys</u>: see "Information for Attorneys" pg. 2).

❗ **If you are not represented by an attorney:**
**You will be served with all documents in paper and you must serve and file your documents in paper, unless you choose to participate in e-filing.**

**If you choose to participate in e-filing, you <u>must</u> have access to a computer and a scanner or other device to convert documents into electronic format, a connection to the internet, and an e-mail address to receive service of documents.**

The **benefits of participating in e-filing** include:

❗ serving and filing your documents electronically

❗ free access to view and print your e-filed documents

❗ limiting your number of trips to the courthouse

❗ paying any court fees on-line (credit card needed)

**To register for e-filing or for more information about how e-filing works:**

❗ visit: https://iapps.courts.state.ny.us/nyscef/UnRepresentedHome or
❗ contact the Clerk's Office or Help Center at the court where the case was filed. Court contact information can be found at www.nycourts.gov

To find legal information to help you represent yourself visit www.nycourthelp.gov

**Information for Attorneys**

An attorney representing a party who is served with this notice must either consent or decline consent to electronic filing and service through NYSCEF for this case.

Attorneys registered with NYSCEF may record their consent electronically in the manner provided at the NYSCEF site. Attorneys not registered with NYSCEF but intending to participate in e-filing must first create a NYSCEF account and obtain a user ID and password prior to recording their consent by going to www.nycourts.gov/efile

Attorneys declining to consent must file with the court and serve on all parties of record a declination of consent.

For additional information about electronic filing and to create a NYSCEF account, visit the NYSCEF website at   www.nycourts.gov/efile or contact the NYSCEF Resource Center

(phone: 646-386-3033; e-mail: nyscef@nycourts.gov).

Dated:   March 9 2021

Randolph Janis
D
**Name**
Douglas and London PC

**Firm Name**

rjanis@douglasandlondon.com

Douglas & London

59 Maiden Lane 6th Floor NY NY 10038

Address

212 566 7500

Phone

E-Mail

To:   See address on attached pleading

2/24/20

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                       RECEIVED NYSCEF: 03/05/2021

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------X

PLAZA ATHENEE HOTEL COMPANY LIMITED d/b/a
PLAZA ATHENEE HOTEL

                         Plaintiff,

            -against-

CONTINENTAL CASUALTY COMPANY
                         Defendant.
-------------------------------------------------------------X

Index No.:

**SUMMONS**

Plaintiff designates New York
County as the place of trial.

The basis of venue is:
CPLR 503(a) and 503(d):
Plaintiff's residence and
substantial part of events or
omissions occurring in County

**TO THE ABOVE NAMED DEFENDANT:**

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action, and to serve a copy
of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance on
the Plaintiffs' attorneys within twenty days after the service of this summons, exclusive of the day of
service, where service is made by delivery upon you personally within the state, or, within 30 days after
completion of service where service is made in any other manner.  In case of your failure to appear or
answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated:  New York, New York
       March 5, 2021

                                   Randolph D. Janis, Esq.
                                   DOUGLAS & LONDON, P.C.
                                   Attorneys for Plaintiff
                                   59 Maiden Lane, 6th Floor
                                   New York, New York 10038
                                   (212) 566-7500

TO:

CONTINENTAL CASUALTY COMPANY
151 North Franklin Street
Chicago Illinois 60606

Case 1:21-cv-03245-MKV   Document 1-1   Filed 04/14/21   Page 5 of 102

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X

PLAZA ATHENEE HOTEL COMPANY LIMITED d/b/a
PLAZA ATHENEE HOTEL
                       Plaintiff,

-against-

CONTINENTAL CASUALTY COMPANY
                    Defendant.
------------------------------------------------------------------X

Index No.:

**COMPLAINT**

Plaintiff PLAZA ATHENEE HOTEL COMPANY LIMITED d/b/a PLAZA ATHENEE HOTEL

(hereinafter, "Plaintiff"), brings this Complaint alleging relief against Defendant, THE

CONTINENTAL CASUALTY COMPANY, and alleges as follows:

## I.    NATURE OF THE CASE

1.      In light of the Coronavirus global pandemic ("COVID-19") and state and local orders

("Civil Authority Orders") mandating that in store businesses cease or restrict operations, Plaintiff has

sustained significant business losses.

2.      Plaintiff's insurance policy (6023357065) is an All Risk Policies and provides coverage

for all non-excluded business losses, and thus provides coverage here.

3.      Upon information and belief, at all relevant times the COVID-19 virus was present at

and within Plaintiff's insured property and in buildings within a one mile radius of the insured property.

4.      The material dimensions of a property can be altered and damaged through microscopic

changes caused by COVID-19. Such damage may produce deadly results to human beings. If a person

infected with COVID-19 enters a building, then (until disinfected and decontaminated) the building

would be (1) physically altered by the direct physical presence of the virus on surfaces or the air and

(2) thus physically damaged, and (3) may potentially be transformed into a superspreading force.

5.     The presence of large numbers of customers and employees in a relatively confined indoor spaces, some of whom are virus carriers, ultimately affects the building. At all relevant times, this caused physical damage to Plaintiff's insured property. So too did the presence of virus carriers within indoor businesses within a one mile radius of the insured premises cause physical damage and loss.

6.     Whether a building has been contaminated prior to the emergency orders or was at imminent risk of contamination can be demonstrated by circumstantial evidence.

7.     COVID-19 was present at the insured location at all relevant times or there was an imminent risk of onsite COVID-19 presence all relative times, or both. At least two employees tested positive for COVID-19 as is referenced in defendant's denial letter.

8.     In this matter COVID-19 was present in the hotel and its presence physically caused property loss and damage to property within the insured premises including, but not limited to, furniture, fixtures, hotel equipment, hotel rooms, restaurant(s), physical surfaces, hotel common spaces and other hotel property which will require extensive and costly period of remediation, restoration, repair and replacement. Notably, the City of New York issued an Emergency Executive Order in response to COVID-19 and the pandemic, in part, because COVID-19 itself "physically is causing property loss and damage".

9.     In this matter, actions of civil authorities prohibited access to the insured premises due to damage to the property and property at locations within one mile of the insured premises. The actions of the civil authorities were taken in response to dangerous physical conditions resulting from the damage and/or continuation of covered causes of loss that caused damage. The civil authority orders were issued as a result of covered causes of loss to property at Plaintiff's premises and at locations within one mile of Plaintiff's premises. As a consequence of such foregoing damage, civil authorities

issued orders prohibiting access both to the hotel and areas immediately surrounding the damaged properties.

10.    In this matter, the insured's business interruption was caused by direct physical loss of or damage to property at the subject hotel. There was direct physical loss of and damage to property at the hotel caused by a covered cause of loss not excluded by the Policy and a necessary interruption of Plaintiff's operations at the subject hotel was caused by that direct physical loss of and/or damage to property. Plaintiff's business operations were suspended by direct physical loss of and/or damage to its property.

11.    Plaintiff suffered a direct physical loss of and damage to its property and such loss and damage was a result of COVID-19 and a direct result of the orders of the civil authorities and that Plaintiff's suspensions and losses triggered Business income coverage under the Policy.

12.    Per defendant's chosen language, the Policy obligates defendant to "pay for direct physical loss of **or** damage to covered property.

13.    The Policy provides that defendant will pay for direct physical loss of or damage to Covered Property … caused by or resulting from a Covered Cause of Loss.

14.    A policy that requires physical loss or damage does not require that the physical loss or damage be tangible, structural or even visible.

15.    As a result, Plaintiff is entitled to declaratory relief that Plaintiff is covered for all business losses that have been incurred.

## I.    JURISDICTION & VENUE

16.    This action is within this Court's general original jurisdiction and not within the jurisdiction of any court of limited jurisdiction of this state.

17.    This Court has personal jurisdiction over the Defendant because the Defendant has transacted, solicited and conducted business in New York through its employees, agents, affiliates

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021
NYSCEF DOC. NO. 1    RECEIVED NYSCEF: 03/05/2021

and/or sales representatives and has derived substantial revenue from such business in New York. Defendant is licensed to do business in New York State and has purposely availed itself of personal jurisdiction in New York because it contracted to provide insurance to Plaintiff in New York which is the subject of this case.

18.     This Court has personal jurisdiction as defendants were authorized by the New York department of Financial Services to issues policies of insurance within the State of New York including Plaintiffs policies.

19.     This Court has personal jurisdiction of over defendant pursuant to CPLR §302.

20.     This Court has personal jurisdiction of over defendant pursuant to CPLR §302(a)(1) in that defendant transacted business within the state and supplied good and services within New York State.

21.     Venue is proper in New York County pursuant to CPLR §503 because Plaintiff PLAZA ATHENEE HOTEL is located in this county and because a substantial part of the events or omissions giving rise to this claim occurred in New York County.

## II.    **PARTIES**

22.     At all relevant times, Plaintiff is a business entity authorized to do business and doing business in the State of New York, County of New York.

23.     Plaintiff operates a hospitality business, i.e. a hotel, whose revenue depends substantially upon the ability of guests to to travel domestically and internationally to stay at the hotel, lodge at the hotel, and patronize businesses in New York City and is otherwise dependent on other items and matters; all of which have either ceased or been substantially restricted due to COVID-19 and Civil Authority Orders pertaining to same

24.     The applicable closure orders were issued in direct response to these dangerous physical conditions, or the threat thereof, and prohibited the public from accessing Plaintiff's business, thereby

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 1

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

causing the necessary limitation or suspension of Plaintiff's operations and triggering coverages under the Policy.

25. At all relevant times, Defendant provides business interruption coverage to its insureds, including the Plaintiff.

26. Defendant issued an All Risk Insurance Policy to Plaintiff for the period of March 8, 2019 to June 1, 2020, and thereafter renewed. See, Policy, attached as **Exhibit A**.

27. The policy, currently in full effect, includes All Risk coverage which incorporates business interruption coverage for, among other things, business personal property and income protection and extra expense.

28. Plaintiff has paid the policy premiums to defendant specifically to provide coverages of lost business income and extra expenses in the event of an involuntary business interruption.

29. In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders") mandating that businesses such as Plaintiff's cease or restrict operations, Plaintiff sustained significant business losses. Consequently, Plaintiff properly and promptly submitted an insurance claim to defendant for losses and damages. On or about July 1, 2020, Defendant denied Plaintiff's claim and asserted that Plaintiff was not entitled to any coverage. See, Denial Letter, attached hereto as **Exhibit B**.

## III.     **FACTUAL BACKGROUND**

### A.     **Insurance Coverage**

30. On or about March 8, 2019, Defendant entered into a contract of insurance with the Plaintiff specifically to provide, among other things, business income coverage in the event of business interruption or closures by order of Civil Authority, and for business losses as a result of property damage at its location in New York County, State of New York (the "Covered Property").

31. The Covered Property includes a hotel known as PLAZA ATHENEE HOTEL located

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                          RECEIVED NYSCEF: 03/05/2021

at Plaza Athenee Hotel Company Limited 37 East 64th St New York, NY 10064.

32.     The Covered Property is covered under a Special All Risk Business Insurance Policy to the Plaintiff issued by the Defendant to Plaintiff with Policy Number (6023357065).

33.     The Plaintiff's Policy is currently in full effect, providing, among other things coverage for property, business personal property, income protection & extra expense, and additional coverages between the period of March 8, 2019 to June 1, 2020 and renewed thereafter.

34.     Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, coverage for the loss of business income and extra expense sustained in the event of business interruption or closures by order of Civil Authority.

35.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Covered Properties is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Covered Property. This additional coverage is identified as coverage under "Civil Authority."

36.     In the Policy, Defendant agreed to pay for direct physical loss of or damage to Covered Property. A Covered Cause of Loss is defined as risks of direct physical loss of or damage to property and/or interests at covered locations.

37.     The Policy includes cause of loss coverages for business income losses and extra expenses from all risks including but not limited to civil authority actions affecting the functionality of one's property.

38.     Losses due to the COVID-19 pandemic and the New York Civil Authority Orders are a Covered Cause of Loss under the policy because they constitute RISKS OF DIRECT PHYSICAL LOSS and are not otherwise excluded.

39.     In the Policy, apart from general coverage, as part of additional coverages, Defendant

agreed to pay for Plaintiff's actual loss of Business Income sustained due to suspension of Plaintiff's operations caused by direct physical loss of or damage to property.

40.     The Policy also includes Civil Authority coverage under which Defendant agreed to pay for actual loss of Business Income sustained when access to the insured premises is prohibited by actions of a civil authority when such order is given as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of said location or during the period of time when as a direct result of physical loss or damage to property of the type insured from a peril insured against, ingress to or egress from the Insured's location is thereby physically prevented. Coverage is triggered because these elements are satisfied herein.

41.     As explained below, the COVID-19 pandemic throughout the State of New York where Plaintiff is located and the New York Civil Authority Orders (and similar civil authority orders issued by local, state, and federal authorities) constitute a Covered Cause of Loss triggering the Business Income, Extra Expense and Civil Authority provisions of the policy.

42.     The COVID-19 pandemic and New York Civil Authority Orders (and similar civil authority orders constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS" and are not otherwise excluded.

43.     The suspension of Plaintiff's operations was caused by "direct physical loss of or damage to" property in the form of a loss of access to the insured property caused by the COVID-19 pandemic, and the New York Civil Authority Orders.

44.     The COVID-19 Pandemic and the New York Civil Authority Orders separately implicated the Civil Authority coverage because access to the scheduled premises was prohibited by order of a civil authority. And the civil authority order was due to direct physical loss of or damage to property at locations within one mile of the covered premises, caused by or resulting from "RISK[] OF DIRECT PHYSICAL LOSS" and the COVID-19 pandemic.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM     INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 03/05/2021

45.     The COVID-19 pandemic and/or orders of civil authority related to the COVID-19 pandemic (like the New York Civil Authority Orders) caused "direct physical loss of or damage" to "Covered Property" under the Plaintiff's policy.

46.     As a result of emergency Orders, Plaintiff suffered economic business income and extra expense losses.

47.     Plaintiff further states that it suffered direct physical loss of, or damage to its property causing economic business income and extra expenses losses as a result of:

(i)     actual on-site COVID-19 contamination that caused a loss of, or damage to its property; or

(ii)    its reasonable actions-regardless of government orders-to preserve property and persons from imminent risk of harm; or

(iii)   the risk of imminent harm, as said risk is itself a covered cause of loss; or

(iv)    governmental Orders designating Plaintiff's business as unusable and in other forms; or

(v)     government Orders pursuant to inherent authorities to act in a disaster regardless of the actual presence of COVID-19 virus on site; or

(vi)    the availability of other coverages under the Policy and as otherwise set forth herein.

48.     Having suffered a loss of property and a suspension of operations, Plaintiff submitted a claim to Defendant under the policy. Defendant denied plaintiff's claim.

49.     Based on information and belief, the Defendant accepted the policy premiums with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the Covered Properties be shut down or restricted, or any related losses and/or damages.

50.     Defendant's denial of coverage is based on its claim that the Covered Properties did not sustain direct physical loss or damage. *See* Denial Letter, attached hereto as Exhibit B.

51.     However, Defendant's narrow reading of "loss" renders the Civil Authority coverage

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 1

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

ineffectual and demonstrates Defendants had no intention of providing coverage for losses Plaintiffs faithfully paid premiums to insure against.

## B.    The Coronavirus Pandemic

52.    The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the premises.

53.    The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days on plastic and stainless steel. See, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces.

54.    The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

55.    The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

56.    China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

57.    Within one mile of the insured premises there was direct physical loss of or damage to property caused by or resulting from risk of direct physical loss and the COVID-19 pandemic.

58.    Every essential and non-essential business within one mile of the insured premises was substantially impacted and/or damaged from COVID-19, and/or the risk of direct physical loss, the pandemic and civil authority orders pertaining to same. COVID-19 was physically present within such businesses situated within a one mile radius of the insured premises.

59.    COVID-19 was physically present within a number of hospitals within the immediate vicinity of the insured premises and within one mile of same.

60.    The City of New York issued an Emergency Executive Order stating, in part that COVID-19 "physically is causing property loss and damage."

61.    Alternatively, the imminent and substantial risks of loss and damage justified action to avoid or mitigate such risks.

62.    COVID-19 is a physical substance.

63.    COVID-19 is a human pathogen,

64.    COVID-19 can be present outside the human body in viral fluid particles.

65.    COVID-19 can and does live on and/or remains capable of being transmitted and active on inert physical surfaces.

66.    COVID-19 can and does live on and/or remains capable of being transmitted and active on floors, walls, furniture, desks, tables, chairs, beds, equipment and other items of property for a period of time.

67.    COVID-19 can be transmitted by way of human contact with surfaces and items of physical property on which COVID-19 particles are physically present.

68.    COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in New York County.

69.    COVID-19 can be transmitted by human to human contact and interaction at premises in New York County, include places such as the business entities herein.

70.    COVID-19 has been transmitted by human to human contact and interaction at premises in New York County.

71.    COVID-19 can be transmitted through airborne viral particles emitted into the air at premises.

INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 03/05/2021

72.     COVID-19 has been transmitted by way of human contact with airborne COVID-19 particles emitted into the air at premises in New York County.

73.     The presence of any COVID-19 particles renders items of physical property unsafe.

74.     The presence of any COVID-19 particles on physical property impairs its value, usefulness and/or normal function.

75.     The presence of any COVID-19 particles causes direct physical harm to property,

76.     The presence of COVID-19 particles causes direct physical loss to property.

77.     The presence of COVID-19 particles causes direct physical damage to property.

78.     The presence of any COVID-19 particles at premises renders the premises unsafe, thereby impairing the premises' value, usefulness and/or normal function.

79.     The presence of people infected with or carrying COVID-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property.

80.     The presence of people infected with or carrying COVID-19 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and the property.

81.     State and local governmental authorities, and public health officials around the Country acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to property. For example,

- The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part, "because the virus **physically is causing property loss and damage**." (Emphasis added).

- The State of Colorado issued a Public Health Order that "COVID-19....**physically contribute to property loss, contamination and damage**." (Emphasis added).

- Broward County, Florida issued an Emergency Order acknowledging COVID-19 "**is physically causing property damage**." (Emphasis).
- The State of Washington issued a stay at home Proclamation stating that the

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM                    INDEX NO. 651503/2021

NYSCEF DOC. NO. 1                                                       RECEIVED NYSCEF: 03/05/2021

"COVID-19 pandemic and its progression…remains a public disaster affecting life, health, [and] **property**…" (Emphasis added).

- The State of Indiana issued an Executive Order recognizing that COVID-19 has the propensity to **physically** impact surfaces and personal **property**." (Emphasis added).

- The City of New Orleans issued an order stating that "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and **causing property loss and damage** in certain circumstances." (Emphasis added).

- The State of Illinois issued an Executive Order describing COVID-19's "propensity to **physically** impact surfaces and personal property." (Emphasis added).

- The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "**property**." (Emphasis added).

- North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of….**property**." (Emphasis added).

- The City of Los Angeles issued an Order in response to COVID-19 "because among other reasons, the COVID-19 virus can spread easily from person to person and it is **physically causing property loss or damage** due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

**C.    Civil Authority**

82.    In response to COVID-19 and the Pandemic the Governor of New York has issued multiple executive orders pursuant to the authority vested by laws of New York.

83.    In response to COVID-19 and the pandemic, New York State pursuant to its authority under New York State Law has issued multiple orders including a Stay at Home Order.

84.    The State of New York is a civil authority as contemplated by the Policy.

85.    The New York State Department of Health is a civil authority as contemplated by the Policy.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                           RECEIVED NYSCEF: 03/05/2021

86.     The Governor of the State of New York is a civil authority as contemplated by the Policy.

87.     On March 7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.

88.     On March 12, 2020, Governor Cuomo set restrictions on large gatherings. The Governor declared a state of emergency for the City of New York "due to the threat posed by COVID-19 to the health and welfare of City residents."

89.     On March 16, 2020, Mayor de Blasio extended the state of emergency period declared for the City of New York due to the threat of COVID-19 spreading from person to person and "because the virus physically is causing property loss and damage" as is set forth in Emergency Executive Order No. 100.

90.     On March 20, 2020, the State of New York issued a stay-at-home order that all non-essential workers must stay at home as a result of the COVID-19 pandemic.

91.     For the most part, the emergency Orders (including those causing plaintiff's losses) were issued pursuant to the Executives' inherent emergency powers to deal with disasters that endanger people and property. They were not the result of the legislative or deliberative body's process typical of laws and regulations.

92.     Civil Authority orders also prohibited all non-essential travel, thereby preventing customers from traveling to and staying at Plaintiff's hotel.

93.     New York State issued statewide "Stay-at-Home," "Shelter-in-Place," or other similarly-termed closure orders, which substantially limited or completely prohibited the operation of Plaintiff's business.

94.     The continuous presence of the coronavirus on or around Plaintiff's premises, and/or the threat thereof, has rendered the premises unsafe and unfit for their intended use and therefore caused

physical damage or loss to Plaintiff's property under the Policy

95.     The applicable closure orders were issued in direct response to these dangerous physical conditions, or the threat thereof, and prohibited the public from accessing Plaintiff's business, thereby causing the necessary limitation or suspension of Plaintiff's operations and triggering coverage under the Policy.

96.     As of March 22, 2020, Governor Cuomo ordered all "non-essential businesses" statewide to be closed. See, State's Executive Order 202.6. This Order remained in full effect up to on or about June 8, 2020 when Phase 1 re-opening in New York State commenced.

97.     Plaintiff's operations were also impacted and suspended because businesses that Plaintiff depended on to deliver or receive goods and services were impacted by COVID-19 and civil authority orders pertaining to same.

98.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

> PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. *Business interruption insurance*, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. *But if I had it I'd expect to be paid.* You have people. *I speak mostly to the restaurateurs*, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM       INDEX NO. 651503/2021

NYSCEF DOC. NO. 1                                                         RECEIVED NYSCEF: 03/05/2021

tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

See, https://youtu.be/_cMeG5C9TjU (emphasis added).

99.    The President is articulating a few core points:

- Business interruption is a common type of insurance.

- Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

- This pandemic should be covered unless there is a specific exclusion for pandemics.

