UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PLAZA ATHENEE HOTEL COMPANY LIMITED d/b/a PLAZA ATHENEE HOTEL | **Case No.:   1:21-cv-03245 (MKV)** |
| | **FIRST AMENDED COMPLAINT** |
| Plaintiffs, | |
| -against- | **JURY TRIAL DEMANDED** |
| CONTINENTAL CASUALTY COMPANY | |
| Defendants | |

Plaintiff PLAZA ATHENEE HOTEL (hereinafter, "Plaintiff"), brings this Complaint alleging relief against Defendant, CONTINENTAL CASUALTY COMPANY and avers as follows

## I.      JURISDICTION

1.      This is a civil action seeking declaratory relief arising from an insurance contract between Plaintiff and the Defendant.

2.      Plaintiff commenced this action on or about March 5, 2011 by filing a Complaint in the Supreme Court of the State of New York, County of New York, Index No 651503/21.

3.      Defendant was served with Plaintiff's Complaint on March 11, 2011.

4.      Defendant  is a citizen of the State of Illinois which is its state of incorporation and where in maintains a principal place of business located at 151 North Franklin Street Chicago Illinois 60606.

5.      On April 14, 2021,  Defendant filed a notice of removal to United States District Court, Southern District of New York premised on complete diversity of citizenship and the amount in controversy exceeding $75,000.00.

6.      This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship between Plaintiff and the Defendant and amount in controversy is satisfied.

7.      The Court has personal jurisdiction over Defendant because at all relevant times it has engaged in substantial business activities in the State of New York. At all relevant times Defendant transacted, solicited, and conducted business in New York through its employees, agents, and/or sales representatives, and derived substantial revenue from such business in New York. Defendant purposefully availed itself of personal jurisdiction in New York because it contracted to provide insurance to Plaintiff in New York which is the subject of this case.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because a substantial portion of the wrongful acts upon which this lawsuit is based occurred in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(c) because Plaintiff is a New York corporations and Defendant is a corporation that has substantial, systematic, and continuous contacts in the State of New York, and the acts and/or omissions complained of took place, in whole or in part, within the venue of this Court.

## II.      <u>NATURE OF THE CASE</u>

9.      In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders") mandating that in store businesses cease or restrict operations, Plaintiff has sustained significant business losses.

10.      Plaintiff's insurance policy (6023357065) is an All Risk Policies and provides coverage for all non-excluded business losses, and thus provides coverage here.

11.      Upon information and belief, at all relevant times the COVID-19 virus was present at and within Plaintiff's insured property and in buildings within a one mile radius of the insured property.

12.      The material dimensions of a property can be altered and damaged through microscopic changes caused by COVID-19. Such damage may produce deadly results to human beings. If a person

infected with COVID-19 enters a building, then (until disinfected and decontaminated) the building would be (1) physically altered by the direct physical presence of the virus on surfaces or the air and (2) thus physically damaged, and (3) may potentially be transformed into a superspreading force.

13.     The presence of large numbers of customers and employees in a relatively confined indoor spaces, some of whom are virus carriers, ultimately affects the building. At all relevant times, this caused physical damage to Plaintiff's insured property. So too did the presence of virus carriers within indoor businesses within a one mile radius of the insured premises cause physical damage and loss.

14.     Whether a building has been contaminated prior to the emergency orders or was at imminent risk of contamination can be demonstrated by circumstantial evidence.

15.     As documented within defendant's denial letter, "All business ceased [at the Plaintiff's hotel] when New York Governor Andrew Cuomo signed Executive Orders on March 20, 2020 that closed all hotels in New York."

16.     COVID-19 was present at the insured location at all relevant times or there was an imminent risk of onsite COVID-19 presence all relative times, or both. At least two employees tested positive for COVID-19 as is referenced in defendant's denial letter (Exhibit B).

17.     Due to physical damage caused by COVID-19, renovation, restoration and/or clean up was required and conducted at significance expense to Plaintiff.

18.     As documented in Denial Letter, clean up costs were approximated in excess of One Hundred Thousand Dollars.

19.     In this matter COVID-19 was present in the hotel and its presence physically caused property loss and damage to property within the insured premises including, but not limited to, furniture, fixtures, hotel equipment, hotel rooms, restaurant(s), physical surfaces, hotel common spaces and other hotel property which will require extensive and costly period of remediation, restoration,

repair and replacement. Notably, the City of New York issued an Emergency Executive Order in response to COVID-19 and the pandemic, in part, because COVID-19 itself "physically is causing property loss and damage".

20.     In this matter, actions of civil authorities prohibited access to the insured premises due to damage to the property and property at locations within one mile of the insured premises. The actions of the civil authorities were taken in response to dangerous physical conditions resulting from the damage and/or continuation of covered causes of loss that caused damage. The civil authority orders were issued as a result of covered causes of loss to property at Plaintiff's premises and at locations within one mile of Plaintiff's premises. As a consequence of such foregoing damage, civil authorities issued orders prohibiting access both to the hotel and areas immediately surrounding the damaged properties.

21.     In this matter, the insured's business interruption was caused by direct physical loss of or damage to property at the subject hotel. There was direct physical loss of and damage to property at the hotel caused by a covered cause of loss not excluded by the Policy and a necessary interruption of Plaintiff's operations at the subject hotel was caused by that direct physical loss of and/or damage to property. Plaintiff's business operations were suspended by direct physical loss of and/or damage to its property.