- If insurers deny coverage, they would be acting in bad faith.

100.    These Orders and proclamations, as they relate to the closure of all "non-essential businesses" and restrictions on essential businesses evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiffs', as the requisite contact and interaction causes a heightened risk of the property becoming unsuitable for business.

101.    Plaintiff suffered losses as a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally. Accordingly, Plaintiff has submitted a claim to Defendant related to such losses.

102.    However, Defendant has denied Plaintiff's claims in contravention of the clear policy language entitling Plaintiffs to coverage for business losses arising out of the Civil Authority Orders.

**RELEVANT POLICY PROVISIONS**

103.    The losses incurred to Plaintiff's business operations are covered under various policy provisions as described in greater detail below and within the Policy.

104.    First, the policy affirmatively states this policy insures against risks of direct physical

loss of or damage to property and/or interests described at covered locations. See Policy annexed as Exhibit A.

105.    The operative language, as set forth above is "direct physical loss of or damage to property and/or interests at covered locations. The use of the phrase "physical loss of" in the disjunctive before the word "or" supports a construction of the policy that a loss of use of the property is sufficient to trigger coverage even if the property is not physically damaged. In Plaintiff's case, Plaintiff incurred both physical loss of use of its Covered Property and physical damage.

106.   The Policy's coverage expressly includes loss of use.

107.   Loss of use can occur because of a government order or the imminent risk of harm or both.

108.   Plaintiff's policy of insurance extends coverage to the risk of physical loss as a covered cause of loss.

109.   "Loss" is "the act of losing possession" and "deprivation." Merriam-Webster, www.merriam-webster.com/dictionary/loss.

110.   Plaintiff's insured premises is described in the declarations of the Policies and is covered property within the meaning of the Policy.

111.   "Covered Cause of Loss" is defined, in part, as follows in the policy RISKS OF DIRECT PHYSICAL LOSS.

112.   Further no structural damage to the premises is expressly raised as a requirement for coverage under the policy.

113.   Next the policy affirmatively states it will pay for the loss of business income due to necessary interruption of business caused by direct physical loss of or damage to covered property by peril(s) insured against and occurring during the term of this policy at covered locations.

114.   The policy provides that in the event of such physical loss or damage defendant shall be liable for the actual loss sustained by the insured resulting directly from such interruption of business.

115.   Accordingly, Defendant is liable for their insured's business income losses when (1) there is a

suspension of business operations, (2) the interruption is necessary, (3) the interruption is caused by

a direct physical loss of property or damage to the property or an imminent risk of direct physical loss

or damage to the property; and (4) the loss of or damage to property is caused by a covered cause of

loss.

116.    Here all such conditions are satisfied because  in this instance (1) there was and is an interruption of

business operations, (2) the interruption was and is necessary, (3) the interruption was and is caused

by a direct physical loss of property or damage to the property or an imminent risk of direct physical

loss or damage to the property; and (4) the loss of or damage to property was and  is caused by a

covered cause of loss.

117.    As set forth above, in response to emergency orders closing off the premises business purposes which

occurred during the policy period, Plaintiff was forced to cease and continues to cease its business

activities altogether or a vast majority its business activities.

118.    Plaintiff thus suffered the actual loss of Business Income during the policy period which was caused

by the loss of (or alternatively, damage to) its property at the covered location.

119.    Plaintiff's lost business income is covered under the policy and has not been excluded from coverage.

Plaintiff is entitled to payment for these business income losses.

120.    The Policy has "Civil Authority" coverage that provides coverage for business income losses and

extra expenses incurred and is triggered when access to the insured location is prohibited by order of

civil authority when as a direct result of physical loss of damage to property of the type insured from

a peril insured against occurring at or in the immediate vicinity of said location or during the period

of time when as a direct result of physical loss or damage to property of the type insured from a peril

insured against, ingress to or egress from the insured's location is thereby physically prevented.

121.    All of the above requirements are met here.

122.    The policy further provides that defendant will pay for the reasonable and necessary extra expense

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM INDEX NO. 651503/2021

NYSCEF DOC. NO. 1                                                                     RECEIVED NYSCEF: 03/05/2021

incurred by the insured in order to continue as nearly as practicable the normal operation of the insured's business following direct loss of or damage to covered property by peril(s) insured against. In the event such physical loss or damage, the defendant shall be liable for such reasonable and necessary extra expense incurred for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been damaged commencing with the date of damage and not limited by the date of expiration of the policy.

123. Alternatively, the imminent and substantial risks of loss and damage justifies actions to avoid or mitigate such risks.

124. In this instance, a covered cause of loss caused damage to covered property and to property in the immediate area and within one mile of the insured premises.

125. Access to Plaintiff's premises was prohibited by order of a civil authority.

126. Plaintiff (1) experienced a necessary interruption of its operations (2) the interruption was caused by direct physical loss of or damage to property at the premises described in the policy and (3) the loss of or damage to property was caused by a covered cause of loss i.e. risk of direct physical loss that is not excluded.

127. The presence of COVID-19 and the Closure Orders (and similar civil authority orders) constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS."

128. The policy does not contain an applicable viral exclusion.

**D.     Impact on Plaintiffs**

129.     As a result of the Orders referenced, herein, Plaintiff sustained massive business income losses.

130.     Plaintiff's business loss occurred when the State of New York declared when the State of New York declared a State of Emergency on March 7, 2020. It suffered further when the State of New York required all non essential businesses to shut down on March 20, 2020.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 03/05/2021

131.    Prior to March 7, 2020 Plaintiff was opened to guests for all hospitality and lodging needs. Plaintiffs' hotel is not a closed environment, and because people – staff, guests, community members, and others -- constantly cycle in and out of the subject hotel, there is an ever-present risk that the Covered Properties are contaminated and would continue to be contaminated. In fact, it's probable that Plaintiffs premises suffered contamination based upon guests later being diagnosed as suffering from Coronavirus (COVID-19).

132.    Businesses like the Plaintiff's hotel premises are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Covered Properties and remain viable for far longer as compared to a facility with open-air ventilation.

133.    Plaintiff's business is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the businesses place staff and guests in close proximity to the property and to one another and because the nature of a hospitality premises involves a high level of respiratory droplets and fomites being released into the air of the property during routine hotel activities and contacting hotel and hospitality equipment.

134.    The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part, "because the virus physically is causing property loss and damage."

135.    COVID-19 particles have been physically present at Plaintiff's premises described in the Policy during the Policy period.

136.    COVID-19 particles have been physically present on surfaces and items of property located at Plaintiff's premises described in the Policy during the Policy period.

137.    Airborne COVID-19 particles have been physically present at Plaintiff's premises described in the Complaint during the Policy period.

138.    Plaintiff has sustained direct physical loss of and/or damage to items of property located at its premises and direct physical loss of and/or damage to its premises described in the Policy as a

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 03/05/2021

result of the presence of COVID-19 particles and/or the Pandemic.

139.    That a covered cause of loss caused damage to property other than property at the insured premises and Plaintiff sustained actual loss of business income and extra expenses were incurred caused by action of civil authority that prohibited access to the insured premises.

140.    That access to the area immediately surrounding the damaged property was prohibited by civil authority as a result of the damage and the insured premises was and is within one mile from damaged property.

141.    That actions of civil authorities were taken in response to dangerous physical conditions resulting from the damage and/or continuation of the covered causes of loss that caused the damage and/or that action was taken to enable a civil authority to have unimpeded access to the damaged property.

142.    Civil authority orders prohibited access to the insured premises. The prohibited access to the insured premises was in response to dangerous physical conditions resulting from damaged property off premises within an area not more than one mile from the insured premises. The damage to property was caused by or resulting from a Covered Cause of Loss.

143.    The governmental orders implicated the Civil Authority coverage, because access to the scheduled premises was prohibited by order of a civil authority as the direct result of a "RISK[] OF DIRECT PHYSICAL LOSS" to property in the immediate area of the insured premises and within one mile of same.

144.    All of the various governmental orders affecting Plaintiffs' insured premises were issued in direct response to both the spread and physical presence of COVID-19 on persons and property throughout the areas immediately surrounding Plaintiffs' insured premises within a one mile vicinity as well as the hazards posed by exposure to any human respiratory droplets within that same area.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                      RECEIVED NYSCEF: 03/05/2021

145.   Civil Authority Orders seriously crippled virtually all hotel revenue demand drivers (i.e. businesses, restaurants, entertainment venues, schools and so forth). This had led to disastrous consequences for hotel businesses such as Plaintiff, by severely reducing demand, disrupting operations and supply chains, causing a loss of income

146.   Plaintiff submitted timely insurance claims to defendant.

147.   Any purported viral exclusion does not apply here because a legal proximate cause of the Plaintiffs losses was the civil authority orders issued by the State of New York and similar civil authority orders.

148.   Also, while the policy contains a virus exclusion – the policy does not exclude coverage for a national state of disaster like the current pandemic. The insurance industry knows how to exclude "pandemics and epidemics" and has done so in other contexts. See, https://www.travelinsurance.com/brochure/Allianz/Allianz_Basic_FL_0216.pdf ("You aren't covered for any loss that results directly or indirectly from any of the following general exclusions. The following Events: an epidemic or pandemic[.]"). Here it did not.

149.   The simple truth is that Defendant pre-determined its intent to deny coverage for any business interruption claim related to COVID-19 pandemic and civil authority orders connected to the COVID-19 pandemic; which explains the quick and cursory denial of the claims timely submitted to defendants herein.

150.   A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the businesses due to the shutdown caused by the Civil Authority Orders is necessary. As a result of these Orders, Plaintiff has incurred, and continue to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                   RECEIVED NYSCEF: 03/05/2021

## COUNT I
## DECLARATORY RELIEF

151     Plaintiff re-alleges and incorporate by reference into this cause of action each and every allegation set forth in each and every paragraph of this Complaint.

152.    Pursuant to NY CPLR §3001, the Supreme Court may render a Declaratory Judgment having the effect of a final judgment as to the rights and other legal relations of the parties to a justiciable controversy whether or not further relief is or could be claimed. If the Court declines to render a judgment is shall state its grounds.

153.    An actual controversy has arisen between Plaintiff and the Defendant as to the rights, duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on information and belief, the Defendant disputes and denies that:

    a.   The Civil Authority Orders constitute a complete or partial prohibition of access to Plaintiffs' Covered Properties;

    b.   The prohibition of access by the Civil Authority Orders has specifically "prohibit[ed] access to the premises" in whole or in part as set forth in the Policy's Civil Authority provision;

    c.   The Policy virus exclusion does not apply here;

    d.   The Civil Authority Orders trigger coverage;

    e.   The Policy includes coverage for losses caused by the Civil Authority Orders;

    f.   The Policy includes coverage for losses caused by the Coronavirus;

    g.   The Policy provides coverage to Plaintiffs for any current and future civil authority closures of businesses in New York County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters;

    h.   The Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the insured premises or immediate area of the Covered Properties; and,

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021

NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 03/05/2021

    i.   Resolution of the duties, responsibilities and obligation of the parties is necessary as no adequate remedy at law exists and a declaration of the Court is needed to resolve the dispute and controversy.

154.   Plaintiff seeks a Declaratory Judgement to determine whether the Civil Authority Orders prohibit access to the premises in whole or in part of Plaintiff's Covered Property as set forth in the Policy's Civil Authority provision.

155.   Plaintiff further seeks a Declaratory Judgement to affirm that the Civil Authority Orders trigger coverage.

156.   Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in New York County and New York State due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

## COUNT II: BREACH OF CONTRACT

156.   Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

157.   Plaintiff's Policy is an insurance contract pursuant to which Defendants were paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy

158.   As set forth in the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded in the Policy.

159.  Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 03/05/2021

160. Plaintiff has suffered a direct physical loss of and damage to its property as a result of COVID-19 and the order of civil authorities, which has resulted in the suspension of its business operations causing Plaintiff to suffer losses of Business Income.

161. These suspensions and losses triggered Business Income coverage under the Policy.

162. In addition, Plaintiff's Policy obligated Defendants to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

163. Plaintiff has suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy.

164. These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiff's Policy.

165. In addition, Plaintiff's Policy obligated Defendants to pay for Extra Expenses incurred by Plaintiff during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

166. Plaintiff has suffered a direct physical loss of and damage to it property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations. As a result, Plaintiff has incurred Extra Expenses.

167. These expenses triggered Extra Expense coverage under Plaintiff's Policy and the policies of other Class members.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021

NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 03/05/2021

168. Plaintiff has complied with all applicable provisions of its Policy, including payment of premiums and providing notice to Defendants.

169.    Defendants, without justification, dispute that the Policy provides coverage for the losses sustained by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff herein prays as follows:

1) For a declaration that the Civil Authority Orders constitute a prohibition of access in whole or in part to Plaintiff's Covered Property.

2) For a declaration that the prohibition of access by the Civil Authority Orders "prohibits access to the premises" in whole or in part as stated in the Policy.

3) For a declaration that the Civil Authority Orders trigger coverage under the Policy.

4) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in New York County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5) For a declaration that the virus exclusion does not preclude coverage of Plaintiff's loss of business income or the physical loss or damage suffered at the Insured Property;

6) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property;

7) Business Income, Civil Authority and Extra Expense losses and expenses incurred and sustained as a result of COVID-19 and related civil authority actions are insured and covered losses and expenses under Plaintiff's Policy;

8) Defendants are obligated to pay for the full amount of the Business Income, Civil Authority and Extra Expense losses and expenses sustained and incurred, and to be sustained and incurred, as a result of COVID-19 and related civil authority actions.

9) Plaintiff seeks compensatory damages resulting from Defendants' breaches of the Policy and seeks all other and further relief deemed appropriate by this Court, including attorneys' fees and costs.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021
NYSCEF DOC. NO. 1                                        RECEIVED NYSCEF: 03/05/2021

10) Entering Judgment on Count II of the Complaint for Breach of Contract, and awarding damages for said breach in an amount to be determined at trial;

11) Ordering that Defendants pay both pre- and post-judgment interest on any amounts awarded;

12) Awarding Plaintiff its costs and attorneys' fees;

13) Granting such other and further relief as this Court deems just and proper

**TRIAL BY JURY IS DEMANDED**

Plaintiff demands a trial by jury.

Dated: March 5, 2021

Respectfully submitted,

Randolph Janis, Esq.
**DOUGLAS & LONDON, P.C.**
59 Maiden Lane, 6th Floor
New York, New York 10038
Phone: (212) 566 7500
Fax: (212) 566 7501
rjanis@douglasandlondon.com

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021



**Policy Holder Notice - Countrywide**

# IMPORTANT INFORMATION

## REQUEST FOR JURISDICTIONAL
## INSPECTION OF PRESSURE EQUIPMENT

Many states and some cities issue certificates permitting the continued operation of certain equipment such as boilers, water heaters and pressure vessels. Periodic inspections are required to renew these certificates. In most jurisdictions, as part of an equipment breakdown policy, insurance company employees who have been licensed are authorized to perform these inspections.

**If:**

- You own/operate pressure equipment that requires a certificate from a state, county, city or parish to operate legally, and
- We insure that equipment under this Policy, and
- You would like CNA to perform the next required inspection:

**Then:**

Complete the form on page 2 and email, mail or fax as instructed:

***No need to call or respond if you do not have boilers or pressure vessels that require operating certificates.***

**BY EMAIL**: EBinspections@cna.com (please scan the completed form and attach)

**BY MAIL**:

CNA Equipment Breakdown Risk Control
184 Liberty Corner Road
4th Floor, Suite 402
Warren, NJ 07059

**BY FAX**:    609-524-3649

**BY PHONE**:    call 866-262-0540 – press "4"

Questions or inquiries can be made via any of the above methods of communication

**Please note the following**:

- Your jurisdiction(s) may charge you a fee for renewing a certificate. It is your responsibility to pay such a fee.
- If CNA is required to pay the fee on your behalf, CNA will invoice you to recover that fee.
- All the provisions of the INSPECTION AND SURVEYS condition apply to the inspections described in this notice.

**Failure to notify us can result in fines and penalties being issued to the equipment owner by the governing jurisdiction. CNA is not responsible for said fines or penalties.**

### REMINDER

If new equipment is installed or old equipment replaced that requires a jurisdictional inspection, please let us know by transmitting the new information to the postal address/fax number/email address listed above and on the following page.

If this is a renewal and information (locations) has not changed, please disregard this notice.

If inspection and maintenance are outside of your area of responsibility, we would appreciate your forwarding this notice to the appropriate person. **If no response is received, we are assuming there are no jurisdictional objects at your location(s) and no inspections are required.**

**Note: Jurisdictional inspections are not conducted outside of the United States, its territories, possessions, or Canada.**

CNA62823XX (07-17)
Page 1  of 2

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

**CNA**

**Policy Holder Notice - Countrywide**

## REQUEST FOR JURISDICTIONAL INSPECTION

| | |
|---|---|
| **Insured Name:** Plaza Athenee Hotel Company Limited | |
| **Facility/Location Name:** | |

| | |
|---|---|
| **Policy Number:** 6023357065 | **Policy Term:** March 08, 2019 **to** June 01, 2020 |

| | |
|---|---|
| **Contact Person & Title:** | |
| **Contact Phone Number(s)—Office:** | **Cell:** |
| **Contact Email Address:** | |

| Location Address [1] | City | State | Zip |
|---|---|---|---|
| 1. | | | |
| 2. | | | |
| 3. | | | |

| Equipment Type [2,3,4] (Boiler, Pressure Vessel) | Registration Number (State #) | Certificate Expiration Date |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |

**Completed By (Name & Date):** _____

**Telephone #/Email Address:** _____

**BY EMAIL:**  EBinspections@cna.com (please scan the completed form and attach)

**BY MAIL:**                                                              **BY FAX:** 609-524-3649

CNA Equipment Breakdown Risk Control
184 Liberty Corner Road
4th Floor, Suite 402
Warren, NJ 07059                    **BY PHONE:** call 866-262-0540 – press "4"

[1] If multiple objects and/or multiple locations, please list all required information on separate page(s).

[2] Boiler is defined as an enclosed vessel heated by fuel or electricity to produce steam or hot water.

[3] Pressure Vessel is defined as an enclosed vessel (tank) greater than 6 cubic feet (18 inches x 40 inches) to store liquid or gas under pressure for use when needed.

[4] LPG (ex: propane, propylene, butane & butylenes) Tank with vapor pressures not exceeding that allowed for commercial propane. California requirement only.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021
NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 03/05/2021



**Policy Holder Notice - New York Free Trade Zone**

## NEW YORK FREE TRADE ZONE DISCLOSURE NOTICE

**If the risk is classified as a Class 1 or Class 2, the following Notice applies:**

**NOTICE: THESE POLICY FORMS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

**If the risk is classified as a Class 3, the following Notice applies:**

**NOTICE: THESE POLICY FORMS ARE NOT SUBJECT TO THE APPROVAL REQUIREMENTS AND THE APPLICABLE RATES ARE EXEMPT FROM THE FILING REQUIREMENTS OF THE NEW YORK INSURANCE LAW AND REGULATIONS. HOWEVER, THE FORMS AND RATES MUST MEET THE MINIMUM STANDARDS OF THE NEW YORK INSURANCE LAW AND REGULATIONS.**

Class Code: 1          Class 2 Classification Code:

CNA72342NYFTZ (01-13)          © CNA  All Rights Reserved.          Page 1 of 1

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021



# Large Property Claims Reporting

All new property claims under CNA Large Property policies should be reported to our centralized Loss Processing Center. Claims will be assigned to our specialized technical staff or to one of our preferred service providers.

## FOR EMERGENCY CONTACT:

- Our 24-hour toll free number for direct contact with the CNA Loss Processing Center is:

    877-261-6676

## FOR NON-EMERGENCY:

- Property claims may  be reported by toll free <u>fax</u> to the CNA Loss Processing Center at:

    877-566-2728

- Property claims may also be reported via <u>email</u> to the CNA Loss Processing Center at:

    CNAproperty.LPC@cna.com

Claims reported by fax or email are processed during normal business hours. If your claim is an emergency requiring after hours contact with an adjuster, call the 24-hour toll free number.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021



## Commercial Property Coverage Part Declarations

CNA Insurance
151 N. Franklin St.
Chicago, IL 60606

| Branch | Producer Number | Prefix | Policy Number |
|--------|----------------|--------|---------------|
| 690 | 502195 | PSR | 6023357065 |

NAMED INSURED & ADDRESS:

Plaza Athenee Hotel Company Limited
37 East 64th St
New York, NY 10065

INSURANCE IS PROVIDED BY THE COMPANY DESIGNATED BELOW (A stock insurance company, herein called the company)

**Continental Casualty Company**

NAMED INSURED IS: Corporation
SPECIFY OTHER:

Policy Period: From March 08, 2019 to June 01, 2020
This policy becomes effective and expires at 12:01 a.m. Standard Time at Your Mailing Address Shown Above.