22.     Plaintiff suffered a direct physical loss of and damage to its property and such loss and damage was a result of COVID-19 and a direct result of the orders of the civil authorities and that Plaintiff's suspensions and losses triggered Business income coverage under the Policy.

23.     Per defendant's chosen language, the Policy obligates defendant to "pay for direct physical loss of **or** damage to covered property.

24.     The Policy provides that defendant will pay for direct physical loss of or damage to Covered Property …caused by or resulting from a Covered Cause of Loss.

25.     A policy that requires physical loss or damage does not require that the physical loss or damage be tangible, structural or even visible.

26.     As a result, Plaintiff is entitled to declaratory relief that Plaintiff is covered for all business losses that have been incurred.

### III.     PARTIES

27.     At all relevant times, Plaintiff is a business entity authorized to do business and doing business in the State of New York, County of New York.

28.     Plaintiff operates a hospitality business, i.e. a hotel, whose revenue depends substantially upon the ability of guests to travel domestically and internationally to stay at the hotel, lodge at the hotel, and patronize businesses in New York City and is otherwise dependent on other items and matters; all of which have either ceased or been substantially restricted due to COVID-19 and Civil Authority Orders pertaining to same

29.     The applicable closure orders were issued in direct response to these dangerous physical conditions, or the threat thereof, and prohibited the public from accessing Plaintiff's business, thereby causing the necessary limitation or suspension of Plaintiff's operations and triggering coverages under the Policy.

30.     At all relevant times, Defendant provides business interruption coverage to its insureds, including the Plaintiff.

31.     Defendant issued an All Risk Insurance Policy to Plaintiff for the period of March 8, 2019  to June 1, 2020, and thereafter renewed.  See, Policy, attached as **Exhibit A**.

32.     The policy includes All Risk coverage which incorporates business interruption coverage for, among other things, business personal property and income protection and extra expense.

33.     Plaintiff has paid the policy premiums to defendant specifically to provide coverages of lost business income and extra expenses in the event of an involuntary business interruption.

34.     In light of the Coronavirus global pandemic ("COVID-19") and state and local orders ("Civil Authority Orders") mandating that  businesses such as Plaintiff's cease or restrict operations, Plaintiff sustained significant business losses. Consequently, Plaintiff properly and promptly submitted an insurance claim to defendant for losses and damages. On or about July 1, 2020, Defendant denied Plaintiff's claim and asserted that Plaintiff was not entitled to any coverage. See, Denial Letter, attached hereto as **Exhibit B.**

## IV.     FACTUAL BACKGROUND

### A.     Insurance Coverage

35.     On or about March 8, 2019, Defendant entered into a contract of insurance with the Plaintiff specifically to provide, among other things, business income coverage in the event of business interruption or closures by order of Civil Authority, and for business losses as a result of property damage at its location in New York County, State of New York (the "Covered Property").

36.     The Covered Property includes a hotel known as PLAZA ATHENEE HOTEL located at Plaza Athenee Hotel Company Limited 37 East 64th St New York, NY 10064.

37.     The Covered Property is covered under a Special All Risk Business Insurance Policy to the Plaintiff issued by the Defendant to Plaintiff  with Policy Number (6023357065).

38.     The Plaintiff's Policy provided, among other things coverage for property, business personal property, income protection & extra expense, and additional coverages between the period of March 8, 2019 to June 1, 2020 and renewed thereafter.

39.     Plaintiff faithfully paid policy premiums to Defendant, specifically to provide, among other things, coverage for the loss of business income and extra expense sustained in the event of business interruption or closures by order of Civil Authority.

40.     Under the Policy, insurance is extended to apply to the actual loss of business income sustained and the actual, necessary and reasonable extra expenses incurred when access to the Covered

Properties is specifically prohibited by order of civil authority as the direct result of a covered cause of loss to property in the immediate area of Plaintiff's Covered Property. This additional coverage is identified as coverage under "Civil Authority."

41.     In the Policy, Defendant agreed to pay for direct physical loss of or damage to Covered Property. A Covered Cause of Loss is defined as risks of direct physical loss of or damage to property and/or interests at covered locations.

42.     The Policy includes cause of loss coverages for business income losses and extra expenses from all risks including but not limited to civil authority actions affecting the functionality of one's property.

43.     Losses due to the COVID-19 pandemic and the New York Civil Authority Orders are a Covered Cause of Loss under the policy because they constitute RISKS OF DIRECT PHYSICAL LOSS and are not otherwise excluded.

44.     In the Policy, apart from general coverage, as part of additional coverages, Defendant agreed to pay for Plaintiff's actual loss of Business Income sustained due to suspension of Plaintiff's operations caused by direct physical loss of or damage to property.

45.     With respect to the business income and extra expense coverage, these provisions require direct physical loss of or damage to property … by the peril(s) insured against and occurring during the term of this policy at covered Locations occupied by the Insured. Because these provisions were met, coverage is indicated and due to Plaintiff.

46.     Business income and extra expense coverage were triggered in this matter because  Direct physical loss of or damage to property … by the peril(s) insured against occurred during the term of this policy at covered Locations occupied by the Insured.

47.     The Policy also includes Civil Authority coverage under which Defendant agreed to pay

for actual loss of Business Income sustained when access to the insured premises is prohibited by actions of a civil authority when such order is given as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of said location or during the period of time when as a direct result of physical loss or damage to property of the type insured from a peril insured against, ingress to or egress from the Insured's location is thereby physically prevented. Coverage is triggered because these elements are satisfied herein.