**In Return For The Payment Of The Premium, And Subject To All The Terms Contained Herein, We Agree With You To Provide The Insurance As Stated.**

☐ "X" if Supplemental Declarations is attached

**DESCRIPTION OF PREMISES**

Per CNA Signature Property Policy

**COVERAGES PROVIDED** – INSURANCE AT THE DESCRIBED PREMISES APPLIES ONLY FOR COVERAGES FOR WHICH A LIMIT IS SHOWN

Per CNA Signature Property Policy

**OPTIONAL COVERAGES** – APPLICABLE ONLY WHEN ENTRIES ARE MADE IN THE SCHEDULE BELOW

Per CNA Signature Property Policy

**MORTGAGE HOLDER(S)**

Per CNA Signature Property Policy

**DEDUCTIBLE**

Per CNA Signature Property Policy

**FORMS AND ENDORSEMENTS APPLICABLE AT TIME OF ISSUANCE:**

APPLICABLE TO ALL COVERAGES: SEE ATTACHED SCHEDULE OF FORMS AND ENDORSEMENTS
APPLICABLE TO SPECIFIC PREMISES/COVERAGES:

## TOTAL PREMIUM PAYABLE AT INCEPTION:                $124,926.43

Premium includes the following amount for Terrorism coverage:          $4,316.00

Total amount payable includes Surtaxes/Surcharges of:          $782.43
    New York Fire Insurance Fee          $782.43
IN WITNESS WHEREOF, the insurer has caused this Policy to be signed by its Chairman and Secretary

**Chairman of the Board**                **Secretary**

G55161C (01-09)
Page 1   of 2

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021



**SCHEDULE OF FORMS AND ENDORSEMENTS**

Forms and endorsements attached to this Policy at inception are as follows:

| FORM NAME | FORM NUMBER |
|---|---|
| New York Free Trade Zone Disclosure Notice | CNA72342NYFTZ (01-13) |
| Loss Notification | LPCR001 (08-10) |
| Signature Domestic Policy 2008 | G300709A (10-08) |
| Equipment Breakdown Coverage | G300710A (10-08) |
| Earth Movement & Loss Conditions Amendatory Endorsement | G300981B (03-18) |
| Minimum Earned Premium | SR 003 11 09 |
| Mortgagee/Loss Payee Endorsement | LPMOR001 (08-11) |
| Permission for Excess Insurance | CNA55080XX (01-12) |
| Terrorism Coverage | G300714A (10-08) |
| Water or Other Liquid Damage Deductible | CNA76131XX (09-13) |
|  |  |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
INDEX NO. 651503/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 03/05/2021

| CNA SIGNATURE PROPERTY POLICY |
| --- |

# SCHEDULE OF SECTIONS INCLUDED

| SECTIONS | PAGE NO. |
| --- | --- |
| **SECTION I. DECLARATIONS** | **4** |
|     1.  Named Insured and Mailing Address | 4 |
|     2.  Term | 4 |
|     3.  Territorial Limits | 4 |
|     4.  Limits of Liability | 4 |
|     5.  Time Limits | 6 |
|     6.  Deductible(s) | 7 |
| **SECTION II. COVERAGE** | **10** |
| **A.  Property** | **10** |
|     1.  Covered Property and Related Interests | 10 |
|     2.  Property Not Covered | 10 |
| **B.  Time Element** | **11** |
|     1.  Business Interuption (Gross Earnings) | 11 |
| **C.  Additional Coverages, Coverage Extensions and Limitations** | **13** |
|     1.  Accounts Receivable | 13 |
|     2.  Arson and Crime Reward | 13 |
|     3.  Brand or Trademark Removal | 13 |
|     4.  Contigent Business Interruption (Gross Earnings) | 14 |
|     5.  Contract Penalties | 14 |
|     6.  Debris Removal | 14 |
|     7.  Decontamination Expense | 14 |
|     8.  Defense Costs | 15 |
|     9.  Deferred Payments | 15 |
|     10.  Denial of Access by Civil Authority and Ingress-Egress | 15 |
|     11.  Electronic Data Processing | 15 |
|     12.  Expediting Expenses | 16 |
|     13.  Expenses Related to Reducing Loss | 16 |
|     14.  Extended Period of Indemnity | 16 |
|     15.  Extra Expense | 17 |
|     16.  Fine Arts | 17 |
|     17.  Fire Brigade Charges and Extinguishing Expenses | 18 |
|     18.  Fungi, Wet Rot, Dry Rot and Microbes | 18 |
|     19.  Leasehold Interest | 19 |
|     20.  Loss Adjustment Expense | 19 |
|     21.  Machinery/Pair And Set | 19 |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 03/05/2021

| CNA SIGNATURE PROPERTY POLICY |
|:---:|

# SCHEDULE OF SECTIONS INCLUDED

**SECTIONS**                                                                    **PAGE NO.**

| | | |
|---|---|---:|
| 22. | Newly Acquired or Constructed Property | 20 |
| 23. | Ordinance or Law, Demolition Cost, and Increased Cost of Construction | 20 |
| 24. | Pollution Clean Up and Removal | 21 |
| 25. | Preservation of Property | 21 |
| 26. | Professional Fees | 21 |
| 27. | Property in the Course of Construction – Soft Costs | 21 |
| 28. | Property Off Premises | 22 |
| 29. | Radioactive Contamination | 22 |
| 30. | Rental Value | 22 |
| 31. | Research and Development Expenses | 23 |
| 32. | Royalties | 23 |
| 33. | Service Interruption | 23 |
| 34. | Transit | 24 |
| 35. | Trees, Shrubs, Plants and Land Improvements | 24 |
| 36. | Unintentional Errors and Omissions | 24 |
| 37. | Unscheduled Locations | 24 |
| 38. | Valuable Papers & Records | 25 |
| **D.** | **Exclusions** | **25** |
| 1. | Group 1. Exclusions | 25 |
| 2. | Group 2. Exclusions | 27 |
| 3. | Time Element Exclusions | 28 |
| **SECTION III.** | **GENERAL CONDITIONS** | **30** |
| 1. | Abandonment | 30 |
| 2. | Access to Books and Records | 30 |
| 3. | Assignment of the Policy | 30 |
| 4. | Cancellation | 30 |
| 5. | Certificates of Insurance | 30 |
| 6. | Concealment, Misrepresentation or Fraud | 30 |
| 7. | Conformance with State Statutes | 30 |
| 8. | Contributing Insurance | 31 |
| 9. | Currency | 31 |
| 10. | Divisible Contract Clause | 31 |
| 11. | Economic and Trade Sanctions | 31 |
| 12. | Excess Insurance | 31 |
| 13. | Inspections | 32 |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 03/05/2021

| CNA SIGNATURE PROPERTY POLICY |
|---|

# SCHEDULE OF SECTIONS INCLUDED

| __SECTIONS__ | | __PAGE NO.__ |
|---|---|---|
| 14. | Impairment of Recovery Rights for Property in Transit | 32 |
| 15. | Loss Payable Clause | 32 |
| 16. | Mortgagee Interests and Obligations | 32 |
| 17. | No Benefit to Bailee | 33 |
| 18. | Other Insurance | 33 |
| 19. | Reinstatement | 33 |
| 20. | Subrogation | 33 |
| 21. | Time | 34 |
| 22. | Titles of Paragraphs | 34 |
| **SECTION IV. LOSS CONDITIONS** | | **35** |
| 1. | Appraisal | 35 |
| 2. | Assistance and Cooperation of the Insured | 35 |
| 3. | Claims Against Carrier | 35 |
| 4. | Duties after a Loss | 35 |
| 5. | Experience of the Business | 36 |
| 6. | Partial Payment of Loss | 36 |
| 7. | Payment of Loss | 36 |
| 8. | Resumption of Operations | 36 |
| 9. | Suit Against the Insurers | 37 |
| 10. | Salvage and Recoveries | 37 |
| 11. | Vacancy | 37 |
| 12. | Valuation | 38 |
| **GLOSSARY** | | **41** |
| **EQUIPMENT BREAKDOWN COVERAGE** | | **Attachment** |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

(All words or terms in **_bold, italic, underlined_** format are defined in the Glossary at the end of this policy)

## I.    DECLARATIONS

1. **Named Insured and Mailing Address:**

   **Plaza Athenee Hotel Company Limited
   37 East 64th St
   New York, NY 10065**

   and its **_Affiliated or Subsidiary Organizations_** as of the date hereof.

   The word "Insured" shall include as Named Insured any organization which is acquired or formed by the Insured and over which the Insured maintains an interest of more than fifty percent (50%) (other than a joint venture), provided that the Company is promptly notified of the acquisition or the formation within ninety (90) days after such organization is acquired or formed by the Insured. However, any such organization which is acquired by the Insured and over which the Insured maintains an interest of more than fifty percent (50%) shall only be covered from the effective date of such acquisition or formation.

2. **TERM**

   This insurance shall attach on **March 08, 2019** and cover continuously thereafter until **June 01, 2020** at 12:01 AM Local Standard Time at the mailing address shown above or for such further period as may be agreed upon in writing.

3. **TERRITORIAL LIMITS**

   The coverage territory is The United States of America, including its territories and possessions, and Canada.

4. **LIMITS OF LIABILITY**

   **POLICY LIMITS:**

   Location Limits are: Blanket all coverages for the schedule of **_Locations_** and values dated 03/25/2019 attached to this policy or on file with the Company, subject to a maximum limit any one **_Occurrence_** of:                                                    $130,000,000

   **And further subject to the individual sublimits stated below.**

   **These sublimits are part of and not in addition to the above-stated POLICY LIMITS, the Property sublimits and the Business Interruption sublimits.**

   Coverage hereunder applies up to, but not more than, the stated limits per **_Occurrence_**, except where an **_Annual Aggregate_** is stated. Coverage attaches only to those items for which a dollar amount or "INCLUDED" is shown. "INCLUDED" means the coverage does not have a separate sublimit and is included within the applicable sublimits as shown above. See Section **II. COVERAGE** for description of items.

   | | | |
   |---|---|---:|
   | a. | Accounts receivable: | $100,000 |
   | b. | Arson and Crime Reward: | $5,000 |
   | c. | Brand or Trademark Removal: | $50,000 |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

| **CNA SIGNATURE PROPERTY POLICY** |
|---|

| | | |
|---|---|---:|
| d. | Contingent Business Interruption (Gross Earnings): | |
| | • Scheduled dependent property | NOT COVERED |
| | • Unscheduled dependent property within **TERRITORIAL LIMITS** | NOT COVERED |
| e. | Contract Penalties: | $5,000 |
| f. | Debris Removal: | $1,000,000 |
| g. | Decontamination Expense: | $5,000 |
| h. | Defense Costs: | INCLUDED |
| i. | Deferred Payments: | $5,000 |
| j. | Denial of Access by Civil Authority / Ingress – Egress: | $50,000 |
| k. | ***Earth Movement – Annual Aggregate*** at all ***Locations*** inclusive of ***Locations*** further limited as follows: | $10,000,000 |
| | (1) ***Locations*** in Alaska, California, Hawaii, Puerto Rico – ***Annual Aggregate***: | NOT COVERED |
| | (2) ***Locations*** in ***Critical New Madrid Areas*** – ***Annual Aggregate***: | NOT COVERED |
| | (3) ***Locations*** in ***Critical Pacific Northwest Areas*** – ***Annual Aggregate***: | NOT COVERED |
| l. | ***Electronic Data Processing***: | |
| | • Electronic data processing equipment | INCLUDED |
| | • For additional perils specified in extension | INCLUDED |
| | • Cost of research to replace or restore information lost: | $50,000 |
| | • Expense to Extract ***Computer Viruses***: | $2,500 |
| | • Unauthorized Computer Access: | $10,000 |
| m. | Equipment Breakdown (refer to addendum form): | INCLUDED |
| | • Ammonia Contamination | NOT COVERED |
| | • Spoilage | NOT COVERED |
| n. | Expediting Expense: | $50,000 |
| o. | Extra Expense: | $50,000 |
| p. | Fine Arts: | $50,000 |
| q. | Fire Brigade Charges and Extinguishing Expenses: | $10,000 |
| r. | ***Flood – Annual Aggregate*** at all ***Locations*** inclusive of ***Locations*** further limited below: | $10,000,000 |
| | • ***Locations*** wholly or partially situated in those areas designated as 100 Year (1% annual chance of flooding) floodplains by the Federal Emergency Management Agency or other governmental authority – ***Annual Aggregate***: | NOT COVERED |
| | • ***Locations*** outside of 100 Year (1% annual chance of flooding) floodplains, but wholly or partially situated in those areas designated as 500 Year (0.2% annual chance of flooding) floodplains by the Federal Emergency Management Agency or other governmental authority - or areas where the flood hazard has not been determined by the Federal Emergency Management Agency or other governmental authority – ***Annual Aggregate***: | NOT COVERED |
| s. | ***Fungi***, Wet Rot, Dry Rot, and ***Microbes*** - ***Annual Aggregate***: | NOT COVERED |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

| | CNA SIGNATURE PROPERTY POLICY | |
|---|---|---|
| t. | **_Leasehold Interest_**: | NOT COVERED |
| u. | Loss Adjustment Expense: | $10,000 |
| v. | **_Named Storm_** per **_occurrence_** all covered loss or damage for all **_Locations_** inclusive of all applicable sublimits, and **_Locations_** further limited as follows: | INCLUDED |
| | • **_Named Storm_** per **_occurrence_** all **_Locations_** in Puerto Rico and the U.S. Virgin Islands, the states of Florida and Hawaii and **_First Tier Areas_** in all other states: | INCLUDED |
| w. | Newly Acquired or Constructed Property Until Reported to the Company – All Coverages Combined: | $1,000,000 |
| x. | Ordinance or Law: | |
| | • Undamaged Portion of Building: | INCLUDED |
| | • Demolition Cost, and Increased Cost of Construction: | $250,000 |
| | • Business Interruption, Extra Expense, or Rental Value: | $100,000 |
| y. | Pollution Cleanup and Removal – **_Annual Aggregate_**: | $10,000 |
| z. | Preservation of Property | INCLUDED |
| aa. | Professional Fees: | INCLUDED |
| bb. | Property in Course of Construction – Soft Costs: | $100,000 |
| cc. | Property Off Premises – Including Fairs, Trade Shows and Exhibits: | $25,000 |
| dd. | Radioactive Contamination: | $25,000 |
| ee. | Rental Value: | INCLUDED |
| ff. | Research and Development Expenses: | $50,000 |
| gg. | Royalties: | $50,000 |
| hh. | Service Interruption: | |
| | • Property / **_Time Element_** Combined: | $50,000 |
| ii. | Transit: | |
| | • Per **_Occurrence_**: | NOT COVERED |
| | • Per Conveyance: | NOT COVERED |
| jj. | Trees, Shrubs, Plants and **_Land Improvements_** | |
| | • Per **_Occurrence_**: | $10,000 |
| | • Per Tree, Shrub or Plant: | $2,500 |
| kk. | Unintentional Errors and Omissions: | $100,000 |
| ll. | Unscheduled **_Locations_** – All Coverages Combined: | $100,000 |
| mm. | Valuable Papers and Records: | $100,000 |
| **5.** | **Time Limits:** | |
| a. | Business Interruption Period of Indemnity: | Twelve (12) Months |
| b. | Denial of Access by Civil Authority / Ingress – Egress: | Thirty (30) Days |
| c. | Extended Period of Indemnity: | Thirty (30) Days |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

| | CNA SIGNATURE PROPERTY POLICY |
|---|---|

d.   Newly Acquired or Constructed Property:                              Ninety (90) Days

e.   Ordinary Payroll Included in Determination of Gross Earnings:        Zero (0) Days

f.   Service Interruption Qualifying Period:                        Forty Eight (48) Hours

**6.   DEDUCTIBLES**

All claims for loss, damage or expense covered under this policy and arising out of or resulting from any one ***Occurrence*** shall be adjusted as one claim. Except as provided below, from the amount of each such adjusted loss the sum of $10,000 shall be deducted before the Company shall be liable for any loss, damage or expense covered.

Except as provided below, in the event of any one ***Occurrence*** where two or more deductibles apply, the total to be deducted shall not exceed the largest deductible applicable.

When this policy insures more than one ***Location***, the deductible will apply against the total loss or damage covered by this Policy in an ***Occurrence***. However, a deductible that applies on a per ***Location*** basis, will apply separately to each ***Location*** where the physical loss or damage occurred regardless of the number of ***Locations*** involved in the ***Occurrence***.

If two or more deductibles apply on a per ***Location*** basis in an ***Occurrence***, the largest deductible applying to each ***Location*** will be applied separately to each such ***Location***.

If two or more minimum deductibles per ***Occurrence*** apply to loss or damage due to ***Named Storm*** or ***Earth Movement***, only the largest minimum deductible will be applied.

If separate physical damage and ***Time Element*** loss deductibles are shown, then the deductibles shall apply separately.

a.   **(1)**   As respects loss or damage due to ***Flood*** occurring at all ***Locations*** except as may be further provided below, the deductible shall be $25,000  per ***Occurrence***.

   **(2)**   As respects loss or damage due to ***Flood*** occurring anywhere within the policy territory at ***Locations*** wholly or partially situated in those areas designated as 100 Year (1% annual chance of flooding)  floodplains by the Federal Emergency Management Agency or other governmental authority, the deductible for ***Flood*** shall be the sum of:

   • NOT COVERED for physical damage to covered real property;

   • NOT COVERED for physical damage to covered personal property while at an insured ***Location***; and

   • NOT COVERED for ***Time Element***;

   for each ***Location*** damaged.

   **(3)**   As respects loss or damage due to ***Flood*** occurring anywhere within the policy territory at ***Locations*** outside of 100 Year (1% annual chance of flooding) floodplains, but wholly or partially situated in those areas designated as 500 Year (0.2% annual chance of flooding)  floodplains by the Federal Emergency Management Agency or other governmental authority or areas where the flood hazard has not been determined by the Federal Emergency Management Agency or other governmental authority, the deductible for ***Flood*** shall be the sum of:

   • NOT COVERED  for physical damage to covered real property;

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

- NOT COVERED for physical damage to covered personal property while at an insured location; and
- NOT COVERED for *Time Element*;

for each *Location* damaged.

However, this deductible shall not apply to ensuing loss by fire or explosion.

b. **(1)** As respects loss or damage due to *Earth Movement* occurring at all *Locations* except as may be further provided below, the deductible shall be $25,000 per *Occurrence*.

**(2)** As respects loss or damage due to *Earth Movement* at *Locations* in the states of California, Hawaii and Alaska, and Puerto Rico, the deductible shall be the sum of:

- NOT COVERED for physical damage per *Location*, and

- NOT COVERED for *Time Element* per *Location*

Subject to a minimum of NOT COVERED in any one *Occurrence*.

**(3)** As respects loss or damage due to *Earth Movement* at *Locations* in *Critical New Madrid Areas* the deductible shall be the sum of:

- NOT COVERED for physical damage per *Location*, and

- NOT COVERED for *Time Element* per *Location*.

Subject to a minimum of NOT COVERED in any one *Occurrence*.

**(4)** As respects loss or damage due to *Earth Movement* at *Locations* in *Critical Pacific Northwest Areas*, the deductible shall be the sum of:

- NOT COVERED for physical damage per *Location*, and

- NOT COVERED for *Time Element* per *Location*.

Subject to a minimum of NOT COVERED in any one *Occurrence*.

However, this deductible shall not apply to ensuing loss by fire, explosion or leakage from fire protective systems or devices.

c. **(1)** As respects loss or damage due to wind or hail (other than wind or hail associated with a *Named Storm*) occurring at all *Locations*, except as may be further provided below, the deductible shall be $10,000 per *Occurrence*.

d. **(1)** As respects loss or damage due to wind or hail associated with a *Named Storm* occurring at all *Locations*, except as may be further provided below, the deductible shall be $10,000 per *Occurrence*.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

(2) As respects loss or damage due to wind or hail associated with a ***Named Storm*** at ***Locations*** in Puerto Rico or the U.S. Virgin Islands, the deductible shall be the sum of:

- Five percent (5%) for physical damage per ***Location***, and

- Five percent (5%) for ***Time Element*** loss per ***Location***.

Subject to a minimum of $100,000 in any one ***Occurrence***.

(3) As respects loss or damage due to wind or hail associated with a ***Named Storm*** at ***Locations*** in the states of Florida and Hawaii, and in ***First Tier Areas*** in all other states, the deductible shall be the sum of:

- Five percent (5%) for physical damage per ***Location***, and

- Five percent (5%) for ***Time Element*** loss per ***Location***.

Subject to a minimum of $100,000 in any one ***Occurrence***.

e. As respects loss or damage under the additional coverage **TRANSIT** the deductible shall be NOT COVERED.

f. As respects loss or damage under the additional coverage **Equipment Breakdown** the deductible shall be:

Physical Damage: $25,000

***Time Element***: Days/Hours: 24 Hours

Spoilage: NOT COVERED of Loss subject to a minimum of NOT COVERED per ***Occurrence***.

**Application of *Earth Movement* and *Named Storm* Percentage Deductibles:**

**Physical Damage:** In the event of a claim for physical damage loss, the Company shall not be liable unless the Insured sustains a loss greater than the applicable percentage of the property value including foundations (replacement cost or actual cash value based on Section **IV. 12. VALUATION** of this form), at each ***Location*** where the physical damage occurred, and then only for its share of that greater amount in excess of the applicable percentage.

***Time Element***: In the event of a claim for ***Time Element*** loss, the Company shall not be liable unless the Insured sustains a loss greater than the applicable percentage of the full annual ***Time Element*** value which would have been earned in the twelve (12) month period following the loss by use of the facilities at each ***Location*** where the physical damage occurred, and then only for its share of that greater amount in excess of the applicable percentage.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
INDEX NO. 651503/2021

NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

## II.   COVERAGE

Except as hereafter excluded and subject to the **LIMITS OF LIABILITY** in Section **I.4.** and all other policy provisions, this policy insures against risks of direct physical loss of or damage to property and/or interests described herein at covered **_Locations_**. Unless otherwise indicated, all items contained herein are part of and not in addition to the **POLICY LIMIT** shown in Section **I.4.**

## A.   PROPERTY

1.  **COVERED PROPERTY AND RELATED INTERESTS**

    a.  The interest of the Insured in all real and personal property owned or used by the Insured, or hereafter erected, installed, or acquired, including while in course of building, erection, installation, and assembly, and including interest in **_Improvements and Betterments_**.

    In the event of loss or damage, the Company agrees to accept and consider the Insured as sole and unconditional owner of **_Improvements and Betterments_**, notwithstanding any contracts or leases to the contrary.

    b.  The interest of the Insured in the real and personal property of others in the Insured's care, custody and control, and the Insured's liability imposed by law or assumed by contract for physical loss or damage to such property.

    c.  Personal property of the Insured's officers and employees while at **_Locations_** of the Insured, or within one thousand (1,000) feet thereof.

    For the purpose of coverage provided herein, personal property shall mean business personal property owned by the Insured or by officers and employees of the Insured which is usual to the occupancy of the Insured, including manuscripts, furniture, fixtures, equipment (including Electronic Data Processing Equipment) and supplies not otherwise excluded under this policy. Such property is covered while at or within one thousand (1,000) feet of the **_Locations_** insured by this policy.