48.     As explained below, the COVID-19 pandemic throughout the State of New York where Plaintiff is located and the New York Civil Authority Orders (and similar civil authority orders issued by local, state, and federal authorities) constitute a Covered Cause of Loss triggering the Business Income, Extra Expense and Civil Authority provisions of the policy.

49.     The COVID-19 pandemic and New York Civil Authority Orders (and similar civil authority orders constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS" and are not otherwise excluded.

50.     The suspension of Plaintiff's operations was caused by "direct physical loss of or damage to" property in the form of a loss of access to the insured property caused by the COVID-19 pandemic, and the New York Civil Authority Orders.

51.     The COVID-19 Pandemic and the New York Civil Authority Orders separately implicated the Civil Authority coverage because access to the scheduled premises was prohibited by order of a civil authority. And the civil authority order was due to direct physical loss of or damage to property at locations within one mile of the covered premises, caused by or resulting from "RISK[] OF DIRECT PHYSICAL LOSS" and the COVID-19 pandemic.

52.     The COVID-19 pandemic and/or orders of civil authority related to the COVID-19 pandemic (like the New York Civil Authority Orders) caused "direct physical loss of or damage" to "Covered Property" under the Plaintiff's policy.

53.     As a result of emergency Orders, Plaintiff suffered economic business income and extra expense losses.

54.     Plaintiff further states that it suffered direct physical loss of, or damage to its property causing economic business income and extra expenses losses as a result of:

(i)     actual on-site COVID-19 contamination that caused a loss of, or damage to its property; or

(ii)    its reasonable actions-regardless of government orders-to preserve property and persons from imminent risk of harm; or

(iii)   the risk of imminent harm, as said risk is itself a covered cause of loss; or

(iv)    governmental Orders designating Plaintiff's business as unusable and in other forms; or

(v)     government Orders pursuant to inherent authorities to act in a disaster regardless of the actual presence of COVID-19 virus on site; or

(vi)    the availability of other coverages under the Policy and as otherwise set forth herein.

55.     Having suffered a loss of property and a suspension of operations, Plaintiff submitted a claim to Defendant under the policy. Defendant denied plaintiff's claim.

56.     Based on information and belief, the Defendant accepted the policy premiums with no intention of providing coverage for business income losses resulting from orders of a Civil Authority that the Covered Properties be shut down or restricted, or any related losses and/or damages.

57.     Defendant's denial of coverage is based on its claim that the Covered Properties did not sustain direct physical loss or damage. *See* Denial Letter, attached hereto as Exhibit B.

58.     However, Defendant's narrow reading of "loss" renders the Civil Authority coverage ineffectual and demonstrates Defendants had no intention of providing coverage for losses Plaintiffs faithfully paid premiums to insure against.

**B.**      **The Coronavirus Pandemic**

59.      The scientific community, and those personally affected by the virus, recognize the Coronavirus as a cause of real physical loss and damage. It is clear that contamination of the Covered Property would be a direct physical loss requiring remediation to clean the surfaces of the salon.

60.      The virus that causes COVID-19 remains stable and transmittable in aerosols for up to three hours, up to four hours on copper, up to 24 hours on cardboard and up to two to three days  on plastic and   stainless   steel. See, https://www.nih.gov/news-events/news-releases/new-coronavirus-stable-hours-surfaces.

61.      The CDC has issued a guidance that gatherings of more than 10 people must not occur. People in congregate environments, which are places where people live, eat, and sleep in close proximity, face increased danger of contracting COVID-19.

62.      The global Coronavirus pandemic is exacerbated by the fact that the deadly virus physically infects and stays on surfaces of objects or materials, "fomites," for up to twenty-eight (28) days.

63.      China, Italy, France, and Spain have implemented the cleaning and fumigating of public areas prior to allowing them to re-open publicly due to the intrusion of microbials.

64.      COVID-19 is a virus.

65.      COVID-19 is a physical substance.

66.      COVID-19 is a human pathogen,

67.      COVID-19 can be present outside the human body in viral fluid particles.

68.      COVID-19 can and does live on and/or remains capable of being transmitted and active on inert physical surfaces.

69.      COVID-19 can and does live on and/or remains capable of being transmitted and active on floors, walls, furniture, desks, tables, chairs, equipment and other items of property for a period of

time.

70.     COVID-19 can be transmitted by way of human contact with surfaces and items of physical property on which COVID-19 particles are physically present.

71.     COVID-19 has been transmitted by way of human contact with surfaces and items of physical property located at premises in New York County.

72.     COVID-19 can be transmitted by human to human contact and interaction at premises in New York County, include places such as the business entities herein.

73.     COVID-19 has been transmitted by human to human contact and interaction at premises in New York County.

74.     COVID-19 can be transmitted through airborne viral particles emitted into the air at premises.

75.     COVID-19 has been transmitted by way of human contact with airborne COVID-19 particles emitted into the air at premises in New York County within one mile of the insured premises and within the insured premises.

76.     The presence of any COVID-19 particles renders items of physical property unsafe.

77.     The presence of any COVID-19 particles on physical property impairs its value, usefulness and/or normal function.

78.     The presence of any COVID-19 particles caused direct physical harm to the insured premises and property within and to properties within one mile of the insured premises.

79.     The presence of COVID-19 particles causes direct physical loss to the insured premises and property within and to properties within one mile of the insured premises.