2.  **PROPERTY NOT COVERED**

    **This policy does <u>not</u> cover the following types of property or interests (unless otherwise provided for elsewhere in this form or endorsed hereon):**

    a.  **_Money_**, deeds, accounts, bills, stamps, letters of credit, evidence of debt, notes, **_Securities_**;

    b.  Standing timber, growing crops, trees, shrubs and plants, animals or livestock except stock for sale;

    c.  Land (including water or any other substance in land, or water on land), land values, excavations, the cost to replace land lost to **_Earth Movement_** or **_Flood_**;

    d.  Personal property leased or rented to others for more than 180 days; or property sold by the Insured under conditional sale, trust agreement, installment plan, or other deferred payment plan after such property has been delivered to customers;

    e.  Property in the course of transit, except as provided in Section **II.C.34. TRANSIT**;

    f.  Transmission and distribution lines of any type, owned, operated, controlled by or leased by the Insured, beyond one thousand (1,000) feet of covered **_Locations_**;

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

g.   Satellites and spacecraft on the launch pad or after launch;

h.   Furs, jewelry, watches, precious stones and metals, gold, silver, including bullion and fine arts other than as included in Section **I.4.** This exclusion does not apply to precious metals and stones used by the Insured for industrial purposes;

i.   Watercraft, aircraft; railroad rolling stock, and motor vehicles licensed for highway use when not at the Insured's ***Locations***;

j.   Underground mines, caves, caverns, tunnels and any property contained therein or any property underground. This exclusion does not apply to footings and foundations of covered buildings or machinery; underground pipes, flues, drains and tanks; or property in basements or cellars;

k.   Off-shore property, drilling rigs, production rigs and platforms, including personal property thereon;

l.   Bridges, dams, dikes, docks, bulkheads, reservoirs, retaining walls, pilings, piers and wharves, when loss or damage is caused by water pressure, ice or impact of watercraft;

m.   Contraband or any property in course of illegal transport or trade;

n.   Property or interests more specifically covered under another policy, except as excess under the terms of that policy.

---

## B.   TIME ELEMENT

1.   **BUSINESS INTERRUPTION (GROSS EARNINGS)**

a.   This policy covers against loss resulting from necessary interruption of business caused by direct physical loss of or damage to covered property, except ***Finished Stock***, by the peril(s) insured against and occurring during the term of this policy at covered ***Locations*** occupied by the Insured, subject to the sublimit specified in Section**I.4.** of this policy.

In the event of such physical loss or damage the Company shall be liable for the actual loss sustained by the Insured resulting directly from such interruption of business, but not exceeding the reduction in **Gross Earnings** as set forth below less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy, but in no event to exceed the number of months specified in Section **I.5. TIME LIMITS** if a Business Interruption Period of Indemnity limit is specified.

b.   **Determination of Gross Earnings:**

(1)   Manufacturing ***Locations***: **Gross Earnings** are the sum of:

(a)   Total net sales value of production;

(b)   Total net sales of ***Merchandise***; and

(c)   Other earnings derived from operations of the business;

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
INDEX NO. 651503/2021
NYSCEF DOC. NO. 2
RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

*Less the cost of :*

(d)  *__Raw Stock__* from which production is derived;

(e)  Supplies consisting of materials consumed directly in the conversion of such *__Raw Stock__* into *__Finished Stock__* or in supplying the service(s) sold by the Insured;

(f)  *__Merchandise__* sold, including packaging materials therefore;

(g)  Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract;

(h)  Ordinary Payroll expense (the entire payroll expense for all employees of the insured, except officers, executives, department managers and employees under contract) beyond the number of days included in Section **I.5.** of this policy;

(i)  Depreciation Expense for any asset destroyed by perils insured hereunder; and

(j)  Other Discontinued Expenses meaning any other operating expenses discontinued as a result of the direct physical loss or damage caused by peril(s) insured against.

(2)  Mercantile & Non-Manufacturing *__Locations__*: **Gross Earnings** are the sum of:

(a)  Total net sales; and

(b)  Other earnings derived from operations of the business;

*Less the cost of:*

(c)  *__Merchandise__* sold, including packaging materials therefore;

(d)  Materials and supplies consumed directly in supplying the service(s) sold by the Insured;

(e)  Service(s) purchased from outsiders (not employees of the Insured) for resale which do not continue under contract; and

(f)  Depreciation Expense for any asset destroyed by perils insured hereunder;

(g)  Ordinary Payroll expense (the entire payroll expense for all employees of the insured, except officers, executives, department managers and employees under contract) beyond the number of days included in Section **I.5.** of this policy; and

(h)  Other Discontinued Expenses meaning any other operating expenses discontinued as a result of the direct physical loss or damage caused by a peril insured against.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

CNA SIGNATURE PROPERTY POLICY

## C.   ADDITIONAL COVERAGES, COVERAGE EXTENSIONS and LIMITATIONS

**1.   ACCOUNTS RECEIVABLE**

This policy also covers subject to the sublimit specified in Section **I.4.** of this policy:

**a.**   All sums due the Insured from customers, which the Insured is unable to collect solely as the direct result of direct physical loss or damage by peril(s) insured against to the Insured's records of accounts receivable;

**b.**   Interest charges on any loan to offset impaired collections pending repayment of such sums made uncollectible by such loss or damage;

**c.**   Collection expense in excess of ***Normal*** collection cost and made necessary because of such loss or damage;

**d.**   Other expenses, when reasonably incurred by the Insured in re-establishing records of accounts receivable following such loss or damage.

For the purpose of this insurance, credit card company charge ***Media*** shall be deemed to represent sums due the Insured from customers, until such charge ***Media*** is delivered to the credit card company.

When there is proof that a loss of records of accounts receivable has occurred but the Insured cannot more accurately establish the total amount of accounts receivable outstanding as of the date of such loss, such amount shall be computed as follows:

**e.**   The monthly average of accounts receivable during the last available twelve (12) months, together with collection expenses in excess of ***Normal*** collection costs during the last available twelve (12) months and made necessary because of such loss or damage, and reasonable expenses incurred in re-establishing records of accounts receivable following such loss or damage, shall be adjusted in accordance with the percentage increase or decrease in the twelve (12) months from when last available average of monthly gross revenues which may have occurred in the interim.

**f.**   The monthly amount of accounts receivable thus established shall be further adjusted in accordance with any demonstrable variance from the average for the particular month in which the loss occurred.

There shall be deducted from the total amount of accounts receivable, however established, the amount of such accounts evidenced by records not lost or damaged, or otherwise established or collected by the Insured, and an amount to allow for probable bad debts which would ***Normally*** have been uncollectible by the Insured.

**2.   ARSON and CRIME REWARD**

The Company will pay up to the sublimit specified in Section **I.4.** of this policy for information that leads to an arson or other criminal conviction in connection with a loss covered under this policy.

**3.   BRAND OR TRADEMARK REMOVAL**

In case of covered physical damage to property bearing a brand or trademark of the Named Insured or which in any way carries or implies the guarantee or the responsibility of the Named Insured, the salvage value of such damaged property shall be determined after removal in the

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

customary manner of all such brands or trademarks or other identifying characteristics. The Company will pay up to the Brand or Trademark Removal sublimit specified in Section **I.4.** of this policy for the reasonable costs incurred in the removal of such brands, trademarks or identifying characteristics.

**4.    CONTINGENT BUSINESS INTERRUPTION (GROSS EARNINGS)**

Subject to the sublimits for scheduled and unscheduled dependent properties specified in Section **I.4.** of this policy, the policy is extended to pay for loss resulting from necessary interruption of business conducted at ***Locations*** occupied by the Insured and covered in this policy, caused by direct physical loss or damage by peril(s) insured against to:

**a.**    any real or personal property of the type insured hereunder of direct suppliers or service providers  which wholly or partially prevents the delivery of materials, products or services (other than water, communication or power supply) to the Insured or to others for the account of the Insured; or

**b.**    any real or personal property of the type insured hereunder of direct customers to whom the Insured's product(s) or services (other than water, communication or power supply) is provided, which wholly or partially prevents the acceptance of said product(s) or services; or

**c.**    any real or personal property of the type insured that is operated by others that the Insured depends upon to attract customers. Coverage is limited to dependent property within 5 miles of the Insured's ***Location***  unless it is a Scheduled Dependent Property.

**5.    CONTRACT PENALTIES**

This Company will pay contractual penalties incurred by the Insured for its failure to timely deliver its products or services to its customers according to the contract terms, but only when such failure results solely from covered direct physical loss or damage to covered property, subject to the sublimit specified in Section **I.4.** of this policy.

**6.    DEBRIS REMOVAL**

This policy also covers the reasonable and necessary costs and expenses the Insured incurs, due to physical loss or damage from a peril covered under this policy, for removing from a covered ***Location***, debris remaining after such physical loss or damage to property of the type insured under this policy.

The maximum amount payable under this clause is the Debris Removal Sublimit specified in Section **I.4.** of this policy.

This Coverage part does not apply to the increased cost of removal or disposal of covered property due to ***Contaminants or Pollutants***.

There shall be no liability for the expense of removing contaminated property not covered by this policy or the ***Contaminants or Pollutants***  therein or thereon, whether or not the contamination results from an insured event.

**7.    DECONTAMINATION EXPENSE**

Subject to the Decontamination Expense sublimit in Section **I.4.**, if covered property is contaminated as a direct result of physical damage caused by perils insured against, or if the damaged covered property inherently contains ***Contaminants or Pollutants***, and there is in force at the time of such damage any law or ordinance regulating contamination, including but not limited to pollution, then this policy covers, as a result of enforcement of such law or ordinance,

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

CNA SIGNATURE PROPERTY POLICY

the increased cost of decontamination of the covered property and debris removal of such property in a manner to satisfy the minimum requirements of such law or ordinance.

If this policy includes **_Time Element_** coverage, the period of interruption for **_Time Element_** coverage is extended to include the additional time as is necessary and reasonable, with the exercise of due diligence and dispatch, to decontaminate covered property in a manner to satisfy the minimum conditions of the aforementioned law or ordinance. Any increase in **_Time Element_** loss shall also be included in the Decontamination Expense sublimit.

There is no liability for expense or time required for removing contaminated property not insured under this policy or the contaminant therein or thereon, whether or not the contamination results from an insured **_Occurrence_**.

This coverage part does not apply to **RADIOACTIVE CONTAMINATION**

8. **DEFENSE COSTS**

   Subject to the sublimit in Section **I.4.** this policy covers the cost to defend any suit against the Insured alleging physical loss or damage as insured against, to real or personal property of others in the care, custody control of the Insured to the extent of the Insured's Liability therefore, even if such suit is groundless, false or fraudulent; but the Company may, without prejudice, make such investigation, negotiation or settlement of any such claim or suit as they deem expedient.

9. **DEFERRED PAYMENTS**

   Subject to the Deferred Payments sublimit in Section **I.4.** the Company will reimburse the Insured for payments the Insured is unable to collect due to direct physical loss or damage within Territorial Limits to **_Merchandise_** or **_Finished Stock_** sold by the Insured on an installment or other deferred payment basis after it has been accepted by the Insured's customer(s). In no event shall this Company pay more than the Insured's financial interest in such property,

10. **DENIAL OF ACCESS BY CIVIL AUTHORITY AND INGRESS-EGRESS**

    This policy is extended to cover for up to the time limit specified in Section **I.5.** but not exceeding the sublimit shown in Section **I.4.** of this policy, the actual loss sustained:

    a. during the period of time while access to the Insured's **_Location_** is prohibited by order of civil authority, but only when such order is given as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of said **_Location_**; or

    b. during the period of time when as a direct result of physical loss or damage to property of the type insured from a peril insured against, ingress to or egress from the Insured's **_Location_** is thereby physically prevented.

11. **ELECTRONIC DATA PROCESSING**

    This policy also covers:

    a. **_Electronic Data Processing Equipment_** for loss caused by or resulting from these additional perils:

       (1)   Artificially generated electrical current, including arcing that disturbs electrical devices, appliances, or wires; or

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

---

**CNA SIGNATURE PROPERTY POLICY**

---

    **(2)**    Mechanical breakdown and machinery breakdown, including malfunction or component failure;

all subject to the Limits specified in Section **I.4.** of this policy.

**b.**     *Electronic Media and Records*: for the cost of research to replace or restore the information lost due to perils insured, subject to the sublimit specified in Section **I.4.** of this policy.

The Company will not pay for loss or damage due to accidental erasure of information on *Electronic Media and Records* in the absence of physical damage to the *Electronic Media and Records*.

**c.**     *Computer Virus*: This Company will also pay for the expense incurred by the Insured to extract *Computer Viruses* that become known to the Insured during the policy period even though no direct loss or damage has occurred, subject to the sublimit specified in Section **I.4.** of this policy.

The Insured must report such *Occurrence* within one hundred-eighty (180) days of knowledge thereof for payment to be made under this clause.

**d.**     **Unauthorized Computer Access:** With respect to the Insured's information systems operations, subject to the sublimit specified in Section **I.4.** of this policy, coverage shall include:

    **(1)**    Accidental, intentional or malicious distortion, corruption, manipulation, erasure or loss by unauthorized persons of *Media*, *Data*, *Application Software*, *System Software* or *Source Code* owned or operated on the Insured's *Electronic Data Processing Equipment*;

    **(2)**    *Theft* of any covered property (other than by an employee of the Insured) or willful acts causing loss or damage to covered property by any person when such loss results from the unauthorized use of the Insured's *Electronic Data Processing Equipment* including *Media*, *Data*, *Application Software*, *System Software* or *Source Code*. This provision does not apply to *Money* and *Securities* or any other property specifically excluded in this policy.

**12.**    **EXPEDITING EXPENSES**

This Company will pay reasonable and necessary costs incurred by the Insured to expedite repairs to covered property following loss or damage covered under this policy. This includes payment of overtime wages and the extra cost to use express or other rapid means of transportation, subject to the sublimit specified in Section **I.4.** of this policy.

However, coverage is not included hereunder for costs recoverable elsewhere in this policy or for the permanent repair or replacement of damaged property.

**13.**    **EXPENSES RELATED TO REDUCING LOSS**

This policy covers such expenses as are necessarily incurred for the purpose of reducing a *Time Element* loss (except expense incurred to extinguish a fire) and such expenses, in excess of *Normal*, as would necessarily be incurred in replacing any *Finished Stock* used by the Insured to reduce loss. But in no event shall the aggregate of such expenses exceed the amount by which the loss otherwise recoverable elsewhere in this policy is thereby reduced.

**14.**    **EXTENDED PERIOD OF INDEMNITY**

    **a.**     Business Interruption other than Rental Value:

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM      INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                       RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

This policy is extended to cover the loss of **Gross Earnings** sustained by the Insured resulting directly from the interruption of business, as covered by this policy, for such additional length of time as would be required with the exercise of due diligence and dispatch to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

(1)     the date on which the liability of the Company for loss under Section **II.B.1.a.** would terminate if this provision had not been added to this policy; or

(2)     the date on which the repair, replacement or rebuilding of damaged or destroyed covered property is actually completed;

but in no event for more than the number of days indicated in Section **I.5.** of this policy.

b.    Rental Value:

This policy is extended to cover the loss of Rental Value sustained by the Insured resulting directly from the untenantability of insured premises, as covered by this policy, for such additional length of time as would be required with the exercise of due diligence and dispatch to restore tenant occupancy to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

(1)     the date on which the liability of the Company for loss under Section **II.C.30. RENTAL VALUE** would terminate if this provision had not been added to this policy; or

(2)     the date on which the repair, replacement or rebuilding of damaged or destroyed covered property is actually completed;

but in no event for more than the number of days indicated in Section **I.5.** of this policy.

## 15.   EXTRA EXPENSE

The Company will pay for the reasonable and necessary extra expense, as hereinafter defined, incurred by the Insured in order to continue as nearly as practicable the _**Normal**_ operation of the Insured's business following direct physical loss of or damage to covered property by perils(s) insured against.

In the event of such physical loss or damage, the Company shall be liable for such reasonable and necessary extra expense incurred for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been damaged, commencing with the date of damage and not limited by the date of expiration of this policy, subject to the sublimit specified in Section **I.4.** of this policy.

## 16.   FINE ARTS

This policy is extended to cover physical loss or damage from peril(s) insured against to fine arts in which the Insured has an interest, subject to the sublimit specified in Section **I.4.** of this policy and the following:

Additional Exclusions - This extension does not insure against loss or damage caused by:

a.    any repairing, restoration or retouching process performed on any fine arts;  or

b.    breakage of statuary, art glass windows, glassware, bric-a-brac, marble, porcelain and similar fragile property unless such breakage is caused by a peril insured under this policy.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                       RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

For purposes of the coverage provided herein, fine arts means property that is rare or has historic or artistic value including works of art, antiques, rare articles, etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

**17.  FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES**

This policy also covers fire brigade charges and other extinguishing expenses for which the Insured may be assessed after a covered loss hereunder, subject to the sublimit specified in Section I.4. of this policy.

**18.  FUNGI, WET ROT, DRY ROT AND MICROBES**

**a.**  This policy covers loss or damage by *__Fungi__*, wet rot, dry rot and *__Microbes__*, when the *__Fungi__*, wet rot, dry rot and *__Microbes__* are the result of covered physical loss, damage or destruction of property insured by this policy, but only if;

    **(1)**  The Covered Cause of Loss from which the *__Fungi__*, wet rot, dry rot  and *__Microbes__* loss or damage resulted occurred during this policy period; and

    **(2)**  All reasonable means were used to save and preserve the property from further damage at the time of and after that *__Occurrence__*; and

    **(3)**  The existence of the *__Fungi__*, wet rot, dry rot  and *__Microbes__* loss or damage is reported as soon as practicable, but no later than 180 days after the *__Occurrence__* of the Covered Cause of Loss from which the *__Fungi__*, wet rot, dry rot and *__Microbes__* loss or damage resulted.

**b.**  As used in this policy, the term *__Fungi__*, wet rot, dry rot and *__Microbes__* loss or damage means:

    **(1)**  Direct physical loss or damage to covered property caused by *__Fungi__*, wet rot, dry rot  and *__Microbes__*, including the cost of removal of the *__Fungi__*, wet rot, dry rot and *__Microbes__*; and

    **(2)**  The cost to tear out and replace any part of the building or other property as needed to gain access to the *__Fungi__*, wet rot, dry rot and *__Microbes__*; and

    **(3)**  The cost of testing performed after removal, repair, replacement or restoration of the damaged property is completed, provided there is a reason to believe that *__Fungi__*, wet rot, dry rot and *__Microbes__*, are present.

**c.**  Coverage is subject to the *__Fungi__*, wet rot, dry rot and *__Microbes__* sublimit specified in Section I.4. Regardless of the number of claims, this limit is the most the Company will pay for the total of all loss or damage arising out of all *__Occurrences__* of Covered Causes of Loss which take place in a 12-month period (starting with the beginning of the present annual policy period). With respect to a particular *__Occurrences__* of loss which results in *__Fungi__*, wet rot, dry rot and *__Microbes__*, the Company will not pay more than the *__Fungi__*, wet rot, dry rot and *__Microbes__* Sublimit, even if the *__Fungi__*, wet rot, dry rot  and *__Microbes__*, continues to be present or active, or recurs, in a later policy period.

**d.**  This coverage does not increase the applicable limit or sublimit of liability on any covered property, or applicable sublimit of any Covered Cause of Loss. If a particular *__Occurrence__* results in loss or damage by *__Fungi__*, wet rot, dry rot and *__Microbes__*, and other loss or damage, the Company will not pay more, for the total of all loss or damage, than the applicable Limit or Sublimit of Insurance on the affected covered property.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                      RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

If there is covered loss or damage to covered property, not caused by *Fungi*, wet rot, dry rot and *Microbes*, loss payment will not be limited by the terms of this Coverage, except to the extent that *Fungi*, wet rot, dry rot and *Microbes*, causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Limited Coverage.

### 19. LEASEHOLD INTEREST

Subject to the sublimit specified in Section I.4. of this policy and all other policy provisions, this policy covers the interest of the Insured as lessee at all leased real property.

Recovery in the event of loss hereunder shall be the actual loss sustained to the *Leasehold Interest* by the Insured if caused by physical loss or damage of the type insured against by this policy to real property of the type covered by this policy situated at *Locations* occupied by the Insured, as follows:

a.    The actual rent which remains payable for the unexpired term of the lease if such property becomes wholly untenable or unusable and the lease agreement requires continuation of the rent payment; or

b.    the proportion of rent which remains payable for the unexpired term of the lease if such property becomes partially untenable or unusable and the lease agreement requires continuation of the rent payment; or

c.    the *Leasehold Interest* for the first three (3) months following loss or damage and the *Net Leasehold Interest* for the remaining unexpired term of the lease if the lease is canceled by the lessor pursuant to the lease agreement or by the operation of law.

Exclusions: This Section does not insure against any loss or expense resulting from:

(1)    the suspension, lapse, or cancellation of any license; or

(2)    the Insured exercising an option to cancel the lease; or

(3)    any act or omission by the Insured which constitutes a default under the lease.

Additional Condition: It is a condition of this Section that the Insured shall use any suitable property or service owned or controlled by the Insured or obtainable from another source to reduce the amount of loss hereunder.

### 20. LOSS ADJUSTMENT EXPENSE

This insurance applies to the reasonable expenses incurred by the Insured in preparing claim data when required by the Company, subject to the sublimit in Section I.4. This includes the cost of taking inventories, obtaining appraisals and preparing other documentation to show the extent of loss. The Company will not pay for any expenses incurred, directed, or billed by or payable to attorneys, public adjusters, insurance brokers or agents or their associates or subsidiaries, or any costs as provided in Section **IV. LOSS CONDITIONS 1. APPRAISAL** .

### 21. MACHINERY/PAIR AND SET

In case of physical loss or damage caused by peril(s) insured against in this policy to any part of a machine or unit (consisting of two or more parts when complete either for sale or use), the liability of the Company shall be limited to the value of the part or parts lost or damaged or, at the Insured's option, to the cost and expense of replacing or duplicating the lost or damaged part or parts or of repairing the machine or unit.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

In case of loss to any part of a pair or set, the Company may repair or replace such part to restore the pair to its value before the loss, or pay the difference between the value of the pair or set before and after the loss. In no event shall such loss or damage be construed to mean total loss of the pair or set.