80.     The presence of COVID-19 particles causes direct physical damage to the insured premises and property within and to properties within one mile of the insured premises.

81.     The presence of any COVID-19 particles at premises renders the premises unsafe,

thereby impairing the premises' value, usefulness and/or normal function.

82.     The presence of people infected with or carrying COVID-19 particles renders physical property in their vicinity unsafe and unusable, resulting in direct physical loss to that property; such as occurred at the subject insured premises.

83.     The presence of people infected with or carrying COVID-19 particles at premises renders the premises, including property located at that premises, unsafe, resulting in direct physical loss to the premises and the property; such as occurred at the subject insured premises.

84.     State and local governmental authorities, and public health officials around the Country acknowledge that COVID-19 and the Pandemic cause direct physical loss and damage to property. For example,

- The City of New York issued an Emergency Executive Order in response to COVID-19 and the Pandemic, in part, "because the virus **physically is causing property loss and damage**." (Emphasis added).

- The State of Colorado issued a Public Health Order that "COVID-19….**physically contribute to property loss, contamination and damage**." (Emphasis added).

- Broward County, Florida issued an Emergency Order acknowledging COVID-19 "**is physically causing property damage**." (Emphasis).
- The State of Washington issued a stay at home Proclamation stating that the "COVID-19 pandemic and its progression…remains a public disaster affecting life, health, [and] **property**…" (Emphasis added).

- The State of Indiana issued an Executive Order recognizing that COVID-19 has the propensity to **physically** impact surfaces and personal **property**." (Emphasis added).

- The City of New Orleans issued an order stating that "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and **causing property loss and damage** in certain circumstances." (Emphasis added).

- The State of Illinois issued an Executive Order describing COVID-19's "propensity to **physically** impact surfaces and personal property."

(Emphasis added).

- The State of New Mexico issued a Public Health Order acknowledging the "threat" COVID-19 "poses" to "**property**." (Emphasis added).

- North Carolina issued a statewide Executive Order in response to the Pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of….**property**." (Emphasis added).

- The City of Los Angeles issued an Order in response to COVID-19 "because among other reasons, the COVID-19 virus can spread easily from person to person and it is **physically causing property loss or damage** due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

**C.    Civil Authority**

85.    In response to COVID-19 and the Pandemic the Governor of New York has issued multiple executive orders pursuant to the authority vested by laws of New York.

86.    In response to COVID-19 and the pandemic, the New York State of Health pursuant to its authority under New York State Law has issued multiple orders including a Stay at Home Order.

87.    The State of New York is a civil authority as contemplated by the Policy.

88.    The New York State Department of Health is a civil authority as contemplated by the Policy.

89.    The Governor of the State of New York is a civil authority as contemplated by the Policy.

90.    On March 7, 2020, New York Governor Andrew Cuomo declared a Disaster Emergency for the entire state of New York as a result of COVID-19.

91.    On March 12, 2020, Governor Cuomo set restrictions on large gatherings.

92.    On March 20, 2020, the State of New York issued a stay-at-home order that all non-essential workers must stay at home as a result of the COVID-19 pandemic. This order was extended to  June 13, 2020, and thereafter.

93.     Civil Authority orders also prohibited all non-essential travel, thereby preventing customers from traveling to and staying at Plaintiff's hotel.

94.     New York State issued statewide "Stay-at-Home," "Shelter-in-Place," or other similarly-termed closure orders, which substantially limited or completely prohibited the operation of Plaintiff's business.

95.     The continuous presence of the coronavirus on or around Plaintiff's premises, and/or the threat thereof, has rendered the premises unsafe and unfit for their intended use and therefore caused physical damage or loss to Plaintiff's property under the Policy

96.     The applicable closure orders were issued in direct response to these dangerous physical conditions, or the threat thereof, and prohibited the public from accessing Plaintiff's businesses, thereby causing the necessary limitation or suspension of Plaintiff's operations and triggering coverage under the Policy.

97.     As of March 22, 2020, Governor Cuomo ordered all "non-essential businesses" statewide to be closed and essential businesses  operations to be significantly restricted and limited with operations suspended in part and/or in whole. See, State's Executive Order 202.6. This Order remained in full effect up to on or about June 8, 2020 when Phase 1 re-opening in New York State commenced. The Governor ordered that essential businesses can remain open subject to restriction. Essential businesses include hotels (infrastructure) and restaurants/bars (but only for take-out/delivery) (retail). Any dine-in or on-premise restaurant or bar service, is specifically deemed non-essential.

98.     Further, on April 10, 2020 President Trump seemed to support insurance coverage for business loss like that suffered by the Plaintiff:

> REPORTER: Mr. President may I ask you about credit and debt as well. Many American individuals, families, have had to tap their credit cards during this period of time. And businesses have had to draw down their credit lines. Are

you concerned Mr. President that that may hobble the U.S. economy, all of that debt number one? And number two, would you suggest to credit card companies to reduce their fees during this time?