**22.   NEWLY ACQUIRED or CONSTRUCTED PROPERTY**

This policy covers newly acquired property of the Insured at any *Location* within the territorial limit of the policy that is not listed on the schedule of *Locations* and values on file with the Company; and new buildings constructed at any *Location*; subject to the Newly Acquired or Constructed Property sublimit specified in Section **I.4.** of this policy and the following conditions:

**a.**   The Insured's interest is not covered under any other policy;

**b.**   The insured shall report newly acquired property or the beginning of construction of new buildings to this Company within the Newly Acquired or Constructed Property Time Limit specified in Section **I.5.**, otherwise coverage under this policy shall cease except to the extent of any sublimit stated elsewhere for Unscheduled *Locations*; and

**c.**   Additional premium shall be payable from the date of acquisition or beginning of construction thereof.

If this policy includes *Time Element* coverage, any *Time Element* loss resulting from covered physical loss or damage at a newly acquired *Location*, or newly constructed building shall also be included in the Newly Acquired or Constructed Property sublimit.

This coverage excludes loss or damage directly or indirectly caused by or resulting from *Earth Movement* or *Flood*.

**23.   ORDINANCE OR LAW, DEMOLITION COST, AND INCREASED COST OF CONSTRUCTION**

In the event of physical loss or damage covered hereunder that causes the enforcement of any law or ordinance in effect at the time of loss regulating the construction, repair or use of the damaged building(s), this Company shall be liable for:

**a.**   The value of the undamaged portion of the damaged building(s) that must be demolished;

**b.**   The cost of demolishing the undamaged portion of the damaged building(s) that must be demolished because of such law or ordinance, including the cost of clearing the site;

**c.**   The increased cost of repair or reconstruction of the damaged and undamaged portion of the damaged building(s) on the same site or another site, but limited to the costs that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged building(s) on the same site; and

**d.**   The increased loss or costs for business interruption, extra expense or rental value arising out of the additional time required to comply with said law or ordinance.

The Company shall not be liable for any costs attributable to any ordinance or law that the Insured was required to, but failed to, comply with before the loss.

The Company shall not be liable under **23.c.** or **23.d.** of this clause for any loss unless the damaged building is actually repaired, rebuilt or replaced with property of the same size and occupancy on the same site or at another site as soon as reasonably possible.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

This coverage does not increase the applicable limit or sublimit of any Cause of Loss.  For example, if *Earth Movement* or *Flood* are the cause of the physical loss or damage which results in the enforcement of an ordinance or law regulating the construction, repair or use of a damaged building, the most the Company will pay for all loss or damage including this coverage, is the *Earth Movement* or *Flood* sublimit in Section **I.4.**

The Company will not pay under this coverage for loss due to the enforcement of any ordinance or law which requires an Insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the affects of *Contaminants or Pollutants*.

In no event will the Company pay more under this coverage than the Ordinance or Law sublimits specified in Section **I.4.** of this policy.

24.    **POLLUTION CLEAN UP AND REMOVAL**

The Company will pay the Insured's expense to extract *Contaminants or Pollutants* from land or water at insured *Locations* if the presence of the *Contaminants or Pollutants* is caused by or results from a covered peril that occurs during the policy period, subject to the *Annual Aggregate* sublimit specified in Section **I.4.** of this policy.

Costs to test for, monitor or assess the existence, concentration or effects of *Contaminants or Pollutants* are not covered, but the Company will pay for testing which is performed in the course of extracting the *Contaminants or Pollutants* from land or water, subject to the Pollution Cleanup and Removal sublimit specified in Section **I.4.** of this policy

The expenses will be paid only if they are reported to the Company within one hundred- eighty (180) days of the date on which the loss or damage at insured *Locations* occurs.

25.    **PRESERVATION OF PROPERTY**

If it is necessary to move covered property from an insured *Location* to preserve it from direct physical loss or damage by peril(s) insured against the Company will pay for any direct physical loss or damage to that property:

**a.**    While it is being moved or while temporarily stored at another location; and

**b.**    Only if the loss or damage occurs within 60 days after the property is first moved.

26.    **PROFESSIONAL FEES**

This policy is extended to cover the fees of architects, surveyors, consulting engineers and fees of other professionals necessarily incurred in the work of repairing or rebuilding the property following a loss subject to the sublimit specified in Section **I.4.** of this policy. Such fees do not include those incurred by the Insured in the preparation of any claim.

27.    **PROPERTY IN THE COURSE OF CONSTRUCTION – SOFT COSTS**

This policy includes, subject to the Property In the Course of Construction – Soft Costs sublimit specified in Section I.4. of this policy, Soft Cost expenses incurred due to physical loss or damage from peril(s) insured against for that property described in Section **II.A.1.** which is in the course of construction, installation, erection, start-up, commissioning, reconstruction, repairs, alteration, or renovation and the like at *Locations* insured hereunder.

Soft Cost expenses include the following reasonable and necessary expenses which are over and above those which would have *Normally* been incurred had no loss occurred:

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

a.    Additional interest expense;

b.    General overhead-developer expenses and additional real estate taxes;

c.    Legal or professional fees;

d.    Extra marketing expenses and advertising fees;

e.    Debt service payments and insurance premiums;

f.    Refinancing charges and bond interest.

**28.    PROPERTY OFF PREMISES**

This policy is extended to cover property that is temporarily at a location the Insured does not own, lease or operate, including property in the care, custody or control of a salesperson; or at any fair, exhibition or trade show.

This extension does not apply to property in the due course of transit.

This coverage is subject to the sublimit specified in Section **I.4.** of this policy.

**29.    RADIOACTIVE CONTAMINATION**

This policy covers loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, to the property covered hereunder, provided that such radioactive contamination arises out of material originating at the Insured ***Locations***, and provided, at the time of such loss, there is neither a nuclear reactor capable of sustaining nuclear fission in a self supporting chain reaction, nor any new or used nuclear fuel which is intended for or which has been used in such a nuclear reactor, at the Insured's Locations. This coverage is subject to the sublimit specified in Section **I.4.** of this policy.

**30.    RENTAL VALUE**

Subject to the sublimit specified in Section **I.4.** of this policy, recovery in the event of loss hereunder shall be the actual loss sustained by the Insured resulting directly from necessary untenantability of insured premises,  caused by direct physical loss or damage from peril(s) insured against , but not exceeding the reduction in rental value less charges and expenses which do not necessarily continue during the period of untenantability for only such length of time as would be required, with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property insured herein as has been damaged, commencing with the date of such damage and not limited by the date of expiration of this policy.

For purposes of this policy, rental value is defined as the sum of:

The total anticipated gross rental income from tenant occupancy of the covered property, and

a.    the amount of all charges which are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured, and

b.    the fair rental value of any portion of the said property which is occupied by the Insured.

In determining the rental value, due consideration shall be given to the rental experience before the date of the damage and the probable experience thereafter had no loss occurred.

As respects rental value coverage, this policy also covers such expenses as are necessarily incurred for the purpose of reducing loss, but in no event shall the aggregate of such expenses exceed the amount by which the loss otherwise payable under this policy is thereby reduced.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

31. **RESEARCH AND DEVELOPMENT EXPENSES**

In the event of direct physical loss or damage by peril(s) insured against to covered property which results in an interruption of research and development activities, which in themselves would not have produced income during the period of restoration, this policy shall cover the actual loss sustained of the continuing fixed charges and expenses, including ordinary payroll directly attributable to such research and development activities, subject to the sublimit specified in Section **I.4.** of this policy.

32. **ROYALTIES**

This policy is extended to cover the actual loss of royalties, commissions or similar fees the Insured sustains resulting from direct physical loss or damage to property of another not insured under this policy with whom the Insured has a royalty, licensing or commission agreement if that loss or damage is caused by a covered peril. The most the Company will pay under this coverage is the sublimit specified in Section **I.4.** of this policy.

33. **SERVICE INTERRUPTION**

This policy is extended to provide coverage when any direct physical loss or damage to unowned property described in paragraphs **a.** or **b.** below is caused directly by peril(s) insured against, (including covered **Equipment Breakdown** if applicable) and which, without the intervention of any other independent cause, results in a sequence of events which cause direct physical loss or damage to covered property at a covered _**Location**_, including loss caused by a change in temperature or humidity, and/or _**Time Element**_ loss, as provided by this policy.

a. Property, not otherwise excluded, at covered _**Locations**_ and within one thousand (1,000) feet thereof that is used by the Insured for: air conditioning; communications; cooling; heating; humidifying; lighting; refrigeration; or generation and/or conversion of power. This includes all associated transmission and distribution lines while on covered _**Locations**_ and within one thousand (1,000) feet thereof.

b. Property, not otherwise excluded, beyond one thousand (1,000) feet from covered _**Locations**_ that provides the Insured services of: communications; electricity; fuel; gas; refrigeration; sewer; steam; or water to covered _**Locations**_. This includes generating equipment, switching stations, substations, transformers, pumping and storage facilities, but excludes any associated transmission and distribution lines beyond the physical boundaries of the service providing facility.

(1) The physical damage deductible for this coverage is the applicable deductible for the covered peril causing such physical loss or damage to such unowned property.

(2) Coverage for any _**Time Element**_ loss, as provided by this policy, for this coverage applies only if any of the above mentioned services are continuously affected, as described above, for more than the number of hours specified in Section **I.5.** Service Interruption Qualifying Period.

In the event that the qualifying period has been satisfied, the Company shall then be liable for the amount of the _**Time Element**_ loss until the resumption of _**Normal**_ operations, in excess of the applicable deductible for the covered peril causing such physical loss or damage to such unowned property.

Liability under Section **33.b.** is subject to the Service Interruption sublimits specified in Section **I.4.** of this policy.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

34.   **TRANSIT**

This policy is extended to cover the property insured while in due course of transit within the Territorial Limits of the policy from the time the property leaves the location at the initial point of shipment and continuously thereafter, until delivered at the final destination. Coverage shall include general average or salvage charges on shipments covered while waterborne.

This extension of coverage also insures against physical loss or damage:

**a.**   Occasioned by the acceptance by the Insured, Insured's agent, customer or consignee or others of fraudulent bills of lading, shipping or messenger receipts;

**b.**   Occasioned by fraud or deceit, perpetrated by any person(s) who may represent themselves to be the proper party or parties to receive the property for shipment or to accept it for delivery.

However, this coverage shall not apply to any fraud or deceit by an employee of the Insured, whether acting alone or in collusion with others.

This coverage does not apply to:

**(1)**   Export shipments, which have been laden on board export conveyance or have come under the protection of marine insurance, whichever first occurs;

**(2)**   Import shipments until fully discharged from import conveyance or until marine insurance has ceased to cover, whichever last occurs;

**(3)**   Shipments while waterborne except while on ferries or barges on inland waterways within territorial limits of the policy;

**(4)**   Property of others, including the Insured's legal liability therefore, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

**(5)**   Household goods of employees.

Coverage is subject to Transit the sublimits shown in Section **I.4.**

35.   **TREES, SHRUBS, PLANTS AND LAND IMPROVEMENTS**

This policy is extended to cover physical loss or damage to trees, shrubs, plants (other than trees, shrubs or plants grown or held for sale) and *Land improvements* at covered *Locations* caused by peril(s) insured against herein. The most the Company will pay under this coverage, per *Occurrence* or per item, is the sublimit specified in Section **I.4.** of this policy.

36.   **UNINTENTIONAL ERRORS AND OMISSIONS**

This insurance shall not be prejudiced by any unintentional or inadvertent error, omission, incorrect valuation or incorrect description of the interest, risk or property, provided notice is given to the Company as soon as practicable upon discovery of any such error, omission, incorrect valuation or incorrect description. The most the Company will pay under this coverage is the sublimit specified in Section **I.4.** of this policy.

37.   **UNSCHEDULED *LOCATIONS***

This policy is extended to cover property at unscheduled *Locations* which are *Locations* owned, leased, operated or regularly used by the Insured that do not appear on any Schedule of *Locations* and values on file with the Company. The most the Company will pay for loss or damage at any one of these *Locations* is the sublimit specified in Section **I.4.** of this policy.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

If this policy includes *Time Element* coverage, any *Time Element* loss resulting from covered physical loss or damage at an unscheduled *Location* shall also be included in the Unscheduled *Locations* sublimit in Section **I.4.** of this policy.

This coverage excludes loss or damage directly or indirectly caused by or resulting from *Earth Movement* or *Flood*.

38. **VALUABLE PAPERS & RECORDS**

This policy also covers the costs of research and other expenses to replace or restore the information on valuable papers and records for which there are no duplicates. It also covers the amount in excess, if any, of valuation provision **IV.12**. All coverage is subject to the sublimit specified in Section **I.4.** of this policy.

For the purposes of the coverage provided herein, valuable papers and records means: written, printed, or otherwise inscribed documents and records, including books, manuscripts, maps, drawings, film, and other photographically produced records such as slides and microfilms, legal and financial agreements such as deeds, mortgages and leases, but does not mean *Money* or *Securities* nor does it mean *Media*, *Data*, *Application Software*, *System Software* or *Source Code*.

# D.   EXCLUSIONS

1. **Group 1. Exclusions**

   **Unless otherwise provided for and limited in Section I.4., this Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of (a)  the cause of the excluded event; or (b) other causes of the loss; or (c) any other causes or events, whether or not insured under this Policy, which may have contributed concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurred suddenly or gradually, involved isolated or widespread damage, arose from natural or external forces, or occurred as a result of any combination of any of the following:**

   a.   Nuclear Hazard

   Nuclear reaction or nuclear radiation, or radioactive contamination from any cause, all whether controlled or uncontrolled, and whether such loss be direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by the peril(s) insured against in this policy. However, ensuing loss from fire will be covered.

   This exclusion does not apply to physical loss or damage caused by sudden and accidental radioactive contamination, including resultant radiation damage, from materials used or stored or from processes conducted on the insured premises, provided that, at the time of such loss or damage, there is neither a nuclear reactor nor any new or used nuclear fuel on the insured premises.

   b.   War and Military Action

   War, invasion, act of foreign enemy, hostilities or warlike operations (whether war be declared or not), civil war;

   Mutiny, civil commotion assuming the proportions of or amounting to a popular uprising, military uprising, insurrection, rebellion, revolution, military or usurped power, martial law or state of siege or any of the events or causes which determine the proclamation or maintenance of martial law or state of siege;

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

| CNA SIGNATURE PROPERTY POLICY |
| --- |

Seizure or destruction under quarantine or customs regulation, commandeering, confiscation, expropriation, nationalization, or destruction by order of any government (de jure or de facto) or public authority, except destruction by order of public authority to prevent spread of fire or explosion.

**c.** Terrorism

For the purposes of this policy, Terrorism shall mean the use or threat of force or violence against persons or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when one or more of the following apply:

The effect is to intimidate or coerce a government or business, or to disrupt any segment of the economy;

The effect is to cause any alarm, fright, fear or danger, or apprehension of public safety; or

The apparent or logically implied intent is to further political, ideological, religious or cultural objectives, or to express support for (or opposition to) a philosophy, ideology, religion or culture.

**d.** _**Earth Movement**_

Unless otherwise endorsed hereon or limited in Section **I.4.** of this policy. However, ensuing loss by fire, explosion or leakage from fire protective systems or devices will be covered.

**e.** _**Flood,**_

Unless otherwise endorsed hereon or limited in Section **I.4.** of this policy. However, ensuing loss by fire or explosion will be covered.

**f.** _**Computer Virus**_

**g.** _**Contaminants or Pollutants**_

The release, discharge, or dispersal of toxic or hazardous substances, _**Contaminants or Pollutants**_, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical loss or damage covered by this policy;  unless the contamination is itself caused by covered physical loss or damage of property insured by this Policy for the following Causes of Loss:

Fire; lightning; explosion; wind or hail; smoke; direct impact of vehicle, aircraft or vessel; strike, riot or civil commotion; vandalism or malicious mischief; Equipment Breakdown; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft; sudden and accidental discharge, leakage, backup, or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured _**Location**_;

This policy does not insure against any loss, damages, costs or expenses incurred as the result of any government or regulatory directive or request that the Insured or anyone acting under the Insured's direction or control test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any toxic hazardous substances, _**Contaminants or Pollutants**_.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

    **h.**   *Fungi*, Wet Rot, Dry Rot and *Microbes*,

        **(1)**   The presence, growth, proliferation, spread or any activity of *Fungi*, wet rot, dry rot or *Microbes*, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy;

        **(2)**   Any government or regulatory directive or request that the Insured or anyone acting under the Insured's direction or control test for, monitor, clean up, remove, contain, treat, detoxify or neutralize any *Fungi*, wet rot, dry rot or *Microbes*.

    **i.**   Unexplained loss, mysterious disappearance, or loss or shortage disclosed upon taking inventory.

    **j.**   Any willful or dishonest act or omission of the Insured or any associate, proprietor, partner, director, trustee, elected officer or employee, or agent of the Insured except a bailee or common carrier. This exclusion applies to *Theft* by the Insured's employees, but not to acts of destruction by such employees.

    **k.**   Losses which are eligible for coverage under any government or national program or scheme to the extent of recoverability there under (conditions of payment and or delays in payment shall not abrogate this exclusion). This policy shall apply as excess of any amounts recoverable under such programs or schemes subject to the terms, conditions and limitations of this policy.

    **l.**   Loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with the actual or threatened malicious use of pathogenic or poisonous biological or chemical materials regardless of any other cause or event contributing concurrently or in any other sequence thereto.

    **m.**   Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

**In any action, suit or other proceeding where the Company alleges that by reason of the above provisions any loss or damage is not covered by this insurance, the burden of proving that such loss or damage is covered shall be upon the Insured.**

**2.**   **Group 2. Exclusions**

**Unless otherwise provided for and limited in Section I.4., this policy does not insure against physical loss or damage caused by or resulting from the following; however, if physical loss or damage from a peril(s) insured against herein ensues, then this policy shall cover only for such ensuing loss or damage:**

    **a.**   Errors or defects in design, construction or specification, errors in processing or manufacture, faulty workmanship or faulty materials;

    **b.**   Electrical injury or disturbance to electrical appliances, devices or wiring caused by electrical currents artificially generated;

    **c.**   Mechanical or machinery breakdown;

    **d.**   Explosion, rupture, or bursting of fired or unfired pressure vessels or pipes, steam boilers, steam pipes, steam turbines, steam engines or flywheels owned or operated by the Insured;

    **e.**   Damage sustained to goods while they are actually being processed, manufactured, tested or otherwise worked on;

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

### CNA SIGNATURE PROPERTY POLICY

**f.**   Enforcement of any ordinance or law regulating the construction, repair, use or demolition of any property insured hereunder, or which necessitates demolition of undamaged portions of property covered herein;

**g.**   Settling, bulging, cracking, shrinking or expansion of foundations, walls, roofs, ceilings, floors, walkways, patios, roadways and other paved surfaces;

**h.**   Delay, loss of market, loss of use or any other consequential or remote loss, unless coverage is provided by this policy, and then such loss is covered only to the extent provided herein;

**i.**   Gradual deterioration; depletion; inherent vice; insects, birds, rodents, or other animals, including nesting or infestation, or discharge or release of waste products or secretions; ordinary wear and tear; latent defect; decay, smog, shrinkage, evaporation, condensation, contamination, corrosion, erosion, rust, marring or scratching; loss of weight, change in flavor, color, texture or finish unless such loss or damage is caused directly by physical damage not otherwise excluded;

**j.**   Dampness or dryness of atmosphere, extremes of temperature, changes of temperature or humidity, all whether atmospheric or not;

**k.**   Product Contamination and Recall

Loss or damage caused by or resulting from adulteration or contamination to raw stock, stock in process or finished stock or products in the stream of commerce which causes the stock or products to become diminished in value or use, including but not limited to diminished value or use due to change in color, finish, flavor, size or texture. This exclusion applies unless the adulteration or contamination is itself caused by covered physical loss or damage of property insured by this policy for the following causes of loss:

> Fire; lightning; explosion; wind or hail; smoke; direct impact of vehicle, aircraft or vessel; strike, riot or civil commotion; vandalism or malicious mischief; Equipment Breakdown; leakage or accidental discharge of fire protection equipment; collapse; falling objects; weight of snow, ice or sleet; theft; sudden and accidental discharge, leakage, backup, or overflow of liquids or molten material from confinement within piping, plumbing systems, tanks, equipment or other containment located at the insured **_Location_**;

Further, this policy does not insure against any loss, damages, costs or expenses incurred by the Insured or by others for loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Insured's products or the Insured's direct or indirect customers or suppliers if such product or any portion of it is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, contamination or dangerous condition.

**l.**   Loss or damage to the interior portion of buildings under construction or renovation from rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls and windows of such buildings has not been completed.

**3.**   **_Time Element_ Exclusions**

In addition to the Group 1. and Group 2. exclusions, the following exclusions apply to **_Time Element_** coverages;

**a.**   Any loss during a period during which business would not or could not have been conducted for any reason other than physical damage of the type insured against herein;

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

INDEX NO. 651503/2021

NYSCEF DOC. NO. 2

RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

b.   Any increase in loss due to interference at the insured **_Locations_** by strikers or other persons charged with rebuilding, repairing or replacing the property, or with the resumption or continuation of business;

c.   Any increase in loss due to the suspension, lapse or cancellation of any lease, license, contract or order, except as provided by Section **II.C.14. EXTENDED PERIOD OF INDEMNITY** ;

d.   Any loss resulting from damage to, expense associated with, or cost to remanufacture or recall any **_Finished Stock_**;

e.   **_Time Element_** loss arising from property in transit away from **_Locations_** insured by this policy.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

## III.    GENERAL CONDITIONS

**1.    ABANDONMENT**

There can be no abandonment to the Company of any property.

**2.    ACCESS TO BOOKS AND RECORDS**

It is agreed that the Company, or its authorized representatives, shall at all reasonable times, have access to and the right to review the books and records of the Insured for the purposes of conducting an audit or determining any facts relating to this insurance or a claim. With regard to any such review or access, the Insured shall provide, at the Insured's expense, adequate private working area and facilities and staff, adequate copying and telephone facilities.