PRESIDENT TRUMP: Well it's something that we've already suggested, we're talking to them. ***Business interruption insurance***, I'd like to see these insurance companies—you know you have people that have paid. When I was in private I had business interruption. When my business was interrupted through a hurricane or whatever it may be, I'd have business where I had it, I didn't always have it, sometimes I had it, sometimes, I had a lot of different companies. ***But if I had it I'd expect to be paid***. You have people. ***I speak mostly to the restaurateurs***, where they have a restaurant, they've been paying for 25, 30, 35 years, business interruption. They've never needed it. All of a sudden they need it. And I'm very good at reading language. I did very well in these subjects, OK. And I don't see the word pandemic mentioned. Now in some cases it is, it's an exclusion. But in a lot of cases I don't see it. I don't see it referenced. And they don't want to pay up. I would like to see the insurance companies pay if they need to pay, if it's fair. And they know what's fair, and I know what's fair, I can tell you very quickly. But business interruption insurance, that's getting a lot money to a lot of people. And they've been paying for years, sometimes they just started paying, but you have people that have never asked for business interruption insurance, and they've been paying a lot of money for a lot of years for the privilege of having it, and then when they finally need it, the insurance company says 'we're not going to give it.' We can't let that happen.

See, https://youtu.be/_cMeG5C9TjU (emphasis added).

99.    The President is articulating a few core points:

- Business interruption is a common type of insurance.

- Businesses pay in premiums for this coverage and should reasonably expect they'll receive the benefit of the coverage.

- This pandemic should be covered unless there is a specific exclusion for pandemics.

- If insurers deny coverage, they would be acting in bad faith.

100.    These Orders and proclamations, as they relate to the closure of all "non-essential businesses" and restrictions on essential businesses evidence an awareness on the part of both state and local governments that COVID-19 causes damage to property. This is particularly true in places where business is conducted, such as Plaintiffs', as the requisite contact and interaction causes a heightened risk of the property becoming unsuitable for business.

101.    Plaintiff suffered losses as a direct consequence of the Civil Authority stay-at-home orders for public safety issued by the Governor of New York and the State of New York generally. Accordingly, Plaintiff has submitted a claim to Defendant related to such losses.

102.    However, Defendant has denied Plaintiff's claims in contravention of the clear policy language entitling Plaintiffs to coverage for business losses arising out of the Civil Authority Orders.

**RELEVANT POLICY PROVISIONS**

103.    The losses incurred to Plaintiff's business operations are covered under various policy provisions as described in greater detail below.

104.    First, the policy affirmatively states "We will pay for direct physical loss of or damage to the Covered Property…caused by or resulting from a covered cause of loss. See Policy annexed as Exhibit A.

105.    The operative language, as set forth above is "direct physical loss of or damage to Covered Property at the premises described…" The use of the phrase "physical loss of" in the disjunctive before the word "or" supports a construction of the policy that a loss of use of the property is sufficient to trigger coverage even if the property is not physically damaged. In Plaintiff's case, it incurred both physical loss of use of its Covered Property and physical damage.

106.    The Policy's coverage expressly includes loss of use.

107.    Loss of use can occur because of a government order or the imminent risk of harm or both.

108.    Plaintiff's policy of insurance extends coverage to the risk of physical loss as a covered cause of loss.

109.    "Loss" is "the act of losing possession" and "deprivation." Merriam-Webster, www.merriam-webster.com/dictionary/loss (last visited July 25, 2021).

110.    Plaintiff's insured premises is described in the declarations of the Policies and is covered property within the meaning of the Policy.

111.   "Covered Cause of Loss" is defined as "direct physical loss unless the loss is excluded or limited in this policy." See Policy at page 33.

    **A.  Covered Causes of Loss**
When Special is shown in the Declarations Covered Causes of Loss means RISKS OF DIRECT PHYSICAL LOSS unless the loss is excluded or limited in this policy.

112.   Further no structural damage to the premises is expressly raised as a requirement for coverage under the policy.

113.   Plaintiff sustained actual loss resulting from necessary interruption of business caused by direct physical loss of or damage to covered property by the perils insured against and same occurred during the term of this policy at covered locations occupied by the insured. Consequently, coverage is indicated and due to Plaintiff.

114.   Plaintiff sustained direct physical loss of or damage to covered property. Consequently, coverage is indicated and due to Plaintiff.

115.   The operations of Plaintiff were suspended because of direct physical loss of and damage to property at 37 East 64th Street, New York, NY 10065.

116.   The policy affirmatively states it will pay for the loss of business income due to necessary suspension of business operations when the suspension results from a loss of property caused by a covered cause of loss.

117.   Accordingly, Defendant is liable for their insured's business income losses when (1) there is a suspension of business operations, (2) the suspension is necessary, (3) the suspension is caused by a direct physical loss of property or damage to the property or an imminent risk of direct physical loss or damage to the property; and (4) the loss of or damage to property is caused by a covered cause of loss.

118.   Here all conditions are satisfied, As set forth above, in response to emergency orders closing off the

premises business purposes which occurred during the policy period, Plaintiff was forced to cease and continues to cease its business activities altogether or a vast majority its business activities.

119.   Plaintiff thus suffered the actual loss of Business Income during the policy period which were caused by the loss of (or alternatively, damage to) its property at the covered location.

120.   Plaintiff's lost business income is covered under the policy and has not been excluded from coverage. Plaintiff is entitled to payment for these business income losses.

121.   Plaintiff has a plausible claim for civil authority coverage. Civil authority coverage is available when a government entity prohibits access to Plaintiff's Location as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of such Location.

122.   Access to Plaintiff's insured location was prohibited by order of civil authorities as a direct result of physical loss and/or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of the insured's premises. Consequently, coverage is indicated and due to Plaintiff.

123. In this matter, government entities prohibited access to Plaintiff's Location as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of such Location.