**3.    ASSIGNMENT OF THE POLICY**

This policy may be assigned or transferred only with the prior written consent of the Company.

**4.    CANCELLATION**

This policy may be canceled at any time at the request of the Insured by mailing or delivering advance written notice of cancellation to the Company. If canceled at the Insured's request, the Company shall retain or collect the customary short rates for the time the policy has been in force. This policy may be canceled by the Company by mailing to the Insured written notice stating that not less than sixty (60) days after the mailing date such cancellation shall be effective. Upon cancellation by the Company, the Company shall return any pro-rata unearned premium to the Insured. Notwithstanding the above, this policy may be canceled by the Company for non-payment of premium by giving ten (10) days written notice of such cancellation.

The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing.

**5.    CERTIFICATES OF INSURANCE**

Any certificate of insurance issued in conjunction with this policy shall be issued solely as a matter of convenience or information for the addressee(s) or holder(s) of said certificate of insurance, except where any Additional Insured(s) or Loss Payee(s) are named pursuant to the Special Provisions of said certificate of insurance. In the event any Additional Insured(s) or Loss Payee(s) are so named, this policy shall be deemed to have been endorsed accordingly, subject to all other terms, conditions, and exclusions stated herein.

The listed broker of record may only issue Certificates of Insurance evidencing coverage afforded by this policy.

**6.    CONCEALMENT, MISREPRESENTATION OR FRAUD**

This entire policy shall be void if, whether before or after a loss, the Insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in any claim, or in the case of fraud, or false swearing by the Insured relating thereto.

**7.    CONFORMANCE WITH STATE STATUTES**

The terms of this policy which are in conflict with the applicable statutes of the state wherein this policy is issued are hereby amended to conform to such statutes, unless the statutes narrow or limit the coverage afforded by this policy and do not bar a policy from providing broader coverage.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

8. **CONTRIBUTING INSURANCE**

Permission is granted for the Insured to have other policies written upon the same plan, conditions and provisions as those contained in this policy. This policy will contribute to the total of each loss otherwise payable herein that percent resulting from the ratio that the limit of liability of this policy bears to the total limit of liability as provided by all policies written upon the same plan, conditions and provisions as these contained in this policy.

9. **CURRENCY**

Unless otherwise specified, all amounts expressed herein are in the currency of the United States of America.

10. **DIVISIBLE CONTRACT CLAUSE**

If this policy covers two (2) or more freestanding buildings, the breach of any condition of the policy in any one (1) or more of the buildings covered or containing covered property shall not prejudice the right to recover for loss occurring in any building covered or containing covered property, where, at the time of loss, a breach of condition does not exist.

11. **ECONOMIC AND TRADE SANCTIONS**

In accordance with laws and regulations of the United States concerning economic and trade embargoes, this policy is void **ab initio** (void from its inception) with respect to any term or condition of this policy that violates any laws or regulations of the United States concerning economic and trade embargoes including, but not limited to the following:

a.  Any insured, or any person or entity claiming the benefits of an insured, who is or becomes a Specially Designated National or Blocked Person or who is otherwise subject to U.S. economic or trade sanctions;

b.  Any claim or "suit" that is brought in a Sanctioned Country or by a Sanctioned Country Government, where any action in connection with such claim or suit is prohibited by U.S. economic or trade sanctions;

c.  Any claim or "suit" that is brought by any Specially Designated National or Blocked Person or any person or entity who is otherwise subject to U.S. economic or trade sanctions;

d.  Property that is located in a Sanctioned Country or that is owned by, rented to or in the care, custody or control of a Sanctioned Country Government, where any activities related to such property are prohibited by U.S. economic or trade sanctions; or

e.  Property that is owned by, rented to or in the care, custody or control of a Specially Designated National or Blocked Person, or any person or entity that is otherwise subject to U.S. economic or trade sanctions.

As used in this policy a Specially Designated National or Blocked Person is any person or entity that is on the list of Specially Designated Nationals and Blocked Persons issued by the U.S. Treasury Department's Office of Foreign Asset Control (O.F.A.C.) as it may be from time to time amended.

As used in this policy a Sanctioned Country is any country that is the subject of trade or economic embargoes imposed by the laws or regulations of the United States of America.

12. **EXCESS INSURANCE**

Permission is granted the Insured to have excess insurance over the limit of liability set forth in this policy without prejudice to this policy and the existence of such insurance, if any, shall not reduce any liability under this policy.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

13. **INSPECTIONS**

The Company, at all reasonable times during the policy period, shall be permitted but not obligated to inspect the property insured. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking, on behalf of or for the benefit of the Named Insured or others, to determine or warrant that such property is safe or healthful.

14. **IMPAIRMENT OF RECOVERY RIGHTS FOR PROPERTY IN TRANSIT**

Any act or agreement by the Insured before or after loss or damage to property in transit whereby any right of the Insured to recover in whole or in part for loss or damage to property covered hereunder against any carrier, bailee or other party liable therefore, is released, impaired or lost, shall render this policy null and void, but the Company's right to retain or recover the premium shall not be affected.

The Company is not liable for any loss or damage which, without its written consent, has been settled or compromised by the Insured. It shall, however, be permissible for the Insured without prejudice to this insurance, to accept the ordinary bill of lading or shipment receipts issued by carriers limiting their liability to less than the actual value.

15. **LOSS PAYABLE CLAUSE**

Loss, if any, shall be adjusted with and payable to the Named Insured or their order, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

16. **MORTGAGEE INTERESTS AND OBLIGATIONS**

The following provisions in favor of any Mortgagee named in a schedule or Certificate of Insurance on file with the Company apply to the **_Location_** for which the Mortgagee is named, unless another Mortgagee Clause is specifically indicated as applying.

a. The term "Mortgagee" includes Trustees.

b. For insured loss under this policy to specified property the Company will pay to each specified Mortgagee, as its interest may appear under all present or future mortgages upon the property, in order of precedence of the mortgages.

c. The interest of the Mortgagee in property insured under this policy will not be invalidated by:

(1) Any act or neglect of the Mortgagor or owner of the specified property;

(2) Foreclosures, notice of sale, or similar proceeding with respect to the specified property;

(3) Change in the title or ownership of the specified property; or

(4) Change to an occupancy of the premises more hazardous than that permitted by this policy;

Provided that, if the Mortgagor or owner has failed to pay any premium due under this policy, the Mortgagee must pay the premium within ten (10) days of written notice by the Company.

d. The Mortgagee will notify the Company of any known change in ownership or occupancy or increase in hazard of the covered property that has come to the knowledge of said Mortgagee. The Mortgagee may immediately pay the increased premium associated with such known change. If the Mortgagee fails immediately to notify the Company of such known change or fails to pay the increased premium, all coverage under this policy will cease at the time of such premium due date.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 03/05/2021

CNA SIGNATURE PROPERTY POLICY

**e.**   The Company may cancel this policy, including the interest of the Mortgagee, by giving the Mortgagee or its agent written notice:

**(1)**   Ten (10) days prior to the effective date of cancellation, if cancellation is for nonpayment of premium;

**(2)**   Sixty (60) days prior to effective date of cancellation, if cancellation is for any other reason.

**f.**   If a loss hereunder is made payable, in whole or in part, to a designated Mortgagee not named in this policy, that interest may be canceled by giving to such Mortgagee ten (10) days written notice of cancellation.

**g.**   If the Company pays the Mortgagee for loss under this policy, and denies liability to the Mortgagor or owner, the Company will, to the extent of the payment made to the Mortgagee, be subrogated to all the rights of the Mortgagee under all securities and loan agreements held as collateral to the debt. At its option, the Company may pay to the Mortgagee the whole principal on the debt with its interest; and in this event, all rights and securities will be transferred from the Mortgagee to the Company. However, any subrogation by the Company will not impair the right of the Mortgagee to recover the full amount of said Mortgagee's claim.

**h.**   If the Insured fails to render proof of loss, the Mortgagee, upon notice, will render proof of loss within sixty (60) days of notice and will be subject to the provisions of the policy relating to Appraisal, Payment of Loss and Suit Against the Insurers.

Other provisions relating to the interests and obligations of such Mortgagee may be added hereto by agreement in writing.

**17.   NO BENEFIT TO BAILEE**

This insurance shall in no way inure directly or indirectly to the benefit of any transportation carrier or bailee.

**18.   OTHER INSURANCE**

Except as stated in the contributing insurance and excess insurance provisions, if there is any other collectible insurance, this policy will apply as excess insurance and will not contribute with any other insurance.

The Company's liability for payment will begin at the greater of the ground up loss exceeding this policy's deductible or the primary insurance payment.

**19.   REINSTATEMENT**

With the exception of loss subject to ***Annual Aggregate*** limits as noted in the Declarations (or elsewhere), no loss hereunder shall reduce the amount of this policy.

**20.   SUBROGATION**

**a.**   If the Company pays a claim under this policy, it will be subrogated, to the extent of such payment, to all the Insured's rights of recovery from other persons, organizations and entities.  The Insured will execute and deliver instruments and papers and do whatever else is necessary to secure such rights.

The Company will have no rights of subrogation against:

**(1)**   Any person or entity, which is an Insured.

**(2)**   Any subsidiary or affiliated corporations or companies or any other corporations or companies associated with the Insured through ownership or management.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

      **(3)**    Any other person or entity, which the Insured has waived its rights of subrogation against in writing before the time of loss.

    **b.**    Notwithstanding the foregoing, it is a condition of this policy that the Company shall be subrogated to all the Insured's rights of recovery against:

      **(1)**    Any Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and

      **(2)**    Any manufacturer or supplier of machinery, equipment or other property, whether named as an Insured or not, for the cost of making good any loss or damage which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

    **c.**    The Insured will act in concert with the Company and all other interests concerned in the exercise of such rights of recovery. The Insured will do nothing after a loss to prejudice such rights of subrogation. If any amount is recovered as a result of such proceedings, the net amount recovered after deducting the costs of recovery, will accrue first to the Company. Any excess of this amount will be remitted to the Insured. If there is no recovery, the interests instituting the proceedings will bear the expense of the proceedings proportionately.

**21.**    **TIME**

Wherever reference is made to time in this policy regarding hours of the day or night, it shall be held to be Local Standard Time at the mailing address of the Named Insured shown in section I.1.

**22.**    **TITLES OF PARAGRAPHS**

The several titles of the various paragraphs of this form (and of endorsements and supplemental contracts, if any, now or thereafter attached to this policy) are inserted solely for convenience of reference and shall not be deemed in any way to limit or affect the provisions to which they relate.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

# IV.    LOSS CONDITIONS

### 1.    APPRAISAL

If the Insured and the Company fail to agree on the amount of loss, each shall, upon the written demand of either made within sixty (60) days after receipt of proof of loss by the Company, select a competent and disinterested appraiser. The two selected appraisers shall then select a competent and disinterested umpire. If the appraisers should fail for fifteen (15) days to agree upon such umpire, then upon the request of the Insured or of the Company such umpire shall be selected by a judge of a court of record in the county and state, region, locale, or territory in which such appraisal is pending. Then at a reasonable time and place, the appraisers shall appraise the loss, stating separately the value at the time of loss and the amount of loss. If the appraisers fail to agree, they shall submit their differences to the umpire. An award in writing of any two shall determine the amount of loss. The Insured and the Company shall each pay their chosen appraiser and shall bear equally the other expenses of the appraisal and the umpire.

### 2.    ASSISTANCE AND COOPERATION OF THE INSURED

The Insured shall cooperate with the Company and upon the Company's request, shall attend hearings and trials and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in conducting suits.

### 3.    CLAIMS AGAINST CARRIER

In the event of any loss or damage to the goods and/or _**Merchandise**_ insured hereunder, the Insured shall immediately make claim in writing against the carrier or carriers involved.

### 4.    DUTIES AFTER A LOSS

a.    The Insured shall protect the property from further loss or damage, separate damaged and undamaged personal property, and maintain such property in the best possible order; and refrain from demolishing damaged property until the Company has had the opportunity to inspect such damaged property.

b.    As soon as practical, the Insured shall give written notice to the Company of any loss, damage or expense, furnish a complete inventory of the destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed.

c.    Within sixty (60) days after being requested by the Company, unless such time is extended in writing by the Company, the Insured shall render to the Company a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

- the time and origin of the loss,

- the interest of the Insured and of all others in the property,

- the value of each item thereof, in accordance with Section **IV.12. VALUATION** of this form, and the amount of loss thereto,

- all encumbrances thereon,

- all other contracts of insurance, whether valid or not, covering any of said property,

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM        INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

- any changes in title, use, occupation, Location, possession or exposures of said property since the issuing of this policy,

- by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground,

- the Insured shall furnish a copy of all the descriptions and schedules in all policies and, if required, verified plans and specifications of any building, fixtures or machinery destroyed or damaged.

The Insured shall, as often as may be reasonably required, exhibit to any person designated by the Company all that remains of any property herein described, and submit to examinations under oath by any person named by the Company, and subscribe the same.

The Insured shall, as often as may be reasonably required, produce for examination at the request of the Company all books of account, business records, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by the Company or its authorized representative, and shall permit extracts and copies thereof to be made.

**5.    EXPERIENCE OF THE BUSINESS**

In determining the amount payable under *Time Element* coverages due consideration shall be given to the experience of the business before the interruption of business and the probable experience thereafter had no interruption of business occurred.

In the event the Insured would have experienced an operating deficit had no interruption of business occurred, then

**a.**    the amount of *Fixed Costs* included in the actual loss sustained shall be determined by subtracting the operating deficit from the *Fixed Costs* that necessarily continue;

**b.**    the amount of payroll included in the actual loss sustained shall be determined by subtracting the excess, if any, of the operating deficit from the *Fixed Costs* that necessarily continue from such payroll.

**6.    PARTIAL PAYMENT OF LOSS**

In the event of loss covered by this policy, the Company shall allow partial payments of claims, subject to the policy provisions and normal adjustment process. To obtain said partial claim payment the Insured shall submit a partial proof of loss with supporting documentation. It shall be lawful for the Insured to make claim in accordance with the valuation provisions contained in this policy. It is agreed that the policy deductible must be satisfied before said partial payments are allowable.

**7.    PAYMENT OF LOSS**

All adjusted claims shall be due and payable no later than sixty (60) days after presentation and acceptance of proofs of loss by the Company or its authorized representative.

**8.    RESUMPTION OF OPERATIONS**

If the Insured could reduce the loss resulting from the interruption of business:

**a.**    by complete or partial resumption of operation of the property herein described, whether damaged or not; or

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM      INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                                RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

    **b.**    by making use of **_Merchandise_** or other property at the insured **_Locations_** or elsewhere; or

    **c.**    in respect of manufacturing risks, by making use of stock (raw, in process or finished) or **_Merchandise_** at the insured **_Locations_** or elsewhere;

the amount of the loss that the Insured could have reduced shall be subtracted from the amount payable under this policy.

**9.**    **SUIT AGAINST THE INSURERS**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all of the requirements of this policy, nor unless commenced within the twelve (12) months immediately following inception of the loss, unless a longer period of time is prescribed by the insurance laws of the state or jurisdiction in which this contract is issued.

**10.**    **SALVAGE AND RECOVERIES**

All salvages, recoveries, and payments, excluding proceeds from subrogation and underlying insurance, recovered or received prior to a loss settlement under this policy, shall reduce the loss accordingly. If recovered or received subsequent to a loss settlement under this policy, such net amounts received shall be divided between the interests concerned, i.e., the Insured and any other Company(ies) participating in the payment of any loss, in the proportion of their respective interests.

**11.**    **VACANCY**

    **a.**    **Description of Terms**

        **(1)**    As used in this Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

            **(a)**    When this policy is issued to a tenant, and with respect to that tenant's interest in covered property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

            **(b)**    When this policy is issued to the owner or general lessee of a building, building means the entire building. Such building is vacant unless at least 31% of its total square footage is:

                **(i)**    Rented to a lessee or sub-lessee and used by the lessee or sub-lessee to conduct its customary operations; and/or

                **(ii)**    Used by the building owner to conduct customary operations.

        **(2)**    Buildings under construction or renovation are not considered vacant.

    **b.**    **Vacancy Provisions**

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

        **(1)**    The Company will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

            **(a)**    Vandalism;

            **(b)**    Sprinkler leakage, unless the Insured has protected the system against freezing;

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

    **(c)**    Building glass breakage;

    **(d)**    Water damage;

    **(e)**    Theft; or

    **(f)**    Attempted theft.

**(2)**    With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, the Company will reduce the amount that would otherwise be paid for the loss or damage by 15%.

## 12.  VALUATION

In the event of physical loss or damage to covered property by perils(s) insured against the Company will not pay more than the least of: the limit of liability applicable to the lost or damaged property; the interest of the Insured in the lost or damaged property; the cost to repair the lost or damaged property; the actual expenditure incurred in repairing or replacing the damaged property; or the value of property insured determined as follows:

**a.**    *Raw Stock*, supplies and other *Merchandise* not manufactured by the Insured: the replacement cost;

**b.**    *Goods in Process*: the value of raw materials and labor expended plus the proper proportion of overhead charges;

**c.**    *Finished Stock* manufactured, owned and held for sale by the Insured: the regular cash selling price, less (1) all costs to complete the sale and (2) discounts and charges to which such *Finished Stock* would have been subject had no loss occurred;

**d.**    Exposed film, records, manuscripts and drawings: the value blank plus the cost of copying information from backup or from originals of a previous generation, but this policy does not insure any other cost, including research, engineering or other cost, of restoring or re-creating information lost;

    *Data*, programs or any other software stored on electronic, electromechanical, electromagnetic data processing or production equipment: the cost of transferring such from backup or from originals of a previous generation, but this policy does not insure any other cost, including research, engineering or other cost of restoring or re-creating information lost, except as provided in Section **II.C.10. ELECTRONIC DATA PROCESSING** ;

    Other documents not specifically excluded or addressed above: not to exceed the value blank plus cost of reproducing; but no liability is assumed hereunder for the cost of gathering or assembling information or data for such reproduction;

**e.**    Property of others: at the amount for which the Insured is liable, but not to exceed **replacement cost**;

**f.**    Tenant's *Improvements and Betterments*: at replacement cost if repaired or replaced at Insured's expense within one (1) year from date of loss. If not so replaced, at **actual cash value** on date of loss;

**g.**    *Electronic Data Processing Equipment*

    If leased property, then the amount for which the Insured is liable under contract.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

If not leased property, the least of the following:

**(1)**     If not under warranty or service contract, the cost to repair;

**(2)**     If under warranty or service contract, the cost to repair plus the minimum cost to reinstate such warranty or service contract;

**(3)**     The actual expenditure incurred in repairing or replacing the damaged property;

**(4)**     The cost to replace with functionally equivalent property;

**h.**     Fine Arts:

**(1)**     If there is a schedule of values on file with the Company, then the scheduled value;

**(2)**     If there is no schedule of values on file with the Company, then the appraised market value at the time and place of loss;

**i.**     Property For Sale, other than stock or merchandise , the least of:

**(1)**     The selling price;

**(2)**     The cost to repair;

**(3)**     or **actual cash value** ;

**j.**     Property in transit:

**(1)**     Property under invoice, at the actual invoice cost, including prepaid freight, together with such cost and charges since shipment as may have accrued and become legally due thereon;

**(2)**     Property not under invoice, in accordance with the valuation provisions of this policy, less any charges saved which would have become due and payable upon delivery at destination.

**k.**     Motor vehicles, railroad rolling stock and contractor's equipment:

The least of the following amounts:

**(1)**     The scheduled limit of liability applying to the damaged property (if specifically scheduled);

**(2)**     The **actual cash value** of the property;

**(3)**     The cost of reasonably restoring that property to its condition immediately before loss; or

**(4)**     The cost of replacing the property with used, but substantially identical property.

**l.**     All Other Property at **replacement cost** .

However, if within one (1) year, the process of repair, rebuilding or replacement in accordance with the provisions of this section (Section **IV.12.**), has not begun, then the value of the property will be **actual cash value** .

For the purposes of this Valuation section:

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                                        RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

The term **replacement cost** as used here means the cost to repair or replace lost or damaged property with property of comparable material and quality on the same or another site, and used for the same purpose, without deduction for depreciation, deterioration, and obsolescence;

The term **actual cash value** as used here means the replacement cost with deduction for depreciation, deterioration and obsolescence.

All the above to be computed as of the time and at the place of loss insured against by this policy. The above valuation shall also be used for computing the premium due under this policy.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021

---

**CNA SIGNATURE PROPERTY POLICY**

---

# GLOSSARY

**_Affiliated or Subsidiary Organization_**
Entity of which fifty percent (50%) or more is either directly or indirectly owned by the Named Insured.

**_Annual Aggregate_**
Denotes the most this Company will pay for loss or damage during any annual policy term. However, in the case of any extended policy term of more than one (1) year, but less than twenty-four (24) months, the annual aggregate will be construed to apply to the whole of such extended term.

**_Application Software_**
Any data entry, update, query or report program that processes **_Data_** for the user, whether purchased or internally developed, including but not limited to: word processors, spreadsheets, data bases, and accounting programs.

**_Computer Virus_**
Any unauthorized intrusive codes or programming that is entered by any means into covered **_Electronic Data Processing Equipment_** and **_Electronic Media and Records_** and interrupt the Insured's operations at any **_Location_**.

**_Contaminants or Pollutants_**
Any solid, liquid, gaseous or thermal irritant or contaminant, including but not limited to: smoke and soot (other than smoke and soot emanating from a fire involving property insured under this policy), vapor, fumes, acids, alkalis, chemicals, vaccines and waste and any other substances which pose a hazard to human health or the environment. Waste includes materials to be recycled, reconditioned or reclaimed.