124. As a direct result of physical loss and/or damage to the insured premises and physical loss and/or damage in the immediate vicinity of same, ingress to or egress from the insured premises was prevented by order of Civil Authorities.

123   The Civil Authority Orders were issued as a direct result of physical loss and/or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of Plaintiff's insured premises. Consequently, coverage is indicated and due to Plaintiff.

125. The City of New York issued an Emergency Executive Order in response to COVID-19 and the

Pandemic, in part, "because the virus **physically is causing property loss and damage**." (Emphasis added).

126. Civil Authority coverage that provides coverage for business income losses and extra expenses incurred when (1) a covered loss causes damage to (2) a property other than the insured premises and (3) a civil authority prohibits access to the insured premises, (4) provided that the other property is within one mile of the insured premises.

127. Plaintiff sustained  "direct physical loss of or damage" within the meaning of the Policy

128. Business income and extra expense coverage were both triggered and due to Plaintiff, as a consequence of "direct physical loss of or damage to property … by the peril(s) insured against and occurring during the term of this policy at covered Locations occupied by the Insured…."

129. The presence of COVID-19 at the insured's location and within one mile of Plaintiff's premises qualifies as physical damage as confirmed by the City of New York.

130. Plaintiff sustained (1) direct physical loss of property and (2) physical damage to its premises due to COVID-19.

131. Plaintiff has alleged a plausible claim for civil authority coverage. Civil authority coverage is available when a government entity prohibits access to Plaintiff's Location "as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of such Location.".

132. Civil authority orders were issued as a result of covered causes of loss to property at Plaintiff's premises and at locations within one mile of Plaintiff's premises. The subject orders prohibited access to the Premises; As a consequence of the foregoing damage, civil

authorities issued orders prohibiting access both to the hotel and areas immediately
surrounding the damaged properties. These orders were issued because of damage sustained
at Plaintiff's premises and at locations within one mile of Plaintiff's premises due to the
pandemic and COVID-19.

133. The policy affirmatively states it will pay for the loss of business income due to necessary interruption
of business caused by direct physical loss of or damage to covered property by peril(s) insured against and
occurring during the term of this policy at covered locations.

134. The policy provides that in the event of such physical loss or damage defendant shall be liable for the
actual loss sustained by the insured resulting directly from such interruption of business.

135. Accordingly, Defendant is liable for their insured's business income losses when (1) there is a suspension
of business operations, (2) the interruption is necessary, (3) the interruption is caused by a direct physical
loss of property or damage to the property or an imminent risk of direct physical loss or damage to the
property; and (4) the loss of or damage to property is caused by a covered cause of loss.

136. Here all such conditions are satisfied because  in this instance (1) there was and is an interruption of
business operations, (2) the interruption was and is necessary, (3) the interruption was and is caused by
a direct physical loss of property or damage to the property or an imminent risk of direct physical loss
or damage to the property; and (4) the loss of or damage to property was and  is caused by a covered
cause of loss.

137. As set forth above, in response to emergency orders closing off the premises business purposes which
occurred during the policy period, Plaintiff was forced to cease and continues to cease its business
activities altogether or a vast majority its business activities.

138. Plaintiff thus suffered the actual loss of Business Income during the policy period which was caused by
the loss of (or alternatively, damage to) its property at the covered location.

139. Plaintiff's lost business income is covered under the policy and has not been excluded from coverage.

Plaintiff is entitled to payment for these business income losses.

140. The Policy has "Civil Authority" coverage that provides coverage for business income losses and extra expenses incurred and is triggered when access to the insured location is prohibited by order of civil authority when as a direct result of physical loss of damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of said location or during the period of time when as a direct result of physical loss or damage to property of the type insured from a peril insured against, ingress to or egress from the insured's location is thereby physically prevented.

141. All of the above requirements are met here.

142. Civil Authority coverage in this matter was triggered because a government entity prohibited access to Plaintiff's Location as a direct result of physical loss or damage to property of the type insured from a peril insured against occurring at or in the immediate vicinity of such Location.

143. The policy further provides that defendant will pay for the reasonable and necessary extra expense incurred by the insured in order to continue as nearly as practicable the normal operation of the insured's business following direct loss of or damage to covered property by peril(s) insured against. In the event such physical loss or damage, the defendant shall be liable for such reasonable and necessary extra expense incurred for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been damaged commencing with the date of damage and not limited by the date of expiration of the policy.

144. Alternatively, the imminent and substantial risks of loss and damage justifies actions to avoid or mitigate such risks.

145. The presence of COVID-19 and the Closure Orders (and similar civil authority orders) constitute a Covered Cause of Loss, as they constitute "RISKS OF DIRECT PHYSICAL LOSS."

146. Civil authority orders and viruses are unexcluded causes of loss under the Policy.

**D.**    **Impact on Plaintiff**

147. As a result of the Orders referenced, herein, Plaintiff sustained massive business income losses.

148.    Plaintiff's business loss occurred when the State of New York declared when the State of New York declared a State of Emergency on March 7, 2020. It suffered further when the State of New York required all non essential businesses to shut down on March 20, 2020.

149.    Prior to March 7, 2020 Plaintiff was opened to guests for all hospitality and lodging needs. Plaintiffs' hotel is not a closed environment, and because people – staff, guests, community members, and others – constantly cycle in and out of the subject hotel, there is an ever-present risk that the Covered Properties are contaminated and would continue to be contaminated. In fact, it's probable that Plaintiffs premises suffered contamination based upon guests later being diagnosed as suffering from Coronavirus (COVID-19).