**_Critical New Madrid Areas_**
Counties, parishes, independent cities, including all barrier islands, as listed below:

| State | County/Parish/Independent City |
|---|---|
| Arkansas | Arkansas, Clay, Cleburne, Craighead, Crittenden, Cross, Fulton, Greene, Independence, Izard, Jackson, Lawrence, Lee, Lonoke, Mississippi, Monroe, Phillips, Poinsett, Prairie, Randolph, Sharp, St. Francis, Stone, White, Woodruff. |
| Illinois | Alexander, Bond, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Douglas, Edgar, Edwards, Effingham, Fayette, Franklin, Gallatin Hamilton, Hardin, Jackson, Jasper, Jefferson, Johnson, Jersey, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Moultrie, Perry, Pope, Pulaski, Randolph, Saline, St. Clair, Richland, Shelby, Union, Wabash, Washington, Wayne, White, Williamson. |
| Indiana | Gibson, Knox, Posey, Sullivan, Vanderburgh, Vigo. |
| Kentucky | Ballard, Caldwell, Calloway, Carlisle, Crittenden, Fulton, Graves, Henderson, Hickman, Hopkins, Livingston, Lyon, Marshall, McCracken, Trigg,Union, Webster. |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2
INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

| | |
|---|---|
| Mississippi | Benton, Coahoma, DeSoto, Lafayette, Marshall, Panola, Quitman, Tate, Tippah, Tunica. |
| Missouri | Bollinger, Butler, Cape Girardeau, Carter, Crawford, Dent, Dunklin, Franklin, Howell, Iron, Jefferson, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Reynolds, Ripley, Shannon, St. Charles, St. Francis, St. Genevieve, St. Louis, St. Louis City, Scott, Stoddard, Texas, Washington Wayne. |
| Tennessee | Benton, Carroll, Chester, Crockett, Dyer, Fayette, Gibson, Hardeman, Haywood, Henderson, Henry, Lake, Lauderdale, Madison, McNairy, Obion, Shelby, Stewart, Tipton, Weakley. |

***Critical Pacific Northwest Areas***

Counties, parishes, independent cities, including all barrier islands, as listed below:

| State | County/Parish/Independent City |
|---|---|
| Oregon | Benton, Clackamas, Clatsop, Columbia, Coos, Curry, Douglas, Jackson, Josephine, Lane, Lincoln, Linn, Marion, Multnomah, Polk, Tillamook, Washington, Yamhill. |
| Washington | Clallam, Clark, Cowlitz, Grays Harbor, Island, Jefferson, King, Kitsap, Lewis, Mason, Pacific, Pierce, San Juan, Skagit, Skamania, Snohomish, Thurston, Wahkiakum, Whatcom. |

***Data***

Information stored in electronic, electromechanical or electromagnetic form such as, but not limited to, work processing documents, spreadsheet files, data base files, images and digitally-encoded voice and video.

***Earth Movement***

Earthquake, landslide, mine subsidence, volcanic eruption, volcanic action, and other sudden earth sinking (including sinkhole collapse), rising, shifting, or any other earth movement (natural or man-made) except as follows:

**a.** **Flood**, surface water, mudslide or mud flow (caused by accumulation of water on or underground), waves, tidal water or tidal wave, ***Tsunami***, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

**b.** Release of water impounded by a dam regardless of cause.

However, any fire, explosion or leakage from fire protective systems or devices resulting from ***Earth Movement*** will not be considered to be loss by ***Earth Movement*** within the terms of this policy.

***Electronic Data Processing Equipment***

***Data*** processing systems including computer equipment/networks, component parts and related systems, and peripheral equipment including air conditioning and fire protective equipment used solely for data processing operations. This does not include equipment held for sale or distribution and equipment in the course of manufacture.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

| | |
|---|---|
| ***Electronic Media and Records*** | See definitions for ***Media***, ***Data***, ***Application Software***, ***System Software***, and ***Source Code***. |
| ***Finished Stock*** | Stock manufactured, owned and held by the Insured for sale which in the ordinary course of the Insured's business is ready for packing, shipment or sale. |
| ***First Tier Areas*** | Counties, parishes, independent cities, including all barrier islands, as listed below: |

| State | County/Parish/Independent City |
|---|---|
| Alabama | Baldwin, Mobile |
| Georgia | Bryan, Camden, Chatham, Glynn, Liberty, McIntosh |
| Louisiana | Cameron, Iberia, Jefferson, Lafourche, Orleans, Plaquemines, St. Bernard, St. Mary, St. Tammany, Terrebonne, Vermilion |
| Mississippi | Hancock, Harrison, Jackson |
| No. Carolina | Beaufort, Brunswick, Camden, Carteret, Chowan, Craven, Currituck, Dare, Hyde, Jones, New Hanover, Onslow, Pamlico, Pasquotank, Pender, Perquimans, Tyrrell, Washington |
| So. Carolina | Beaufort, Berkeley, Charleston, Colleton, Georgetown, Horry, Jasper |
| Texas | Aransas, Brazoria, Calhoun, Cameron, Chambers, Galveston, Harris, Jackson, Jefferson, Kenedy, Kleberg, Matagorda, Nueces, Orange, Refugio, San Patricio, Willacy |
| Virginia | Accomack, Gloucester, Lancaster, Mathews, Middlesex, Northampton, Northumberland, and independent cities of Chesapeake, Hampton, Norfolk, Poquoson, Portsmouth, and Virginia Beach |

| | |
|---|---|
| ***Fixed Costs*** | Operating costs not directly related to the level of sales achieved by the Insured; including, but not limited to wages and depreciation on property. |
| ***Flood*** | A general and temporary condition of partial or complete inundation of ***Normally*** dry land areas, including dewatered areas, whether caused by natural ***Occurrences***, acts or omissions of man or any other cause or combination of causes, including: |

    **a.**  The overflow of inland or tidal waters, waves or tidal waves, ***Tsunami***, or spray from any of the foregoing, all whether driven by wind or not.

    **b.**  The unusual and rapid accumulation or runoff of surface waters from any source.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021
NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 03/05/2021

**CNA SIGNATURE PROPERTY POLICY**

    **c.** Mudslide or mudflow caused or precipitated by accumulation of water on or under the ground.

    **d.** Release of water held by a dam, levee or dike or by a water or flood control device.

    **e.** Sewer backup resulting from ***Flood*** .

    However, any fire or explosion resulting from ***Flood*** will not be considered to be loss by ***Flood*** within the terms of this policy.

| | |
|---|---|
| ***Fungi*** | ***Fungi*** includes any form of fungus, including but not limited to, yeast, mold, mildew, rust, smut or mushroom, and including any spores, mycotoxins, odors, or any other substances, products or byproducts produced by, released by, or arising out of the current or past presence of ***Fungi***. But ***Fungi*** do not include any ***Fungi*** intended by the Insured for consumption. |
| ***Goods in Process*** | ***Raw Stock*** which has undergone any aging, seasoning, mechanical or other process of manufacture at the ***Locations*** herein described but which has not become ***Finished Stock***. |
| ***Improvements and Betterments*** | Fixtures, alterations, installations or additions comprising part of a building occupied but not owned by the Insured and acquired or made at the expense of the Insured, which the Insured cannot legally remove. |
| ***Land Improvements*** | Lawns, plants, shrubs or trees; pavements, roadways, sidewalks or similar works, but not including any fill or land beneath such property. |
| ***Leasehold Interest*** | The excess rent paid for either the same or similar replacement property over the amount of rent and other charges which would have been payable under the unexpired lease plus bonuses or advance rent paid (including any maintenance, operating charges or taxes) for each month during the unexpired term of the Insured's lease. |
| ***Location*** | The area within legal boundaries of the premises, or of the portion of the premises, in which the Insured has an interest. |
| ***Media*** | Any ***Data*** storage substance using electronic, electromechanical, or electromagnetic technology to represent values of stored bits and bytes of information. Such ***Media*** includes but is not limited to: CD-ROM, microcomputer diskettes, magnetic tapes, disk packs, paper tapes and cards. |
| ***Merchandise*** | Goods kept for sale by the Insured which are not the product of manufacturing operations conducted by the Insured. |
| ***Microbe*** | Any non-fungal microorganism or non-fungal, colony-form organism that causes infection or disease. ***Microbe*** includes any spores, mycotoxins, odors, or any other substances, products or byproducts produced by, released by, or arising out of the current or past presence of microbes. |
| ***Money*** | Currency, coins, notes, bullion, traveler's checks, registered checks and money orders held for sale to the public. |

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

## CNA SIGNATURE PROPERTY POLICY

**_Named Storm_**

A storm system that has been declared to be a named tropical storm or hurricane by the U.S. National Weather Service or other governmental authority including hurricane or tropical storm spawned tornado(s) or microburst(s). The named tropical storm or hurricane begins when the National Weather Service officially declares the storm system to be a named tropical storm or hurricane and ends when the National Weather Service officially declares the named tropical storm or hurricane permanently downgraded to a tropical depression.

**_Net Leasehold Interest_**

The present value of the amount which placed at four percent (4%) annual interest would equal the **_Leasehold Interest_** (less any amounts otherwise payable hereunder).

**_Normal, Normally_**

The condition that would have existed had no loss occurred.

**_Occurrence_**

One or more losses which result from one common cause or disaster, even if arising out of more than one event.

Each event of **_Theft_** will be considered a separate **_Occurrence_**.

If this policy covers against Earthquake, each loss by Earthquake shall constitute a single claim hereunder, provided if more than one Earthquake shock shall occur within any period of seventy-two (72) hours originating during the term of this policy, all such shocks shall be deemed to be a single **_Occurrence_**, the policy expiration date and time notwithstanding.

If this policy covers against **_Flood_**, any **_Flood_** occurring within a period of continuous rising or overflow of any river(s) or stream(s); or any **_Flood_** resulting from any **_Tsunami_**, tidal wave or series of tidal waves caused by any one disturbance shall be deemed to be a single **_Occurrence_** within the meaning of this policy.

All covered loss or damage including but not limited to **_Flood_**, wind, wind driven rain, or hail, that is associated with and occurs during a **_Named Storm_** shall be considered a single **_Occurrence_**. Covered loss or damage that occurs subsequent to a **_Named Storm_** being downgraded to a tropical depression shall be considered a separate **_Occurrence_**.

**_Raw Stock_**

Material in the state in which the Insured receives it for conversion by the insured into **_Finished Stock_**.

**_Securities_**

All negotiable and nonnegotiable instruments or contracts representing either **_Money_** or other property and includes revenue and other stamps in current use, tokens and tickets, but not **_Money._**

**_Source Code_**

**_Application_** and **_System Software_** in its original form as written by the programmer, not executable by the computer directly (because it must be converted into machine language by compilers, assemblers and interpreters).

**_System Software_**

Programs used to control the computer and develop **_Application Software_** such as operating systems, communications software, and application development tools.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

| **CNA SIGNATURE PROPERTY POLICY** |
|---|

***Theft***  An unlawful taking of property.

***Time Element***  Business Interruption (Gross Earnings), Expediting Expense, Extra Expense, Rental Value, ***Leasehold Interest***, Contingent Business Interruption (Gross Earnings), Rents.

***Tsunami***  A great sea wave produced by sub-marine earth movement, volcanic eruption or other earth movement.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021



| **CNA PROPERTY POLICY** |
| --- |

| **THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY** |
| --- |

| **EQUIPMENT BREAKDOWN COVERAGE** |
| --- |

**EB1.   INSURING AGREEMENT**

    **a.**    Subject to all the terms and conditions stated herein and in the policy of which this Coverage is part, and not in conflict herewith, the Company shall be liable for:

        **(1)**    Direct physical loss to property of the Insured and to property of others in the care, custody or control of the Insured; and

        **(2)**    The loss and expense resulting from the necessary interruption of business;

    All as resulting from **Breakdown** of **Covered Equipment**. **Covered Equipment** must be in use or connected ready for use at the location specified for it at the time of the **Breakdown** .

    **b.**    When used in this Coverage part, the following shall apply:

        **(1)**    **Covered Equipment** shall mean any:

            **(a)**    Equipment built to operate under internal pressure or vacuum other than weight of contents;

            **(b)**    Mechanical or electrical machine or apparatus used for the generation, transmission or utilization of mechanical or electrical power, including production machinery;

            **(c)**    Equipment described in paragraphs (a) or (b) that is owned by a public or private utility and used solely to provide utility services to the insured premises.

        **(2)**    **Breakdown** shall mean sudden and accidental breakdown of **Covered Equipment** or a part thereof which manifests itself at the time of its *Occurrence* by physical damage that necessitates repair or replacement of the **Covered Equipment** or part thereof.

        **(3)**    None of the following is a **Breakdown**:

            **(a)**    Wear and tear, depletion, deterioration, corrosion or erosion;

            **(b)**    Malfunction including but not limited to adjustment, alignment, calibration, cleaning or modification;

            **(c)**    Leakage at any valve, fitting, shaft seal, gland packing, joint or connection;

            **(d)**    The functioning of any safety or protective device.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021



| CNA PROPERTY POLICY |
| --- |

| THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY |
| --- |

**(e)** The cracking of any part of an internal combustion gas turbine exposed to the products of combustion.

**EB2.** **LIMIT OF LIABILITY**

The most the Company will pay for any and all coverages for loss or damage from any one **Breakdown** is the Equipment Breakdown Limit of Insurance shown in Section **I.4.m.** of the Declarations. If the Limit of Insurance is shown as "INCLUDED" the limit for Equipment Breakdown coverage is included in the Property and Business Interruption Limits provided under **I.4. LIMITS OF LIABILITY**.

If an initial **Breakdown** causes other **Breakdowns**, all **Breakdowns** at any one location which manifest themselves at the same time and are the result of the same cause will be considered one **Breakdown** .

**EB3.** **SUBLIMITED COVERAGES**

The following coverages are subject to the corresponding Equipment Breakdown sublimits shown in Section **I.4.m.** of the Declarations.

**a.** **Ammonia Contamination**

The Company will pay for loss, including salvage expense, with respect to damage by ammonia contacting or permeating property under refrigeration or in process requiring refrigeration, resulting from **Breakdown** of **Covered Equipment** .

**b.** **Spoilage**

The Company will pay for the spoilage damage to raw materials, property in process or finished products, provided all of the following conditions are met:

**(1)** The raw materials, property in process or finished products must be in storage or in the course of being manufactured;

**(2)** The Insured must own or be legally liable under written contract for the raw materials, property in process or finished products; and

**(3)** The spoilage damage must be due to the lack or excess of power, light, heat, steam or refrigeration resulting from **Breakdown** of **Covered Equipment** .

**EB4.** **DEDUCTIBLE**

There shall be no liability for loss or damage resulting from any one **Breakdown** until the amount of covered loss or damage exceeds the deductible shown in the Declarations for each applicable coverage. The Company will then pay the amount of covered loss or damage in excess of the deductible, up to the applicable Limit of Insurance.

**a.** Deductibles apply separately for each applicable coverage except if:

**(1)** A deductible is shown as COMBINED for any of the coverages in the Declarations, then the Company will first subtract the combined deductible amount from the aggregate amount of any loss to which the combined deductible

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021



| CNA PROPERTY POLICY |
|---|

| THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY |
|---|

applies; or

**(2)** More than one item of **Covered Equipment** is involved in one **Breakdown**, then only the highest deductible shall apply for each of the applicable coverages.

**b.** Determination Of Deductibles:

**(1)** **Dollar Deductible**: If a dollar deductible is shown in the Declarations, the deductible amount will be subtracted from any loss the Company would otherwise pay.

**(2)** **Time Deductible**: If a time deductible is shown in the Declarations, the Company will not be liable for any loss under that coverage that occurs during that specified time period immediately following a Breakdown. If a time deductible is shown in days, each day shall mean twenty-four consecutive hours.

**(3)** **Multiple Of Daily Value Deductible**: If a multiple of daily value deductible is shown in the Declarations, the deductible will be calculated as follows:

**(a)** For the entire premises where the loss occurred, determine the total amount of _**Time Element**_ that would have been earned during the period of interruption had no **Breakdown** taken place.

**(b)** Divide the result in Paragraph **(a)** by the number of days the business would have been open during the period of interruption. The result is the daily value.

**(c)** Multiply the daily value in Paragraph **(b)** by the number of days shown in the Declarations. The deductible amount will be subtracted from any loss the Company would otherwise pay. The Company will then pay the amount of loss or damage in excess of the deductible, up to the applicable Limit of Insurance.

**(4)** **Percentage Of Loss Deductible**: If a deductible is expressed as a percentage of loss in the Declarations, the Company will not be liable for the indicated percentage of gross amount of loss or damage (prior to the applicable deductible or coinsurance) insured under the applicable coverage.

**c.** **Minimum Or Maximum Deductibles:**

**(1)** If:

**(a)** A minimum dollar amount deductible is shown in the Declarations; and

**(b)** The dollar amount of the Multiple of Daily Value or the Percentage of Loss Deductible is less than the Minimum Deductible;

then the Minimum Deductible amount shown in the Declarations will be the applicable deductible.

**(2)** If:

**(a)** A maximum dollar amount deductible is shown in the Declarations; and

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2
INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021



| CNA PROPERTY POLICY |
| --- |

| THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY |
| --- |

**(b)** The dollar amount of the Multiple of Daily Value or the Percentage of Loss Deductible is greater than the Maximum Deductible;

Then the Maximum Deductible amount shown in the Declarations will be the applicable deductible.

**EB5. EXCLUSIONS**

All of the exclusions in the policy of which this Coverage is part except **exclusions II.D.2. b., c., d.,** and **j.,** shall apply to Equipment Breakdown. The following additional exclusions shall also apply:

**a.** Breakdown of any structure or foundation (other than a bedplate of a machine) supporting **Covered Equipment** or any part thereof, not caused by a **Breakdown** of **Covered Equipment** ;

**b.** Breakdown of any boiler settling, insulating or refractory material not caused by a **Breakdown** of **Covered Equipment**;

**c.** Breakdown of well casings, penstock or draft tubes;

**d.** Breakdown of **Covered Equipment** manufactured, rebuilt, repaired, refurbished or held by the Insured for sale to others;

**e.** Breakdown of any oven, stove or furnace;

**f.** Breakdown of any vacuum tube, gas tube or brush;

**g.** Breakdown of any electronic computer or ***electronic data processing equipment*** used exclusively for administrative purposes;

**h.** Breakdown of catalyst not caused by a **Breakdown** of **Covered** containing **Equipment** such catalyst or any other **Covered Equipment** ;

**i.** Breakdown of any sewer piping, any buried piping or any piping forming a part of a sprinkler system or any water piping other than:

**(1)** Feed water piping between any boiler and its feed pumps or injectors,

**(2)** Boiler condensate return piping, or

**(3)** Water piping forming a part of a refrigerating or air conditioning system used for cooling, humidifying or space heating purposes;

**j.** Breakdown of **Covered Equipment** until such time as said **Covered Equipment** has been installed and completely tested on the premises of the Insured. For the purposes of this insurance, "completely tested" shall mean that said **Covered Equipment** has operated on the Insured's premises in the capacity for which it was designed as part of the Insured's normal production process or processes. Notwithstanding the above, coverage under this Agreement shall apply to any newly installed **Covered Equipment** having a fair market value of **$1,000,000** or less and to any spare or replacement Objects or parts therefor;

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021
NYSCEF DOC. NO. 2   RECEIVED NYSCEF: 03/05/2021

**CNA**

| **CNA PROPERTY POLICY** |
| --- |

| **THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY** |
| --- |

    **k.**    **Breakdown** of **Covered Equipment** while it is being maintained or altered if said **Breakdown** is a direct result of said maintenance or alterations. However, if a **Breakdown** otherwise insured hereunder subsequently ensues, then the Company shall be liable for such **Breakdown**. Any opening, closing or transporting of **Covered Equipment** shall not be considered a part of any maintenance or alterations;

    **l.**    Loss or damage resulting from corrosion anywhere following **Breakdown** of any **Covered Equipment** utilizing sulfur dioxide or hydrogen sulfide gas.

    **m.**    Loss or damage for which there is coverage under any other part of the Policy to which this coverage is attached.

**EB6.**    **CONDITIONS**

The following Condition applies in addition to all other Policy Conditions:

    **a.**    **SUSPENSION**

    Upon the discovery of a dangerous condition with respect to any **Covered Equipment** any representative of the Company may immediately suspend the Insurance with respect to a **Breakdown** to such **Covered Equipment** by written notice mailed or delivered to the Insured at the address of the Insured, or at the location of the **Covered Equipment** Insurance so suspended may be reinstated by the Company, but only by an endorsement issued to form a part of this policy. The Insured will be allowed the unearned portion of the premium paid for the suspended insurance, pro rata for the period of suspension; however, the suspension will be effective even if the company has not yet made or offered a refund.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM    INDEX NO. 651503/2021

NYSCEF DOC. NO. 2    RECEIVED NYSCEF: 03/05/2021



### EARTH MOVEMENT & LOSS CONDITIONS AMENDATORY ENDORSEMENT

It is hereby understood and agreed:

I.    Subparagraph **g.** under **Group 2 Exclusions** in the **EXCLUSIONS** part of the **COVERAGE** section of this Policy is deleted and replaced by the following:

   **g.**    Settling, bulging, cracking, shrinking or expansion of foundations, walls, roofs, ceilings, floors, walkways, patios, or roadways and other paved surfaces; or expansion, contraction or settling of soil;

II.    Subparagraph **d.** of VALUATION under the **LOSS CONDITIONS** section of this Policy is deleted and replaced by the following:

   **d.**    Exposed film, records, manuscripts and drawings: the value blank plus the cost of copying information from backup or from originals of a previous generation, but this policy does not insure any other cost, including research, engineering or other cost, of restoring or re-creating information lost;

   ***Data***, programs or any other software stored on electronic, electromechanical, electromagnetic data processing or production equipment: the cost of transferring such from backup or from originals of a previous generation, but this policy does not insure any other cost, including research, engineering or other cost of restoring or re-creating information lost, except as provided in Section **II.C.11. ELECTRONIC DATA PROCESSING**;

   Other documents not specifically excluded or addressed above: not to exceed the value blank plus cost of reproducing; but no liability is assumed hereunder for the cost of gathering or assembling information or data for such reproduction;

III.    The definition of ***Earth Movement*** in the **GLOSSARY** section of this Policy is deleted and replaced by the following:

Earthquake, landslide, mine subsidence, volcanic eruption, volcanic action, and other sudden earth sinking (including sinkhole collapse), rising, shifting, or movement (natural or man-made) except as follows:

**a.**    Flood, surface water, mudslide or mud flow (caused by accumulation of water on or underground), waves, tidal water or tidal wave, Tsunami, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not;

**b.**    Release of water impounded by a dam regardless of cause.

However, any fire, explosion or leakage from fire protective systems or devices resulting from ***Earth Movement*** will not be considered to be loss by ***Earth Movement*** within the terms of this policy.