150.    Businesses like the Plaintiff's hotel premises are more susceptible to being or becoming contaminated, as both respiratory droplets and fomites are more likely to be retained on the Covered Properties and remain viable for far longer as compared to a facility with open-air ventilation.

151.    Plaintiff's businesses is also highly susceptible to rapid person-to-property transmission of the virus, and vice-versa, because the service nature of the businesses place staff and guests in close proximity to the property and to one another and because the nature of a hospitality premises involves a high level of respiratory droplets and fomites being released into the air of the property during routine hotel activities and contacting hotel and hospitality equipment.

152.    The virus is physically impacting Plaintiff. Any effort by defendant to deny the reality that the virus causes physical loss and damage would constitute a false and potentially fraudulent misrepresentation that could endanger the Plaintiff and the public. Hotel and hospitality  equipment in the practice as well as other property in the practice has been impacted by exposure to the Covid-19 Virus.

153.     COVID-19 particles have been physically present at Plaintiff's premises described in the Policy during the Policy period.

154.     COVID-19 particles have been physically present on surfaces and items of property located at Plaintiff's premises described in the Policy during the Policy period.

155.      COVID-19 particles have been physically present at Plaintiff's premises described in the Complaint during the Policy period.

156.     Airborne COVID-19 particles have been physically present at Plaintiff's premises described in the Policy during the Policy period.

157.     Plaintiff has sustained direct physical loss and damage to items of property located at its premises and direct physical loss and damage to its premises described in the Policy as a result of the presence of COVID-19 particles and/or the Pandemic.

158.     Plaintiff has sustained direct physical loss of and/or damage to items of property located at its premises and direct physical loss of and/or damage to its premises described in the Policy as a result of the presence of COVID-19 particles and/or the Pandemic.

159.     That a covered cause of loss caused damage to property other than property at the insured premises and Plaintiff sustained actual loss of business income and extra expenses were incurred caused by action of civil authority that prohibited access to the insured premises.

160.     Access to the area immediately surrounding the damaged property was prohibited by civil authority as a result of the damage and the insured premises was and is within one mile from the damaged property.

161.     That action of civil authority was taken in response to dangerous physical conditions resulting from the damage and/or continuation of the covered causes of loss that caused the damage and/or that action was taken to enable a civil authority to have unimpeded access to the damaged property.

162.     Plaintiff submitted timely insurance claims to defendant.

163.     Any purported viral exclusion does not apply here because a legal proximate cause of the Plaintiffs losses was the civil authority orders issued by the State of New York and similar civil authority orders.

164.     The policy does <u>not</u> contain a virus exclusion. Nor does the policy exclude coverage for a national state of disaster like the current pandemic. The insurance industry knows how to exclude "pandemics and epidemics" and has done so in other contexts. <u>See,</u> <u>https://www.travelinsurance.com/brochure/Allianz/Allianz_Basic_FL_0216.pdf</u> ("You aren't covered for any loss that results directly or indirectly from any of the following general exclusions. The following Events: an epidemic or pandemic[.]"). Here it did not.

165.     Viral Exclusion are common in these type of insurance policies and such an exclusion was unequivocally not part of the subject policy. Contaminants , pollutants, and microbes are separate and distinct from a Virus and do not bar any claim made herein.

166.     The simple truth is that Defendant pre-determined its intent to deny coverage for any business interruption claim related to COVID-19 pandemic and civil authority orders connected to the COVID-19 pandemic; which explains the quick and cursory denial of the claims timely submitted  to defendants herein.

167.     A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the businesses due to the shutdown caused by the Civil Authority Orders is necessary. As a result of these Orders, Plaintiff has incurred, and continue to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## COUNT I
## DECLARATORY RELIEF

168. Plaintiff re-alleges and incorporate by reference into this cause of action each and every allegation set

forth in each and every paragraph of this Complaint.

169.    Pursuant to NY CPLR §3001, the Supreme Court may render a Declaratory Judgment

having the effect of a final judgment as to the rights and other legal relations of the parties to a

justiciable controversy whether or not further relief is or could be claimed. If the Court declines to

render a judgment is shall state its grounds.

170.    An actual controversy has arisen between Plaintiff and the Defendant as to the rights,

duties, responsibilities and obligations of the parties under the Policy in that Plaintiff contends and, on

information and belief, the Defendant disputes and denies that:

   a.  The Civil Authority Orders constitute a complete or partial prohibition of
       access to Plaintiffs' Covered Properties;

   b.  The prohibition of access by the Civil Authority Orders has specifically
       "prohibit[ed] access to the premises" in whole or in part as set forth in the
       Policy's Civil Authority provision;

   c.  The Policy virus exclusion does not apply here;

   d.  The Civil Authority Orders trigger coverage;

   e.  The Policy includes coverage for losses caused by the Civil Authority
       Orders;

   f.  The Policy includes coverage for losses caused by the Coronavirus;

   g.  The Policy provides coverage to Plaintiffs for any current and future civil
       authority closures of businesses in New York County and New York State
       due to physical loss or damage directly or indirectly from the Coronavirus
       under the Civil Authority coverage parameters;

   h.  The Policy provides business income coverage in the event that Coronavirus
       has directly or indirectly caused a loss or damage at the insured premises or
       immediate area of the Covered Properties; and,

   i.  Resolution of the duties, responsibilities and obligation of the parties is
       necessary as no adequate remedy at law exists and a declaration of the Court

is needed to resolve the dispute and controversy.