---

G300981B (03-18)
Page 1   of 2
Continental Casualty Company
Insured Name: Plaza Athenee Hotel Company
Limited

Policy No: 6023357065
Endorsement No: 1
Endorsement Effective Date:
Policy Effective Date: 03/08/2019

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021

**CNA**

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the Policy Effective date of said Policy at the hour stated in said Policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said Policy.

G300981B (03-18)
Page 2   of 2
Continental Casualty Company
Insured Name: Plaza Athenee Hotel Company
Limited

Policy No: 6023357065
Endorsement No: 1
Endorsement Effective Date:
Policy Effective Date: 03/08/2019

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021



| CNA PROPERTY POLICY |
|---|

| THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY |
|---|

## MINIMUM EARNED PREMIUM

The following is added to the Cancellation Clause of this policy:

1. In the event of cancellation of this policy by or at the direction of the Insured, the Company shall retain a Minimum Earned Premium of  $36,990 of the total annual premium.

2. If the Insured cancels this policy, the earned premium will be computed in accordance with the customary short-rate table and procedure, or the Minimum Earned Premium stated above, whichever is greater.

---

SR 003 11 09
Page 1  of 1
Continental Casualty Company
Insured Name: Plaza Athenee Hotel Company
Limited

Policy No: 6023357065
Endorsement No: 2
Endorsement Effective Date:
Policy Effective Date: 03/08/2019

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021



## CNA PROPERTY POLICY

### THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

The **LOSS PAYABLE CLAUSE** and **MORTGAGEE INTERESTS AND OBLIGATIONS** as provided by this policy shall apply to the person(s) or entity listed below.

**LOSS PAYEE/MORTGAGEE:**

Effective 03/08/2019
M.C.S. Business Machines
15325 S.E. 30th Place, #100
Bellevue, WA, 98007
Loss Payee

Effective 03/08/2019
Canon Business Solutions
125 Park Avenue
New York, NY, 10017
Loss Payee: Reference / Loan #: JCT03730 & JCT02753 - 2 Copiers - IR5020

Effective 03/08/2019
Canon Business Solutions
125 Park Avenue
New York, NY, 10017
Loss Payee:  Reference / Loan #: XKH60679 & XKH59695 - 2 Finishers - F1 AR500 #XKH61

Effective 03/08/2019
Avaya CIT
Cust. Sve. (#753-1239062-001)
P.O. Box 550599
Jacksonville, FL, 32255-0599
Loss Payee

Effective 03/08/2019
De Lage Laden Financial
(Acct 608024)
P.O. Box 41602
Philadelphia, PA, 19101-1602
Loss Payee

LPMOR001 (08-11)
Page 1   of 4
Continental Casualty Company
Insured Name: Plaza Athenee Hotel Company
Limited

Policy No: 6023357065
Endorsement No: 3
Endorsement Effective Date:
Policy Effective Date: 03/08/2019

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021



## CNA PROPERTY POLICY

## THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY

Effective 03/08/2019
Marlin Business Bank
c/o Ins. Service Center
P.O. Box 368
Marlton, NJ, 08053
Loss Payee

Effective 03/08/2019
Neat Heat & Cooling, Inc.
35 Alabama Avenue
Island Park, NY, 11558-1115

Effective 03/08/2019
On Site Energy
40 Charlotte Avenue
Hicksville, NY, 11802
Loss Payee

Effective 03/08/2019
Pitney Bowes Global Financial Services, LLC
P.O. Box 909
Shelton, CT, 06484-0949

**LOSS PAYABLE CLAUSE**

Loss, if any, shall be adjusted with and payable to the Named Insured or their order, whose receipt shall constitute a release in full of all liability under this policy with respect to such loss.

LPMOR001 (08-11)
Page 2   of 4
Continental Casualty Company
Insured Name: Plaza Athenee Hotel Company
Limited

Policy No: 6023357065
Endorsement No: 3
Endorsement Effective Date:
Policy Effective Date: 03/08/2019

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021



| CNA PROPERTY POLICY |
|---|

| THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY |
|---|

**MORTGAGEE INTERESTS AND OBLIGATIONS**

The following provisions in favor of any Mortgagee named in a schedule or Certificate of Insurance on file with the Company apply to the **_Location_** for which the Mortgagee is named, unless another Mortgagee Clause is specifically indicated as applying.

**a.**  The term "Mortgagee" includes Trustees.

**b.**  For insured loss under this policy to specified property the Company will pay to each specified Mortgagee, as its interest may appear under all present or future mortgages upon the property, in order of precedence of the mortgages.

**c.**  The interest of the Mortgagee in property insured under this policy will not be invalidated by:

**(1)**  Any act or neglect of the Mortgagor or owner of the specified property;

**(2)**  Foreclosures, notice of sale, or similar proceeding with respect to the specified property;

**(3)**  Change in the title or ownership of the specified property; or

**(4)**  Change to an occupancy of the premises more hazardous than that permitted by this policy;

Provided that, if the Mortgagor or owner has failed to pay any premium due under this policy, the Mortgagee must pay the premium within ten (10) days of written notice by the Company.

**d.**  The Mortgagee will notify the Company of any known change in ownership or occupancy or increase in hazard of the covered property that has come to the knowledge of said Mortgagee. The Mortgagee may immediately pay the increased premium associated with such known change. If the Mortgagee fails immediately to notify the Company of such known change or fails to pay the increased premium, all coverage under this policy will cease at the time of such premium due date.

**e.**  The Company may cancel this policy, including the interest of the Mortgagee, by giving the Mortgagee or its agent written notice:

---

LPMOR001 (08-11)
Page 3   of 4
Continental Casualty Company
Insured Name: Plaza Athenee Hotel Company
Limited

Policy No: 6023357065
Endorsement No: 3
Endorsement Effective Date:
Policy Effective Date: 03/08/2019

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM
NYSCEF DOC. NO. 2

INDEX NO. 651503/2021
RECEIVED NYSCEF: 03/05/2021



| CNA PROPERTY POLICY |
|---|

| THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY |
|---|

**(1)** Ten (10) days prior to the effective date of cancellation, if cancellation is for nonpayment of premium;

**(2)** Sixty (60) days prior to effective date of cancellation, if cancellation is for any other reason.

**f.** If a loss hereunder is made payable, in whole or in part, to a designated Mortgagee not named in this policy, that interest may be canceled by giving to such Mortgagee ten (10) days written notice of cancellation.

**g.** If the Company pays the Mortgagee for loss under this policy, and denies liability to the Mortgagor or owner, the Company will, to the extent of the payment made to the Mortgagee, be subrogated to all the rights of the Mortgagee under all securities and loan agreements held as collateral to the debt. At its option, the Company may pay to the Mortgagee the whole principal on the debt with its interest; and in this event, all rights and securities will be transferred from the Mortgagee to the Company. However, any subrogation by the Company will not impair the right of the Mortgagee to recover the full amount of said Mortgagee's claim.

**h.** If the Insured fails to render proof of loss, the Mortgagee, upon notice, will render proof of loss within sixty (60) days of notice and will be subject to the provisions of the policy relating to Appraisal, Payment of Loss and Suit Against the Insurers.

All other terms and conditions of the Policy remain unchanged.

This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the Policy Effective date of said Policy at the hour stated in said Policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said Policy.

LPMOR001 (08-11)
Page 4   of 4
Continental Casualty Company
Insured Name: Plaza Athenee Hotel Company
Limited

Policy No: 6023357065
Endorsement No: 3
Endorsement Effective Date:
Policy Effective Date: 03/08/2019

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                          RECEIVED NYSCEF: 03/05/2021



---
**CNA PROPERTY POLICY**
---

**THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY**

**CNA SELECT RISK**

**THIS ENDORSEMENT CHANGES YOUR POLICY – PLEASE READ IT CAREFULLY.**

**PERMISSION FOR EXCESS INSURANCE**

In consideration of the rate and premium for which this policy is written, the following additional provisions are hereby made a part of this policy superseding any provisions to the contrary:

1.  **EXCESS INSURANCE:**   Permission is hereby granted to purchase insurance in excess of the amount (Limit of Liability) stated in this policy. Such excess insurance shall not be considered other insurance for the purposes of the "Other Insurance" clause.

2.  Any reference to **PRO RATA LIABILITY** or any other apportionment clause is hereby deleted.

3.  **RECOVERED PROPERTY** is amended to include the following:

    When, in connection with any loss hereunder, any salvage or recovery is received subsequent to the payment of such loss, the loss shall be figured on the basis on which it would have been settled had the amount of salvage or recovery been known at the time the loss was originally determined. Any amounts thus found to be due either party from the other shall be paid promptly.

    The expense of all proceedings necessary to such recoveries shall be apportioned between the interests concerned in the ratio of their respective recoveries as finally settled. If there shall be no recovery and proceedings are conducted solely by this Company, the expense thereof shall be borne by this Company.

All other terms and conditions of the Policy remain unchanged.

> This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the Policy Effective date of said Policy at the hour stated in said Policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said Policy.

CNA55080XX (01-12)                                    Policy No: 6023357065
Page 1   of 1                                         Endorsement No: 4
Continental Casualty Company                          Endorsement Effective Date:
Insured Name: Plaza Athenee Hotel Company             Policy Effective Date: 03/08/2019
Limited

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM          INDEX NO. 651503/2021
NYSCEF DOC. NO. 2                                         RECEIVED NYSCEF: 03/05/2021



| CNA PROPERTY POLICY |
|---|

| THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY |
|---|

It is hereby understood and agreed that the policy to which this endorsement is attached is amended as follows:

**TERRORISM COVERAGE UNDER TRIA**

Coverage under this policy is extended to loss or damage not otherwise excluded that is caused by an act of Terrorism that is certified under the U.S. Terrorism Risk Insurance Act.

Exclusion **1. c. Terrorism** is deleted for ***Locations*** in the United States of America, including its territories and possessions.

**LIMITATIONS ON PAYMENT OF TERRORISM LOSSES**

The Act, as amended, contains a $100 Billion cap that limits U.S Government reimbursement as well as insurers' liability for losses resulting from certified acts of Terrorism when the amount of such losses in any one calendar year exceeds $100 Billion.

When an act of Terrorism that is certified under the Act exceeds $100 billion in any one calendar year (January 1 through December 31) and we have met our insurer deductible under the Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

---

G300714A (10-08)                                    Policy No: 6023357065
Page 1   of 1                                       Endorsement No: 5
Continental Casualty Company                        Endorsement Effective Date:
Insured Name: Plaza Athenee Hotel Company           Policy Effective Date: 03/08/2019
Limited

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM   INDEX NO. 651503/2021

NYSCEF DOC. NO. 2                                    RECEIVED NYSCEF: 03/05/2021



| CNA PROPERTY POLICY |
|---|

| THIS ENDORSEMENT CHANGES YOUR POLICY - PLEASE READ IT CAREFULLY |
|---|

### WATER OR OTHER LIQUID DAMAGE DEDUCTIBLE ENDORSEMENT

It is hereby understood and agreed that the policy to which this endorsement is attached is amended as follows:

This endorsement modifies insurance provided under the following:

**CNA SIGNATURE PROPERTY POLICY**
**CNA Property – LEGACY Policy**
**CNA Property – HEALTHCARE Policy**
**CNA GLOBAL SIGNATURE PROPERTY POLICY**

As respects loss or damage due to water or other liquid not associated with a _**Named Storm**_ or _**flood**_, occurring at all _**locations**_, except as may be further provided below, the deductible shall be:

| Location | Deductible |
|---|---|
| All Locations | $25,000 |
|  |  |
|  |  |
|  |  |
|  |  |

If two or more deductibles apply on a per _**location**_ basis in any one _**occurrence**_, the largest deductible applying to each _**location**_ will be applied separately to each _**location**_.

All other terms and conditions of the Policy remain unchanged.

| This endorsement, which forms a part of and is for attachment to the Policy issued by the designated Insurers, takes effect on the Policy Effective date of said Policy at the hour stated in said Policy, unless another effective date (the Endorsement Effective Date) is shown below, and expires concurrently with said Policy. |
|---|

Policy No: 6023357065
Endorsement No: 6
Endorsement Effective Date:
Policy Effective Date: 03/08/2019

© CNA  All Rights Reserved.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 3

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021



*Continental Casualty Company*
*PO Box 8317*
*Chicago, IL 60680*

**Eric Blaylock**
*Claims Specialist*
*Telephone 312.822.2344*
*eric.blaylock@cna.com*

July 1, 2020

Ms. Lisa Lichtenstein
Director of Human Resources
Plaza Athenee Hotel Company Limited
DBA Plaza Athenee Hotel
37 East 64th Street
New York, NY 10065-7014

Re:   Claim Reference No.:       E3873174
      Insured:                  Plaza Athenee Hotel Company Limited DBA Plaza Athenee Hotel
      Underwriting Company:     Continental Casualty Company
      Policy Number:            6023357065
      Reported Date of Loss:    March 22, 2020

Dear Ms. Lichtenstein:

I am writing to inform you of the coverage position of Continental Casualty Company ("CCC")
concerning the above-referenced claim.  We value you as a customer, and we understand how
challenging these trying times are for businesses like yours.  For the reasons explained below,
however, we must advise you that the policy does not provide coverage for your claim.

On April 23, 2020, on behalf of Plaza Athenee Hotel Company Limited DBA Plaza Athenee Hotel
("PAHC"), your agent presented this claim for loss of business income as a result of the inability to
book hotel rooms or operate your restaurant and bar because of response to the COVID-19 pandemic.
In investigating this claim, we have relied on the information provided by your agent and PAHC.

When we spoke by phone on May 21, 2020, you and your agent advised me that PAHC is a multi-story
hotel with a restaurant and bar; there is also a hotel spa but you do not operate the spa.  You explained
that as early as January 2020, PAHC began experiencing a reduction in patronage due to clients'
concerns about the spread of COVID-19, which caused a decline in PAHC's occupancy rates, bookings
for corporate meetings and private events, food and beverage sales.  Documentation that you later
provided showed a loss of $1.4 million through February 2020, by comparison to those months in

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 3

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

Ms. Lisa Lichtenstein
July 1, 2020
Page 2 of 5

2019. You stated, at the time of our conversation, that all business ceased when New York Governor, Andrew Cuomo signed Executive Orders on March 20, 2020 that closed all hotels in New York.

During this call, you also explained that only a limited number of staff were working at that time. You confirmed that there had been no direct physical loss or damage at the location, and that PAHC employees had performed some cleaning at the premises just before the building was closed and that of all the cleaning that had been done, there were no extra expenses incurred. You told me that two employees tested positive for COVID-19 but this was a month after the hotel has closed. You further advised me that the bar and restaurant inside the hotel were also closed by Governor Cuomo's shutdown order. You stated that due to collective bargaining agreements with the hotel employees union, that Centers for Disease Control procedures must be used upon the reopening of the hotel and that you estimate the cost of extra expenses associated with cleaning costs and the purchase of purification equipment will exceed $100,000. Along with cleaning, there is equipment to be purchased for each individual hotel room and all common areas of the hotel. At the time we spoke you thought that the business would be impacted by these government Orders until September 1, 2020.

After that telephone call, you provided documentation about your claim in an email on May 21, 2020 that included the aforementioned financial impact documentation; information about personal protective gear and other expenses that will be incurred due to Orders and mandates from the Centers for Disease Control; as well as Governor Cuomo's March 7, 2020 Executive Order 202.8 which includes an "On Pause" initiative stating that all non-essential businesses statewide must close in-office personnel functions effective at 8 p.m. on Sunday, March 22, 2020. We understand from our review that, consistent with these orders, your hotel, as well as the restaurant and bar were forced to close. We further understand that you attribute PAHC's decline in revenue to both the recommendations made by various public health institutions as well as the Governor's Executive Orders, closing all non-essential businesses.

Following the completion of our factual investigation, we evaluated the claim under the CNA Signature Policy issued by CCC to PAHC for the policy period March 08, 2019 to June 01, 2020, Policy No. 6023357065 (the "Policy"). The Policy has the following Coverage Parts: Property Coverage and Equipment Breakdown Coverage. We have reviewed your claim under the Property Coverage Part, which provides up to a limit of $130,000,000 per occurrence for Blanket Real Property, Blanket Personal Property and Business Interruption Coverages. The Property Coverage provides, in part, that "this policy insures against risks of direct physical loss of or damage to property and/or interests described herein at covered Locations." PAHC has not reported any "direct physical loss of or damage to" its Real or Business Personal Property, and you confirmed to me when we spoke that there had been none at the insured premises. Rather, the claim reported is for an interruption in PAHC's business caused by the inability to book hotel accommodations, hold corporate meetings, and private

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 3

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

Ms. Lisa Lichtenstein
July 1, 2020
Page 3 of 5

events, or operate the bar and restaurant.  The Real and Business Personal Property coverage, therefore, does not apply.

We direct you next to the Time Element portion of your Policy, which states, in pertinent part:

**B. TIME ELEMENT**

**1.      BUSINESS INTERRUPTION (GROSS EARNINGS)**

        **a.**  This policy covers against loss resulting from necessary interruption of business caused by direct physical loss of or damage to covered property, except ***Finished Stock***, by the peril(s) insured against and occurring during the term of this policy at covered ***Locations*** occupied by the Insured, subject to the sublimit specified in Section **I.4.** of this policy.

        In the event of such physical loss or damage the Company shall be liable for the actual loss sustained by the Insured resulting directly from such interruption of business, but not exceeding the reduction in **Gross Earnings** as set forth below less charges and expenses which do not necessarily continue during the interruption of business, for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been damaged or destroyed, commencing with the date of such damage or destruction and not limited by the date of expiration of this policy, but in no event to exceed the number of months specified in Section **I.5. TIME LIMITS** if a Business Interruption Period of Indemnity limit is specified.

This coverage is conditioned on "direct physical loss of or damage to covered property. . . at covered Locations." Your claims of loss were presented for the covered Location at 37 East 64th Street, New York, NY 10065-7014.  You have not claimed that PAHC's operations were suspended because of any direct physical loss of or damage to property at those Locations, and our investigation has revealed no evidence of such direct physical loss or damage.  The Business Interruption Time Element coverage therefore does not apply.

Next, we direct you to the Denial of Access by Civil Authority and Ingress–Egress Additional Coverages, Coverage Extensions and Limitations portion of your Policy, which states, in pertinent part:

**10. DENIAL OF ACCESS BY CIVIL AUTHORITY AND INGRESS-EGRESS**

        This policy is extended to cover for up to the time limit specified in Section **I.5.** but not exceeding the sublimit shown in Section **I.4.** of this policy, the actual loss sustained:

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 3

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

Ms. Lisa Lichtenstein
July 1, 2020
Page 4 of 5

    **a.** during the period of time while access to the Insured's **_Location_** is prohibited by order of civil authority, but only when such order is given as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of said **_Location_**; or

    **b.** during the period of time when as a direct result of physical loss or damage to property of the type insured from a peril insured against, ingress to or egress from the Insured's **_Location_** is thereby physically prevented.

The time limit for Civil Authority coverage under your Policy is 30 days, and the sublimit is $50,000. Our investigation has determined that the New York Governor's Executive Orders were not issued as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of PAHC's Location, and you have not claimed otherwise. The Executive Orders also did not prohibit access to PAHC's Location or physically prevent ingress to or egress from that Location. Rather, the Executive Orders restricted the services that PAHC could provide at that Location. The information you have given us and our investigation confirm that the Location is physically accessible and open for business to the extent permitted under the Executive Orders. For these reasons, the Policy does not provide coverage under the Civil Authority provision.

Even if there had been direct physical loss of or damage to property at the covered Locations as required under the Policy provisions, the Policy also contains several exclusions that might bar coverage for your claim. For example, the Policy contains exclusions for loss or damage caused by or resulting from contaminants or pollutants (section D.1.g.), microbes (section D.1.h.), consequential loss (meaning delay, loss of market, loss of use, or any other consequential or remote loss) (section D.2.h.), and any loss during a period when business would not or could not have been conducted for any reason other than physical damage of the type insured against (section D.3.a.). One or more of those exclusions might bar coverage for property damage and/or loss of business income caused by COVID-19, even if the other requirements to trigger coverage under the Policy were met. References to the Policy sections are to the CNA Property Policy, Signature Policy Form, G300709A (10-08).

The coverage issues and views described above are not intended in any way to be exhaustive or exclusive, and we expressly reserve all of our rights under the Policy, including, but not limited to, the right to raise additional policy terms and conditions as defenses to coverage, as appropriate, including in response to any additional information you may present.

Upon receipt and review of this letter, if you believe there is additional information that CCC should consider, please provide it promptly so that we can review the information you would like us to consider and assess whether it affects CCC's coverage determination.

FILED: NEW YORK COUNTY CLERK 03/05/2021 10:51 AM

NYSCEF DOC. NO. 3

INDEX NO. 651503/2021

RECEIVED NYSCEF: 03/05/2021

Ms. Lisa Lichtenstein
July 1, 2020
Page 5 of 5

Finally, we direct your attention to the **Conditions Section** of your **Policy**:

**9. SUIT AGAINST THE INSURERS**

No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all of the requirements of this policy, nor unless commenced within the twelve (12) months immediately following inception of the loss, unless a longer period of time is prescribed by the insurance laws of the state or jurisdiction in which this contract is issued.

CCC recognizes the challenges that COVID-19 is presenting for businesses like yours.  We value you as a policyholder, and we want you to know that we gave thoughtful consideration to the facts of the claim presented and the terms and conditions of the Policy.  Unfortunately, the Policy does not respond to provide coverage for the claim presented.  Please feel free to call me if you have any questions or wish to discuss this further.

Sincerely,

Eric Blaylock
Claims Specialist

cc:  R-T Specialty, LLC
     1345 Avenue Of The Americas, Floor 4M
     New York, NY 10105-0020