171.    Plaintiff seeks a Declaratory Judgement to determine whether the Civil Authority Orders prohibit access to the premises in whole or in part of Plaintiff's Covered Property as set forth in the Policy's Civil Authority provision.

172.    Plaintiff further seeks a Declaratory Judgement to affirm that the Civil Authority Orders trigger coverage.

173.    Plaintiff further seeks a Declaratory Judgment to affirm that the Policy provides coverage to Plaintiff for any current and future Civil Authority closures of businesses in New York County and New York State due to physical loss or damage from the Coronavirus and the policy provides business income coverage in the event that Coronavirus has caused a loss or damage at the Covered Property.

174.    A declaratory judgment determining that the coverage provided under the Policy will prevent the Plaintiff from being left without vital coverage acquired to ensure the survival of the businesses due to the shutdown caused by the Civil Authority Orders is necessary. As a result of these Orders, Plaintiff has incurred, and continue to incur, among other things, a substantial loss of business income and additional expenses covered under the Policy.

## COUNT II: BREACH OF CONTRACT

153.    Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

154.    Plaintiff's Policy is an insurance contract pursuant to which Defendants were paid premiums in exchange for its promise to pay Plaintiff's losses for claims covered by the Policy

155.    As set forth in the Policy, Defendants promised to pay for losses of business income sustained as a result of perils not excluded in the Policy.

156.  Specifically, Defendants promised to pay for losses of business income sustained as a result of a suspension of business operations during the period of restoration.

157. Plaintiff has suffered a direct physical loss of and damage to its property as a result of COVID-19 and the order of civil authorities, which has resulted in the suspension of its business operations causing Plaintiff to suffer losses of Business Income.

158.  These suspensions and losses triggered Business Income coverage under the Policy.

159.  In addition, Plaintiff's Policy obligated Defendants to pay for losses of business income sustained and extra expenses incurred when, among other things, a Covered Cause of Loss causes damage to property near the insured premises, the civil authority prohibits access to property near the insured premises, and the civil authority action is taken in response to dangerous physical conditions.

160.  Plaintiff has suffered losses and incurred expenses as a result of actions of civil authorities that prohibited access to insured premises under the Policy.

161.  These losses satisfied all requirements to trigger Civil Authority coverage under Plaintiff's Policy.

162.  In addition, Plaintiff's Policy obligated Defendants to pay for Extra Expenses incurred by Plaintiff during the period of restoration that the insureds would not have incurred if there had been no loss or damage to the insured premises. These Extra Expenses include expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

163.  Plaintiff has suffered a direct physical loss of and damage to it property as a result of COVID-19 and the orders of civil authorities, which has resulted in a suspension of their business operations. As a result, Plaintiff has incurred Extra Expenses.

164.  These expenses triggered Extra Expense coverage under Plaintiff's Policy and the policies

of other Class members.

165. Plaintiff has complied with all applicable provisions of its Policy, including payment of

premiums and providing notice to Defendants.

166.    Defendants, without justification, dispute that the Policy provides coverage for the

losses sustained by Plaintiff.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff herein prays as follows:

1) For a declaration that the Civil Authority Orders constitute a prohibition of access in whole or in part to Plaintiff's Covered Property.

2) For a declaration that the prohibition of access by the Civil Authority Orders "prohibits access to the premises" in whole or in part as stated in the Policy.

3) For a declaration that the Civil Authority Orders trigger coverage under the Policy.

4) For a declaration that the Policy provides coverage to Plaintiff for any current, future and continued civil authority closures of businesses in New York County and New York State due to physical loss or damage directly or indirectly from the Coronavirus under the Civil Authority coverage parameters.

5) For a declaration that the virus exclusion does not preclude coverage of Plaintiff's loss of business income or the physical loss or damage suffered at the Insured Property;

6) For a declaration that the Policy provides business income coverage in the event that Coronavirus has directly or indirectly caused a loss or damage at the Plaintiff's Covered Property or the immediate area of the Plaintiff's Covered Property;

7) Business Income, Civil Authority and Extra Expense losses and expenses incurred and sustained as a result of COVID-19 and related civil authority actions are insured and covered losses and expenses under Plaintiff's Policy;

8) Defendants are obligated to pay for the full amount of the Business Income, Civil Authority and Extra Expense losses and expenses sustained and incurred, and to be sustained and incurred, as a result of COVID-19 and related civil authority actions.

9) Plaintiff seeks compensatory damages resulting from Defendants' breaches of the Policy and seeks all other and further relief deemed appropriate by this

Court, including attorneys' fees and costs.

10) Entering Judgment on Count II of the Complaint for Breach of Contract, and awarding damages for said breach in an amount to be determined at trial;

11) Ordering that Defendants pay both pre- and post-judgment interest on any amounts awarded;

12)  Awarding Plaintiff its costs and attorneys' fees;

13) Granting such other and further relief as this Court deems just and proper

## TRIAL BY JURY IS DEMANDED

Plaintiff demands a trial by jury.

Dated: July 25, 2021

Respectfully submitted,

*/s/ Randolph Janis*

_____

Randolph Janis, Esq.
**DOUGLAS & LONDON. P.C.**
59 Maiden Lane, 6th Floor
New York, New York 10038
Phone: (212) 566 7500
Fax: (212) 566 7501
rjanis@douglasandlondon.com